ORAL ARGUMENT NOT YET SCHEDULED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA, *et al.*,

        Plaintiffs-Appellees,

v.

GOOGLE LLC,

        Defendant-Appellee,

APPLE INC.,

        Movant-Appellant.

Case No. 25-5016

## APPELLANT APPLE INC.'S EMERGENCY MOTION
## FOR A STAY OF PROCEEDINGS OR, IN THE ALTERNATIVE,
## TO EXPEDITE THE APPEAL

Appellant Apple Inc. ("Apple") moves under Federal Rule of Appellate Procedure 8(a) and D.C. Circuit Rule 27 to stay the proceedings below or, in the alternative, to expedite the consideration of Apple's appeal of the district court's order denying Apple's motion to intervene to protect its undeniable property interests. On February 3, 2025, Apple communicated this request to the Clerk of the Court and to Plaintiffs and Defendant. Apple respectfully requests that this Court expedite briefing of and resolve this motion by February 10, such that this Court can

resolve this appeal prior to the start of a remedies trial at the district court. *See infra* at 21-22.

This case involves an antitrust action that the U.S. Department of Justice and a group of States ("Plaintiffs") brought against Google LLC for allegedly maintaining a monopoly in the general search market. The district court is now considering remedies that could reshape how search engines work for hundreds of millions of consumers. Apple was not a party to this case, and Plaintiffs had not asserted wrongdoing by Apple as part of this litigation. But, on November 20, 2024, Plaintiffs submitted a Proposed Final Judgment ("PFJ") that squarely targets Apple in extraordinarily broad terms, which would prevent Apple from contracting with Google for "anything of value" for ten years. Apple then promptly moved to intervene as of right under Federal Rule of Civil Procedure 24 to protect its property interests because it had become clear that Google—operating with very different economic incentives and threatened with the break-up of its business units—cannot adequately protect Apple in the wake of Plaintiffs' new threat.

Only Apple can adequately defend its interests against Plaintiffs' sweeping proposal. And only Apple can provide information about how it would respond to Plaintiffs' requested remedy—and why it would not enter the general search market even if Plaintiffs' proposal were adopted. Despite this, Plaintiffs themselves did not propose a *single* Apple witness for trial. So Apple had no choice but to exercise its

right to intervene—33 days after Plaintiffs' PFJ and just three days after Google's PFJ—to protect its property interests by calling a limited number of witnesses, cross-examining other witnesses on issues impacting Apple, and engaging in limited factual development to ensure an adequate record for trial.

Yet the district court denied Apple's motion as untimely. The court did not question Apple's present and future contractual interests targeted by Plaintiffs' PFJ—worth billions of dollars each year. The court did not question whether this case may impair those interests. And the court did not find that Google could adequately represent Apple: Indeed, Google has entirely different incentives in defending Apple and Apple's users, and Google cannot prioritize Apple's interests now that Google faces structural remedies. Nevertheless, the court held that Apple is required to endure inadequate representation on the ground that Apple should have sought intervention before Plaintiffs filed their extraordinary request for relief targeting Apple, and because Apple's intervention might cause other third parties to seek intervention, too. That decision is wrong as a matter of law, a clear abuse of discretion, and will irreparably harm Apple and disserve the public interest.

This Court should grant a stay of proceedings pending appeal. The stakes here—for both Apple and its users—are simply too high to subordinate Apple's rights to the strictures of a stringent schedule for the remedial phase of this case. This Court's intervention is required to protect "the basic jurisprudential

assumption" underlying Rule 24: "that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

In the alternative, Apple respectfully requests expedited briefing to resolve this appeal before the start of the remedies trial on April 21, 2025. Apple is cognizant of the weighty public interest at stake in this litigation and seeks only to ensure that this case produces a fair, appropriate, and legal remedy.

## BACKGROUND

### A.    The District Court Finds That Google Violated The Sherman Act

Plaintiffs filed this lawsuit in October 2020, claiming that Google violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by maintaining a monopoly through, among other things, exclusive default distribution agreements of Google Search. *See* Dkt.[1] 1033 at 5; *see also* Dkt. 1. At the liability trial, which Apple closely monitored, the court heard evidence about a contract between Apple and Google called the Information Services Agreement ("ISA"). Two Apple witnesses testified about the history of the ISA, under which Apple agreed to pre-set Google Search as the default search engine for queries in Apple's web browser, Safari. Dkt. 1111 at PDF 9; Trial Ex. JX 33 at 1 (Amend. to Information Services Agreement).

---

[1]    Citations to "Dkt. ___" refer to documents filed in the case below, No. 1:20-cv-03010 (D.D.C.) and attached hereto.

Under the ISA, Google pays Apple a percentage of its net advertising revenue generated from searches through Apple access points.  Dkt. 1111 at PDF 9.  In both 2009 and 2012, Apple "sought greater flexibility to grant its users access to other" search engines by attempting to negotiate for revenue share without granting Google pre-set default status.  Dkt. 1033 at 110-11.  But Google pushed back, and the ISA continues to provide Google such status.  *Id.* at 204.  In 2022, Google paid Apple roughly $20 billion under the ISA for distributing Google Search to Apple users via Apple access points.  *Id.* at 103.

On August 5, 2024, the district court issued a decision holding that Google violated Section 2 "by maintaining its monopoly in two product markets in the United States—general search services and general text advertising—through its exclusive distribution agreements."  *Id.* at 276.  The court recognized Apple as a "Key Third Part[y]."  *Id.* at 9-10.  Among other things, the court determined that the ISA and Google's other similar agreements are "exclusive insofar as they establish Google as the out-of-the-box default search engine."  *Id.* at 204.

## B.    Plaintiffs Propose An Extraordinary Remedy Targeting Apple

After the liability decision, Plaintiffs filed on October 8, 2024, a "high-level framework" concerning remedies.  *See* Dkt. 1043 at 1 (Order); *see also* Dkt. 1052.  The framework generally identified "four categories of harms," including "search distribution and revenue sharing."  Dkt. 1052 at 4.  But Plaintiffs did not propose

specific remedies.  Nor did that framework mention by name or otherwise propose any remedies particular to Apple.

Then, on November 20, Plaintiffs filed a PFJ spelling out the specific remedies they requested.  Dkt. 1062-1.  The PFJ targets Apple directly with a sweeping remedy: "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets."  *Id.* at 7.  Plaintiffs' PFJ also includes structural remedies that would split up Google's business, prompt divestitures, and preclude Google from investing in new artificial intelligence technologies.  *See id.* at 8-10, 12.

Google filed its own PFJ on December 20, which broadly opposes the structural remedies requested by Plaintiffs.  Dkt. 1108-1.  As for Google's search distribution agreements, Google's PFJ would tie Apple's receipt of revenue to Google's ability to continue contracting for pre-set default status, and Google would change the status quo instead by providing that such agreements may be revisited annually and affording limited flexibility to Apple not to set Google as the default in certain circumstances.  *Id.* at 4-5.

### C.    Apple Moves To Intervene Under Rule 24

Three days later, on December 23, Apple moved to intervene under Rule 24.  *See* Dkt. 1111; Fed. R. Civ. P. 24(a).  Apple sought only "limited" intervention to

"provide testimony of two or three witnesses, relevant documents, and briefing to ensure that [the District] Court ha[d] the complete record required to issue a fair and effective remedial decree." Dkt. 1111 at PDF 8. Apple asserted protectable interests in its current and potential future contracts with Google that may be impaired. And Apple explained that Google can no longer adequately represent Apple due to Google's differing economic incentives—made plain through the parties' PFJs—and its need to prioritize defenses to Plaintiffs' structural remedies. Apple also sought permissive intervention under Rule 24(b).

Google did not oppose Apple's motion to intervene, but both the U.S. Plaintiffs and Plaintiff States did. *See* Dkt. 1122, 1123. At a status conference addressing Apple's motion, Plaintiffs confirmed that the PFJ provision targeting Apple is indeed as broad as it seems—it seeks to ensure that "Google can no longer contract . . . with [Apple] for anything of value." Status Conference Transcript ("Tr.") at 40:22-23, Dkt. 1147 (not publicly available pending redaction requests). Plaintiffs' position is that Apple and Google should not be able to enter any arrangement involving "the exchange of money" for ten years. *Id.* at 41:24-42:2.

Apple explained the narrow contours of its request for limited intervention. Apple committed to not issuing written discovery requests, *id.* at 51:3-4, to asking only "limited questions at the end of depositions" on topics "specific . . . to Apple's interests," *id.* at 51:5-8, and to calling no more than three witnesses at trial, *id.* at

7

51:11-13.  Apple requested eleven total hours of time at trial, including seven hours for direct examination and four hours for cross examination.  *Id.* at 51:20-22, 52:2-4. The district court questioned Apple about whether Google adequately represented Apple's interests but admitted that its "real concern here is opening up the floodgates."  *Id.* at 35:3-7; *see also id.* at 62:13-16 ("[I]f I let Apple in, there are going to be other people knocking on the door.").

### D.    The District Court Denies Apple Intervention

The district court denied Apple intervention on January 27, 2025.  Dkt. 1153. The court did not question that Apple has protectable property interests that may be impaired, nor did it find that Google would adequately represent Apple's interests. Rather, the court's opinion was grounded almost entirely in its view that Apple's motion was untimely by, at most, several weeks.  The court posited that as of October 8, 2024—the date on which Plaintiffs filed their "high-level framework" concerning remedies—Apple knew that it might not be adequately represented in challenging a remedial provision that was not proposed until November 20.  *Id.* at 5-6.  Because "Apple waited 76 days" after October 8 (until December 23) to seek intervention, the district court concluded the motion was untimely.  *Id.* at 6.

The district court also stressed the accelerated timeline it has ordered for the remedies phase, emphasizing the "need to proceed on a compressed schedule," *id.* at 7, which would tee up the case for resolution by the end of May 2025—a "tight

timetable" that "necessarily left little breathing room between deadlines" that were "unlikely to move," *id.* at 8.  The court went so far as to fault Apple for declining to "oppose Plaintiffs' request for [an additional two days] to file their response" when Plaintiffs' response time overlapped with the Christmas and New Years' holidays. *Id.* at 8-9.  For similar reasons, the court stated that granting Apple intervention would prejudice the parties by upsetting the "strict confines of the court's Scheduling Order." *Id.* at 16.

The district court granted Apple *amicus* status during the remedies stage, which would allow it to "submit two affidavits from fact witnesses"—or just one affidavit if Google calls Eddy Cue, Apple's Senior Vice President of Services, as a witness—and "file a post-hearing brief alongside the parties." *Id.* at 19.  But as an amicus, Apple will not be able to develop evidence, present witnesses, conduct direct or cross examination, or argue in open court.  And Plaintiffs have since informed Apple that they intend to challenge the admissibility of the affidavits allowed by the court's order.  *See* Dkt. 1158-1 (Ray Decl.) ¶¶ 3-4.

Apple filed a notice of appeal on January 29, 2025, and moved the district court for a stay of its proceedings pending this appeal on January 30, 2025, Dkt. 1158, which the district court denied on February 2, 2025, Dkt. 1160.  The court reasoned that a stay was not warranted in part because Apple explained that it would file a motion to expedite consideration of this appeal.  *Id.* at 3.

## ARGUMENT

## I.    A STAY OF THE PROCEEDINGS BELOW IS WARRANTED

Four factors determine whether to grant a stay of district court proceedings pending appeal: (1) likelihood of success on appeal; (2) likelihood of irreparable harm absent a stay; (3) risk of harm to others if the court grants the stay; and (4) the public interest. *See Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam). Apple satisfies each of these factors. It is undeniable that Apple will be irreparably harmed if the trial proceeds without it able to defend its interests in an intervenor role, and the equities and public interest plainly favor a stay given the stakes for Apple, its users, and the U.S. market for general search services. So the only remaining question is whether the likelihood of success factor supports a stay. As explained below, it clearly does.

### A.    Apple Is Likely To Suffer Irreparable Harm Absent A Stay And Both The Equities And Public Interest Favor a Stay

The threat of irreparable harm absent a stay is undeniable. Courts have long recognized that where an applicant satisfies the conditions to intervene as of right and is nevertheless prevented from intervening, the applicant faces irreparable harm. *E.g.*, *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 524 (1947) (explaining that where an applicant has "an absolute right to intervene, . . . it may fairly be said that the applicant is adversely affected by the denial" of intervention); *State of Alaska v. FERC*, 980 F.2d 761, 763 (D.C. Cir. 1992)

10

("[I]ntervention as of right signifies that the movant would suffer harm from an adverse decision on the merits.").

Apple faces irreparable harm.  Absent a stay, Apple's right to participate as a party in the remedies phase of this case is likely to be lost.  Apple will not be able to access evidence or introduce its own testimony at trial, nor will Apple have the ability to cross-examine witnesses called by existing parties or otherwise participate in a trial that threatens to impinge on Apple's independent business decisions for a decade to come.  In short, although faced with an overbroad remedial proposal targeting it directly, Apple's hands will be tied.  The district court's grant of *amicus* status to Apple—a status that Plaintiffs now challenge—does not mitigate the harms Apple faces and "is not an adequate substitute for participation as a party." *Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967).

The equities and the public interest both favor a stay, too.  Although all support the timely resolution of this case, the public also has a strong interest in ensuring that the court has all the evidence it needs to issue a fair, appropriate, and legal remedy that protects *all* of the affected entities, Apple included.  This litigation implicates the competitive dynamics in the marketplace for search services across the United States, and the district court's remedial order will, as a result, affect hundreds of millions of consumers.  It is no exaggeration to say that the final judgment could impact the search market for decades to come.

Plaintiffs' decision to target Apple, a non-party, demanded Apple's intervention to defend its interests.  Now that the district court has excluded Apple, the equities favor pausing the proceedings below so that Apple may vindicate its right to fully participate as a party.  This Court has previously issued a stay in like circumstances involving appeals from the denial of intervention.  *See Yocha Dehe Wintun Nation v. United States Dep't of the Interior*, 3 F.4th 427, 429 (D.C. Cir. 2021).  And other courts have likewise recognized that a stay is appropriate where a putative intervenor appeals to protect its interests.  *See*, *e.g.*, *Sage Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *Abbott Laboratories v. Diamedix Corp.*, No. 94-1345, 1994 WL 782247, at *2 (Fed. Cir. July 26, 1994); *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1267 (10th Cir. 2004) (directing putative intervenors on appeal to move for a stay "to preserve the status quo pending appeal so that the appellant may reap the benefit of a potentially meritorious appeal" (citation omitted)).

## B.     Apple Is Likely To Succeed On The Merits

Apple is also likely to succeed on appeal and, at a minimum, has raised a "serious legal question on the merits."  *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (citation omitted).

As discussed, the district court did not question that Apple had satisfied the principal elements of Rule 24(a)(2) in seeking to intervene as of right.  Instead, it

based its decision solely on the ground that Apple's request for intervention was untimely. That is itself a shaky foundation for denying intervention as of right. As a leading commentator has explained, "[s]ince in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (3d ed., 2024 update). Here, the district court's timeliness decision was seriously flawed.

**1.** As the Supreme Court has stressed, putative intervenors need not "file protective motions to intervene to guard against the possibility that" existing parties may not protect their interests. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 n.15 (1977). Instead, "the most important circumstance relating to timeliness" is that a putative intervenor "sought to intervene 'as soon as it became *clear*'" that its "interests 'would no longer be protected by the parties in the case.'" *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022) (citation omitted) (emphasis added); *see also Campaign Legal Ctr. v. FEC*, 68 F.4th 607, 610 (D.C. Cir. 2023) (same).

Here, Apple understood that its interests *might* be affected by Plaintiffs' antitrust action against Google and, accordingly, Apple monitored the case as it went to trial. But it was not "clear" that there was a divergence between Apple's and

Google's interests until Plaintiffs and Google filed their PFJs. Apple's motion is timely because Apple sought to intervene—in a matter of days—thereafter. Apple sought intervention just *three* days after Google filed its PFJ and 33 days after Plaintiffs filed their extraordinary PFJ on November 20.

During the liability phase, there was no indication that Google could not adequately represent Apple's interests: Both companies are parties to the ISA, and Google was incentivized to defeat in full the antitrust challenge to that agreement. But Plaintiffs' PFJ changed the calculus in three key respects.

First, Plaintiffs' PFJ implicates Apple's unique interests by proposing a remedy that goes far beyond the existing ISA. The PFJ prohibits Apple from receiving "anything of value" from Google "that in any way" disincentivizes Apple from building a general search engine. Dkt. 1062-1 at 7. And Plaintiffs have since confirmed that they adopt a "broad" reading of that provision, Tr. 42:10-20, such that it would prohibit any "exchange of money" between Apple and Google *for ten years*, *id.* at 41:18-42:2. Google cannot represent Apple—its commercial competitor and contractual counterparty—with respect to every possible future contractual interest Apple may have over the next decade. Moreover, Plaintiffs' PFJ also rests on factual assumptions about *Apple's* economic incentives, including how Apple would respond to any remedy and whether Apple would create a general search

engine to compete with Google. Only Apple has the information necessary to explain why Plaintiffs' factual assumption is flatly incorrect.

Second, Google must now defend itself against a broadside attack that seeks to break up its business units. Intervention is proper where an existing party would not give certain arguments "the kind of primacy" the putative intervenor would. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *see also Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (permitting intervention where applicant would give "a more vigorous presentation" on an issue (citation omitted)). Plaintiffs have argued that Google has the resources to mount a multi-fronted defense. But no matter how many lawyers it employs, Google now must make strategic decisions about what arguments to prioritize under limited trial time and page limits, and it, of course, cannot be expected to protect Apple's interests above its own.

Third, and critically, Apple and Google are now differently situated with respect to defending the revenue share payments that Apple receives for distributing Google search. Apple receives revenue for distributing every single other search engine available to Apple's users, even though none of those search engines is the pre-set default on Apple devices. *See* Dkt. 1111 at 14. If the district court adopts Plaintiffs' PFJ to bar *any* form of revenue share, it leaves Apple an impossible choice: Apple can limit Google search, thereby preventing access to the highest

15

quality search provider; or Apple can distribute Google search anyway, providing a windfall to Google (whose exclusive dealing arrangements led to an adverse liability judgment). Google of course does not have the same incentive to defeat a remedy that would *prohibit* it from compensating Apple for distributing Google Search to users across the United States. And while speculating that Apple has nothing new to offer the district court by intervening, the court overlooked that Apple's witnesses did not previously testify to the Hobson's choice created by Plaintiffs' PFJ, as well as to other considerations.

Google's PFJ, filed on December 20, further underscores the inadequacy of Google's representation on this issue. The court's liability decision repeatedly emphasized that the "exclusive" nature of Google's distribution agreements gave rise to its violation of Section 2. *See, e.g.*, Dkt. 1033 at 204, 276. Yet Google proposes that it continue to be allowed to contract for pre-set default status on Apple devices, and it expressly ties that default status to paying Apple for distributing Google Search. By contrast, Apple believes in flexibility with respect to default status and that revenue share should continue regardless of default. Google and Apple thus have starkly different incentives on this critical remedial issue.

**2.** The district court's order did not seriously question that Google can no longer adequately represent Apple's interests. The court acknowledged Apple's contention that Plaintiffs' PFJ may "prompt Google to focus its efforts on remedies"

16

uniquely affecting Google and that "Google might stop paying Apple" given the PFJ's prohibition on standard-fare revenue share agreements that Apple has with every other general search engine available on its devices. Dkt. 1153 at 5. But in the district court's view, "these potential inadequacies materialized a full six weeks earlier" when, on October 8, Plaintiffs filed their "high-level framework" regarding remedies. Dkt. 1043 at 1; *see also* Dkt. 1052. That is wrong—and a clear abuse of discretion.

No party—not Apple, Google, U.S. Plaintiffs, nor State Plaintiffs—cited October 8 as a relevant date. For good reason: The October 8 "Proposed Remedy Framework" filed by Plaintiffs did not propose specific remedies, did not identify Apple by name, and did not suggest that Plaintiffs would seek to impinge on Apple's contractual rights regarding *any* commercial terms between Apple and Google for ten years to come. As of October 8, Apple had every reason to believe that Google would continue to defend the terms of the existing ISA between the two companies and had no indication that Plaintiffs would seek a remedy that would directly pertain to Apple and reach far beyond the contours of the ISA.

The district court pointed to Plaintiffs' statement in their October 8 filing that they might seek "structural remedies that would prevent Google from using products such as Chrome, Play, and Android to advantage Google search," Dkt. 1153 at 5-6 (citation omitted), and further cited media reports that the "Justice Department was

17

weighing a breakup of Google," *id.* at 6.  These remedial sketches, even if they raised "the possibility that" Google might have to focus its efforts elsewhere, *McDonald*, 432 U.S. at 394 n.15, did not make it "clear" to Apple that Apple's interests "'would no longer be protected' by the parties in the case," *Cameron*, 595 U.S. at 279-80 (citation omitted).

More to the point, the district court made no effort to explain how Plaintiffs' October 8 filing in any way suggested that Plaintiffs might seek a remedy that would prohibit Google from paying Apple *anything of value*, not only for distributing Google search but also for any *other* kind of contractual arrangement over the next ten years.  *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1107 (D.C. Cir. 2024) (district court abuses its discretion when it "fail[s] to consider a relevant factor" or "relie[s] on an improper factor" (alterations in original) (citation omitted)).

The district court's invocations of prejudice do not support its timeliness decision.  At the outset, the court appears to have misunderstood the role that prejudice plays in the intervention-as-of-right analysis.  The absence of prejudice can be a reason to deem an intervention motion timely notwithstanding a delay; that is what happened in *Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014), cited by the court and the parties.  Dkt. 1153 at 14.  But that does not mean the *presence* of some amount of prejudice permits *denying* an otherwise timely motion.

18

Intervention as of right means intervention as of right; not intervention only when it is convenient to the parties and the court. Tellingly, neither the district court nor Plaintiffs cited a case denying an intervention motion filed promptly after a party was no longer adequately represented due to prejudice to the parties or to the court's schedule. The district court's contrary conclusion was a legal error.

Even on its own terms, the district court's discussion of prejudice does not withstand scrutiny. The court emphasized that Apple waited 76 days after October 8 to intervene and calculated that time to constitute "nearly half (49%) of the remedies-phase fact discovery period." Dkt. 1153 at 7. That calculation fails to recognize that any potential inadequacy was not clear to Apple until November 20, not October 8. But even accepting 76 days as the right number, the district court offered minimal explanation of why that delay specifically harmed the parties beyond pointing to generalized burdens present whenever a new party is added to a case. Remarkably, the court further faulted Apple for agreeing (out of civility) to Plaintiffs' request for two extra days when their response time ran over the Christmas and New Years' holidays, *id.* at 8-9, but the court did not explain how Apple's agreement to that request "unfairly disadvantage[d]" the existing parties. *Costle*, 561 F.2d at 908.[2]

---

[2]    The district court further faulted Apple for not providing specifics about what it would add at trial. Dkt. 1153 at 11-12. But the parties have only traded proposed

Ultimately, the district court appears to have been concerned about the possibility of potential follow-on applications for intervention.  Tr. 35:3-7 ("[M]y real concern here is opening up the floodgates.").  But Apple is not comparable to any other third party.  Plaintiffs' PFJ targets Apple—and no other non-party—by name with a unique prohibition.  Moreover, no other party had sought intervention in the timely fashion undertaken by Apple.  In any event, speculation about potential follow-on intervention applications from other parties (which could presumably be denied on adequacy or timeliness grounds at this stage) does not permit the destruction of Apple's legal "right" to intervene under Rule 24.  *See* Fed. R. Civ. P. 24(a).

District courts of course have discretion to manage their schedule.  But that discretion does not trump a movant's right to intervene when, as here, the requirements of Rule 24(a)(2) are met.  The district court here erred in subordinating Apple's right to intervene to the constraints of its desired schedule.

---

witness lists at this point.  And more to the point, Apple presented a declaration outlining the additional information only Apple can offer, including that Plaintiffs' PFJ presents Apple with an impossible choice regarding whether or how to distribute Google search, a choice that was not presented prior to Plaintiffs' PFJ.  *See* Dkt. 1111-1 ¶ 6.  The district court's insistence for more at this stage was error, especially given that it rejected Apple's motion only on timeliness grounds.

## II.    ALTERNATIVELY, THIS APPEAL SHOULD BE EXPEDITED

At a minimum, expedited briefing is warranted so that Apple can vindicate its rights before they are irretrievably lost.  The district court itself denied a stay in part based on Apple's plan to seek expedited briefing in this appeal.  Dkt. 1160 at 3.  In seeking expedition, a "movant must demonstrate that the delay will cause irreparable injury and that the decision under review is subject to substantial challenge."  D.C. Circuit, *Handbook of Practice and Internal Procedures* § VIII.B at 34 (2024).  This Court "also may expedite cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition."  *Id.*

Apple readily satisfies each of these factors.  As explained above, Apple faces irreparable harm from the denial of intervention.  *See supra* at 11.  And "the decision under review is subject to substantial challenge," *Handbook* § VIII.B at 34, because Apple is likely to prevail on the merits of this appeal.  *See supra* at 12-20.  Even apart from those factors, the "public generally" has an interest in the expedited resolution of this case.  The district court identified "the public's keen interest" in this case, Dkt. 1153 at 17, which has garnered widespread media attention, *id.* at 6.  The district court's remedial order will likely create ripple effects in the technology market for many years.  And only Apple has information that is needed to ensure a complete record necessary to evaluate the far-reaching relief requested by Plaintiffs.  Simply put, expedited review is warranted.  *See*, *e.g.*, Order, *Yocha Dehe Wintun*

*Nation v. United States Dep't of the Interior*, No. 21-5009 (D.C. Cir. Feb. 3, 2021) (granting expedition of briefing); *United States v. City of Oakland, Cal.*, 958 F.2d 300, 302 (9th Cir. 1992) (suggesting that appeals from orders denying intervention be heard "on an expedited basis").

If this Court does not issue a stay, Apple respectfully requests the following briefing schedule that would enable this Court to hear and resolve this appeal in advance of the district court's remedies trial, which is set to begin on April 21, 2025:

- Appellant's Opening Brief:         Wednesday, February 12

- Appellees' Response Briefs:        Wednesday, February 26

- Appellant's Reply Brief:           Wednesday, March 5

- Oral Argument:                     The week of March 10

Only a stay can fully protect Apple's interests, including by ensuring that Apple is not denied participation in discovery and depositions and preparation for trial based on the full record. But expediting the appeal based on the above schedule would ensure that Apple's right to participate in the trial would not be lost if, as is likely, this Court reverses the district court's order.

Dated:  February 3, 2025

Respectfully submitted,

*/s/ Gregory G. Garre*
Gregory G. Garre
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
gregory.garre@lw.com

Alfred C. Pfeiffer, Jr.
Sarah M. Ray
Aaron T. Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Movant-Appellant*
*Apple Inc.*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,199 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: February 3, 2025                    */s/ Gregory G. Garre*
                                           Gregory G. Garre

# ADDENDUM
# Pursuant to Circuit Rules
# 27(A)(4) and 28(A)(1)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,
*et al.*,

                Plaintiffs-Appellees,

v.

GOOGLE LLC,

                Defendant-Appellee,

APPLE INC.,

                Movant-Appellant.

Case No. 25-5016

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this D.C. Circuit Rules 27(a)(4) and 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Movant-Appellant is Apple Inc. ("Apple").

Plaintiffs-Appellees are United States of America; State of Arkansas; State of Florida; State of Georgia; State of Indiana; Commonwealth of Kentucky; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of South Carolina; State of Texas; State of California; State of Wisconsin; State of Michigan; State of Colorado, 20-3715; State of Nebraska, 20-3715; State of Arizona, 20-3715;

1

State of Iowa, 20-3715; State of New York, 20-3715; State of North Carolina, 20-3715; State of Tennessee, 20-3715; State of Utah, 20-3715; State of Alaska, 20-3715; State of Connecticut, 20-3715; State of Delaware, 20-3715; District of Columbia, 20-3715; Territory of Guam, 20-3715; State of Hawaii, 20-3715; State of Idaho, 20-3715; State of Illinois, 20-3715; State of Maryland, 20-3715; Commonwealth of Massachusetts, 20-3715; State of Minnesota, 20-3715; State of New Jersey, 20-3715; State of Oregon, 20-3715; State of Rhode Island, 20-3715; State of Washington, 20-3715; State of Kansas, 20-3715; State of Maine, 20-3715; State of Nevada, 20-3715; State of New Hampshire, 20-3715; State of New Mexico, 20-3715; State of North Dakota, 20-3715; State of Ohio, 20-3715; State of Oklahoma, 20-3715; Commonwealth of Pennsylvania, 20-3715; Commonwealth of Puerto Rico, 20-3715; State of South Dakota, 20-3715; State of Vermont, 20-3715; Commonwealth of Virginia, 20-3715; State of West Virginia, 20-3715; and State of Wyoming, 20-3715.

Defendant-Appellee is Google LLC.

There were no other parties, intervenors, or amici before the district court, and no intervenors or amici have appeared in this Court.

2

**B.    Rulings Under Review**

The ruling under review is the United States District Court for the District of Columbia Order denying Apple's motion for limited intervention (Jan. 27, 2025), Dkt. 1153.

**C.    Related Cases**

This case has not been previously before this Court.   Counsel for Movant-Appellant are not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

**D.    Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellant Apple Inc. ("Apple"), certifies that Apple does not have a parent company, and no publicly held corporation owns 10% or more of Apple's stock.


*/s/ Gregory G. Garre*
Gregory G. Garre
*Counsel for Movant-Appellant*
*Apple Inc.*