ORAL ARGUMENT NOT YET SCHEDULED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA et al.,

             Plaintiffs-Appellees,

   v.

GOOGLE LLC,

             Defendant-Appellee,

APPLE INC.,

             Movant-Appellant.

No. 25-5016

**PLAINTIFFS' RESPONSE IN OPPOSITION TO APPLE INC.'S EMERGENCY MOTION FOR A STAY OF PROCEEDINGS OR, IN THE ALTERNATIVE, TO EXPEDITE THE APPEAL**

OMEED A. ASSEFI
  *Acting Assistant Attorney General*
DAVID B. LAWRENCE
  *Policy Director*

DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
MATTHEW A. WARING
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 305-4639
patrick.kuhlmann@usdoj.gov

(additional counsel listed in signature block)

In its pursuit of fundamental fairness for American consumers, businesses, advertisers, and small tech companies, the United States sued Google under 15 U.S.C. § 4. For over four years, despite considerable opposition, the United States and 49 States (Plaintiffs) worked to prove what the trial court ultimately found: that Google is a monopolist. As the public awaits a remedy restoring competition to the marketplace—and the parties are preparing for the remedies phase of this case—Apple suddenly filed a motion to intervene. This important public antitrust case began over four years ago. Apple was not a mere bystander to the litigation. It produced documents in discovery, provided testimony depositions, and testified at trial. Throughout its involvement in this matter, Apple never sought intervention. Instead, Apple waited nearly five months after the district court's finding of liability to move for intervention. Despite the district court's thoughtful denial of Apple's untimely motion, Apple nevertheless persists in seeking to delay the district court's opportunity to remedy Google's illegal conduct. The effect—and perhaps intended goal—of these efforts is to complicate the challenging tasks before the district court to both "unfetter [the] market from anticompetitive conduct and 'pry [it] open to

1

competition.'" *Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972)

(quoting *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947)). As

usual, the costs of the delay Apple seeks in remedying Google's

monopolization will be borne by American consumers, companies, and

innovators. Plaintiffs unequivocally oppose Apple's request for a stay.

As to Apple's proposed alternative of an expedited briefing schedule,

Plaintiffs have no objection.

## BACKGROUND

1. Plaintiffs filed these lawsuits in 2020, alleging that Google

illegally maintained monopolies in markets for general search services

and general search text ads through exclusionary agreements with

third parties, including agreements making Google the default search

engine on web browsers and mobile devices. A key agreement was the

Internet Services Agreement (ISA), under which Google paid Apple

billions of dollars annually to be the default search engine on Apple

devices, including as the default setting in Apple's Safari browser,

foreclosing competition from rival search engines for searches

completed on Apple devices.

Apple participated in this case throughout discovery and the trial on the merits. Apple produced documents and provided testimony at depositions. Dkt. 643 at 2. Both Plaintiffs and Google included Apple employees on their lists of potential witnesses. *Id.* at 5 n.7. Apple responded by moving (unsuccessfully) to quash both sides' trial subpoenas, arguing that it would be unduly burdensome for its executives to "go through the considerable burden and expense of preparing for their trial testimony and traveling 3,000 miles across the country to testify." *Id.* at 2. At the 10-week bench trial, which Apple "closely monitored," Mot. 4, over 50 live witnesses testified, including two Apple executives who testified about the ISA and whose testimony the district court credited in its liability decision. Dkt. 1033 at 241-44.

On August 5, 2024, the district court held that Google has monopolized the markets for general search services and general search text ads. Dkt. 1033. The court found that "[t]he most efficient channel" for distributing general search engines "is, by far, placement as the preloaded, out-of-the-box default" on a device. *Id.* at 24. In particular, Google's placement as the default search engine on Apple devices through the ISA guarantees that Google receives a substantial share of

3

search queries: 28% of all general search queries in the United States flow through search access points (e.g., the Safari search bars and search widgets or apps) covered by the ISA. *Id.* at 25. The district court held that by foreclosing Google's rivals from massive amounts of search traffic, the ISA (and Google's other distribution agreements) "inoculat[e] Google against any genuine competitive threat." *Id.* at 234. In the general-search-services market, these agreements deny rivals access to users and thus scale—"the essential raw material for building, improving, and sustaining" a search engine, *id.* at 226—and "reduce[] the incentive to invest and innovate in search," *id.* at 236. Additionally, the payments to Apple under the ISA "reasonably appear[] capable of significantly contributing to keeping Apple on the sidelines of search," ensuring that it does not use its available resources to launch a general-search-engine competitor to Google. *Id.* at 242. And in the general-search-text-ads market, the agreements allow Google to charge supracompetitive ad prices, *id.* at 259, and to degrade the quality of its ads, *id.* at 263-64. The court found the agreements have no valid procompetitive justifications. *Id.* at 248-58, 265.

2. In September 2024, the district court scheduled the remedial phase of the litigation, including an evidentiary hearing starting on April 21, 2025. Dkt. 1045 at 1. Fact discovery commenced on September 26, 2024, and concludes on February 28, 2025. Dkt. 1043 at 1-2. To date, over 50,000 documents have been produced by the parties and numerous third parties, and the parties have noticed or cross-noticed over 40 depositions.

On October 8, 2024, Plaintiffs filed their Proposed Remedies Framework (PRF). Dkt. 1052. The PRF identified "four categories of harms" from Google's illegal practices that require remedying, including harms related to "search distribution and revenue sharing." *Id.* at 4. It explained that "Plaintiffs anticipate that its Proposed Final Judgment will include a number of mutually reinforcing remedies from most, if not all, of the categories." *Id.* at 5. It further explained that "the remedy need not be limited to the specific means of how Google achieved that illegal monopoly maintenance" and must bar "new actions creating new obstacles to competition." *Id.* at 3, 5 (citing *Ford Motor Co.*, 405 U.S. at 573 n.8).

5

In light of the ISA and other anticompetitive agreements, the PRF stated that "the starting point" for a remedy would be addressing Google's control of popular search-distribution channels to "ensur[e] Google cannot control the distribution of tomorrow." Dkt. 1052 at 5. Accordingly, "Plaintiffs are evaluating remedies that would, among other things, limit or prohibit default agreements, preinstallation agreements, and *other revenue-sharing arrangements* related to search and search-related products." *Id.* at 6 (emphasis added). Additionally, "Plaintiffs are considering behavioral and structural remedies that would prevent Google from using products such as Chrome, Play, and Android to advantage Google search and Google search-related products and features." *Id.* at 6.

On November 20, 2024, Plaintiffs filed their Initial Proposed Final Judgment (PFJ). Dkt. 1062-1. Among other provisions, Plaintiffs' PFJ prohibits Google from paying any third party, including Apple, to make Google the default search engine on its devices. Dkt. 1062-1 at 7. Additionally, it prohibits Google from offering "anything of value to Apple—or offer[ing] any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [general

search engine] or Search Text Ad markets." *Id.* It also provides for divestiture and other structural relief. *Id.* at 9-11.

A month later, Google filed its own PFJ. Dkt. 1108-1. Google's PFJ proposes only minimal changes to the Google-Apple relationship, such as modest restrictions on Google's ability to require Apple to set Google as the default search engine on Apple's Siri and Spotlight features. *Id.* ¶ III(L). Google's PFJ would not limit Google's ability to pay Apple to continue making Google the default search engine on the Safari browser on all Apple devices.

3. On December 23, 2024, months after the start of the remedies phase and roughly two months before the close of fact discovery, Apple moved to intervene in the case. Dkt. 1111. Its "limited" intervention would include (1) participating in depositions; (2) proposing its own remedy; (3) presenting three witnesses, including an expert witness, at the hearing; (4) cross-examining other witnesses at the hearing; (5) presenting argument at the hearing; (6) filing a post-hearing brief; and (7) participating in closing argument. Dkt. 1153 at 9-10. Plaintiffs opposed the motion on timeliness and adequate-representation grounds. Dkt. 1123.

7

The district court denied the intervention motion as untimely. Dkt. 1153. The court concluded, in its "sound discretion," that "all four factors" going to timeliness "weigh[ed] against finding that Apple timely sought to intervene." *Id.* at 2 (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

**First,** Apple had waited an "unduly" long time to move for intervention. Dkt. 1153 at 3. It "should have known since this suit's inception that its contractual rights [in the ISA] would be directly affected," yet waited over four years to seek intervention. *Id.* at 4. Even if the need to intervene arose only at the remedies stage, the district court found that Apple's motion still would be untimely because Apple sought intervention 76 days after Plaintiffs' PRF indicated the scope of relief that Plaintiffs would seek. *Id.* at 6. That delay was "lengthy, even under Apple's own cases." *Id.* And in the circumstances of this case, where 76 days comprises "nearly half (49%) of the remedies-phase fact discovery period" and "nearly one-third (31%) of the remedies phase as a whole," Apple's delay was even more problematic. *Id.* at 7.

**Second,** Apple's purpose for intervening—to present evidence and argument— indicated untimeliness, given that Apple "permitted

significant time to elapse" before filing its motion and that the parties
are well into preparation for the hearing. Dkt. 1153 at 11 (quoting
*United States v. AT&T*, 642 F.2d 1285, 1294-95 (D.C. Cir. 1980)).
Additionally, Apple failed to explain what evidence it wished to present
that it had not already presented at the liability trial. *Id.* at 11. And the
court was unconvinced that "Google lacks incentive to make Apple's
position known to the court." *Id.* at 12 n.4. "Indeed," the court noted,
"Google's [remedies] proposal would arguably put Apple in a *better*
position than it is today," and Apple had failed to explain—even when
directly asked at oral argument—"why Google's proposal does not align
with its stated interests." *Id.*

    **Third,** intervention was not needed to protect Apple's rights since
the court would "afford Apple an opportunity to be heard" as amicus
curiae during the remedy stage. Dkt. 1153 at 14. The court authorized
Apple to file a post-hearing brief and to offer either one or two fact-
witness affidavits, depending on whether the Apple executive on
Google's witness list is called to testify at the hearing. *Id.* at 19.

    **Fourth,** the parties "would suffer substantial prejudice were
Apple to intervene at this late stage." Dkt. 1153 at 18. Plaintiffs would

have to devote limited resources to responding to Apple's fact witnesses and a potential Apple expert. *Id.* at 15. Apple's presentation at the hearing would "necessarily encroach upon the parties' time to present their own cases," given the limited court time available for the trial. *Id.* at 16. The alternative—postponing the remedies trial—would mean a delay of "months." *Id.* at 17.

Apple appealed the district court's ruling denying intervention, Dkt. 1156, and filed in the district court a six-page motion to stay the entire case pending appeal, Dkt. 1158, which the court denied, Dkt. 1160. The court found that Apple's "conclusory assertion[s]" that its motion was timely did not demonstrate the requisite likelihood of success on the merits and that Apple "(again) fail[ed] to provide any specifics" about why it was necessary for Apple to intervene. *Id.* at 2, 3. This emergency motion followed.

## ARGUMENT

A stay pending appeal is "extraordinary relief" with "stringent requirements." *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam). A stay applicant must (1) make a "strong showing that [it] is likely to succeed on the merits"; (2)

10

demonstrate that it will be "irreparably injured" before the appeal concludes; (3) show that issuing a stay will not "substantially injure the other parties interested in the proceeding"; and (4) establish that "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Apple's stay motion clears none of these bars.

Apple has not established a strong likelihood that this Court will find an abuse of discretion in the denial of intervention. Nor has Apple satisfied the other stay factors, which its motion gives tellingly short shrift. Apple overlooks the harm a stay would cause the parties, the district court, and the public interest by delaying the court from remedying Google's antitrust violations—and thus restoring competition in the monopolized markets. And Apple cannot show irreparable harm, particularly given Plaintiffs' willingness to accommodate its requested schedule for expediting the intervention appeal. The motion should therefore be denied.

11

## I.   The Stay Should Be Denied.

### A.   Apple Has Failed to Make a Strong Showing of Likelihood of Success on the Merits.

Apple has not made a strong showing of likely success on the merits. When a movant seeks intervention of right under Federal Rule of Civil Procedure 24(a), "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Apple's intervention bid flunks at least the first and fourth requirements.[1]

### 1. Apple's Motion Was Untimely.

An untimely motion for intervention "must be denied." *NAACP*, 413 U.S. at 365. Timeliness turns on the "time elapsed since the

---

[1] The Colorado-Nebraska Plaintiffs (in Case 1:20-cv-3715 below) asserted that Apple could not meet either of the other two requirements, Dkt. 1122, challenging Apple's assertions that it has a legally protected interest in the current and future contracts with Google that would be impaired, given the district court's ruling that the current contract unlawfully harms competition. The district court did not address these separate grounds, nor was it required to do so given its conclusion that Apple could not satisfy all four factors.

inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quotation omitted). The district court found that "all four factors weigh against finding that Apple timely sought to intervene in this case." Dkt. 1153 at 2. Because the court "considered all the circumstances" and "applied the correct legal standard," it did not abuse its discretion. *Campaign Legal Ctr. v. FEC*, 68 F.4th 607, 611 (D.C. Cir. 2023) (quoting *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008)).

a. Apple waited far too long before seeking intervention: over four years from the commencement of litigation (which specifically alleged the ISA was unlawful), over four-and-a-half months after the liability decision (which specifically held the ISA anticompetitive), and over ten weeks after Plaintiffs filed their PRF (which specifically discussed remedies beyond merely enjoining Google's specific anticompetitive conduct). Thus, the district court correctly concluded that, under any

13

measure, the time elapsed "weighs against the timeliness of Apple's motion." Dkt. 1153 at 9.

"Timeliness is measured from when the prospective intervenor 'knew or should have known that any of its rights would be directly affected by the litigation.'" *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quoting *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 433-34 (D.C. Circ. 1989)) (internal quotation marks omitted). Even if this date were not the filing of the complaint in 2020, it should be the finding of liability in August 2024. Apple's four-and-a-half-month delay after its knowledge that Plaintiffs were entitled to a remedy addressing the ISA was plainly excessive.

Apple argues that timeliness should be measured from the filing of Plaintiffs' PFJ on November 20, 2024. Mot. 13-14. But as the district court explained, "[t]he problem with Apple's argument is that these potential inadequacies materialized a full six weeks earlier, when Plaintiffs filed their [PRF] on October 8, 2024." Dkt. 1153 at 5. Apple identifies no "clear error" in that factual determination. Dkt. 1160 at 2.

Apple claims that Plaintiffs' PFJ "changed the calculus" by proposing a remedy prohibiting commercial terms disincentivizing

Apple from entering the monopolized markets, proposing structural relief, and leaving Apple and Google with different financial incentives. Mot. 14-16. The earlier PRF made clear, however, that Plaintiffs would seek an order addressing existing harms and preventing their recurrence. Dkt. 1052 at 1. And the harms found by the district court include payments to Apple that disincentivized Apple from entering the general-search-services market. Dkt. 1033 at 242. The PFJ also stated that Plaintiffs were considering "structural remedies." Dkt. 1052 at 3, 6. Thus, with the filing of the PFJ, Apple undoubtedly had "a reasonable expectation," *British Am. Tobacco*, 437 F.3d at 1239, of any "potential inadequacy of representation," *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986).

In any event, even if Apple's preferred date of November 20 were the correct one for timeliness purposes, Apple was still dilatory. It allowed *another* month to elapse before seeking intervention—even though, as it knew, "time is of the essence." Dkt. 1153 at 8.

b. As the district court found, "the existing parties would suffer substantial prejudice were Apple to intervene at this late stage." Dkt. 1153 at 18. Perhaps "the most important consideration," this factor

15

serves to "prevent[] potential intervenors from unduly disrupting litigation, to the unfair detriment of existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Accordingly, courts routinely deny intervention where it could require additional discovery, necessitate additional proceedings, or delay resolution of the case. *See, e.g.*, *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 906 (D.C. Cir. 2014) (motion untimely where intervention would delay resolution of the case); *Caterino v. Barry,* 922 F.2d 37, 41 (1st Cir. 1990) (need for discovery from proposed intervenor and additional time to prepare for trial and potential delay of trial prejudicial).

The district court found several sources of prejudice from Apple's tardy intervention. The parties would have to request documents and depose Apple's additional witnesses. Dkt. 1153 at 15. And they would have to "devote considerable time and resources" to respond to Apple's expert witness. *Id.* The time needed would go far beyond the number of courtroom hours proposed by Apple—including the likely hundreds of hours necessary to review discovery documents, prepare for and take depositions, prepare responsive expert reports, and prepare for cross-examination at trial.

16

Additionally, Apple's participation at the evidentiary hearing "will necessarily encroach upon the parties' time to present their own cases." Dkt. 1153 at 16. The district court "has already set aside the maximum number of days it has available for the evidentiary hearing," and adding additional days would require a postponement of "months, not weeks." *Id.* at 16-17. "[S]uch a delay would be prejudicial to the parties and contrary to the public's keen interest in prompt resolution of this matter." *Id.* at 17. Finally, if Apple were allowed to intervene, that would "open the door to intervention" by other third parties "halfway through the remedial phase," leading to more complexity and delay. *Id.* at 18.

c. Apple's purpose of presenting "evidence and argument" also renders its motion untimely given that Apple "permitted significant time to elapse" before filing its motion and the parties are now well into preparation for the hearing. Dkt. 1153 at 11. Moreover, "Apple has not established that the information it wishes to present is any different than that the court has already considered—and largely credited— during the liability phase." *Id.* at 11.

17

d. Finally, Apple has little need for intervention. The district court granted Apple substantial participation in the remedies proceedings, permitting it to submit affidavit(s) from one or two fact witnesses and to file a post-hearing brief. Dkt. 1153 at 20. Apple has provided no specifics on why that is insufficient.

Apple is wrong that "Plaintiffs now challenge" the grant of amicus status. Mot. 11. Plaintiffs, who themselves proposed amicus status as an alternative, simply requested that Apple identify and produce relevant documents from the persons who will swear affidavits so that Plaintiffs can respond to those affidavits at the hearing, which Apple has since confirmed to Plaintiffs it will do.

## 2. Google Adequately Represents Apple's Interests.

The district court did not need to (and thus did not) reach adequate representation in denying intervention, but it provides an alternative basis for affirmance here. Where "the intervenor and [an] existing party have the same ultimate objective," adequate representation is presumed. *Cobell v. Jewell*, No. CV 96-01285 (TFH), 2016 WL 10703793, at *2 & n.1 (D.D.C. Mar. 30, 2016) (collecting cases). That presumption applies here. Google and Apple both seek to

18

preserve the status quo under the ISA. To the extent Google's PFJ

changes the status quo, it "would arguably put Apple in a better

position than it is today." Dkt. 1153 at 12 n.4. Google has a strong

incentive to continue defending the ISA: as the district court found,

Google's default status on Apple devices is worth over $28 billion in net

revenue to Google. Dkt. 1033 at 30. And Google is contractually

obligated "to cooperate [with Apple] to defend" the ISA. *Id.* at 102.

Apple cannot rebut the presumption of adequacy. Apple concedes

that Google has adequately represented its interests in this case for

years. Mot. 14. And its current claim that "Plaintiffs' PFJ changed the

calculus," *id.*, lacks merit. Apple alludes to "possible future contractual

interest[s]" between the two, *id.*, but even if such speculative

contractual interests are legally protectible,[2] Google has every incentive

to protect its own contractual flexibility vis-à-vis Apple. Apple also says

that Google cannot be counted on to "prioritize" the defense of the ISA,

*id.* at 15, but Google's PFJ proves otherwise: Google gives pride of place

to preserving the ISA and Google's default placement on Apple devices.

---

[2] The Colorado-Nebraska Plaintiffs argued below that Apple's
speculative interest in unknown future contract terms is not a legally
protected interest under Rule 24(a). Dkt. 1122 at 4-6.

And Apple gets nowhere by speculating that Google will not defend its ability to pay Apple to distribute Google Search. *Id.* at 16. As Apple has admitted, Google's PFJ would allow Apple to "continue receiving value for distributing Google Search." Dkt. 1111 at 6. And if Apple is right that terminating this revenue sharing would discourage Apple from distributing Google Search, *id.* at 16, Google has every incentive to maintain its position.

### B.     Apple Has Not Shown Irreparable Harm from Retaining Nonparty Status Justifying a Stay.

Apple has not shown that it faces a "certain and great" injury "of such imminence that there is a 'clear and present' need" for a stay pending appeal. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Critically, the question is *not* whether Apple would be irreparably harmed if it were excluded from the hearing— because Apple will not be excluded. The district court has already granted Apple extensive participation rights. Moreover, if this Court expedites the appeal (to which Plaintiffs consent), then, by Apple's admission, an appellate ruling in Apple's favor would allow it to participate as a party at the hearing. Mot. 22.

20

Apple faces no irreparable harm from being unable to participate in "discovery and depositions" while this appeal is pending. Mot. 22. Apple conceded before the district court that it "would not be issuing written discovery requests." Dkt. 1153 at 10. All it seeks to do is attend depositions and "potentially ask limited questions at the end." *Id.* Any harm from being denied that "potential[]" opportunity is speculative and de minimis.

Apple argues that denying intervention as of right automatically works irreparable harm, but its authorities say no such thing. They hold only that the denial of intervention can be immediately appealed. *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 524 (1947); *cf. State of Alaska v. FERC*, 980 F.2d 761, 763 (D.C. Cir. 1992) (holding that this Court lacked jurisdiction to review a FERC order limiting an intervenor's participation before the agency). And *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), does not help Apple either because that case did not involve an amicus with participation rights like those the district court granted Apple—which include the opportunity to submit post-trial briefing and multiple affidavits.

21

Apple accordingly has not shown that a stay of this entire litigation is necessary to prevent "certain and great" harm to it. *Chaplaincy*, 454 F.3d at 297. That failure "is fatal to [its] stay request[,] because a showing of irreparable harm is a necessary prerequisite for a stay." *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024).

## C. Granting a Stay Would Substantially Injure the Parties and the District Court.

Apple cannot establish the third factor either, as its motion ignores the harm that a stay would cause the parties and the district court.

The district court has made clear since the outset of the remedies phase that it must issue a final judgment by early August 2025 to preserve the court's institutional knowledge about the case. Dkt. 1153 at 7-8. That timeline grows tighter by the day: there are three weeks until the close of fact discovery and 73 days until trial.

*Any* delay at this point would "compromis[e] [the district court's] ability" to issue a final judgment in a timely manner. Dkt. 1153 at 16 n.5. The court has no remaining "flexibility," having already "organized its docket around the remedial proceeding," *id.* at 17, and stretched its schedule to the limit to accommodate the trial, *id.* at 16 n.5. Thus, a

stay would likely require postponing the remedies trial by "months," if not longer. *Id.* at 17. In the meantime, the district court would "lose [its] institutional knowledge" about the case and its massive evidentiary record, Dkt. 1040 at 6:21-23, requiring the court to expend additional judicial resources recreating that knowledge—at the likely expense of other matters on its docket. Apple is accordingly wrong to dismiss the current timeline as merely the district court's "desired schedule." Mot. 20. The district court has made clear that the current schedule is necessary to its proper functioning.

The parties, meanwhile, are making extraordinary efforts to develop the remedies-stage record quickly. More than 40 depositions are set to occur this month, including the deposition of Apple executive Eddy Cue. The parties continue to exchange other discovery in tandem and to prepare revised versions of their PFJs. A stay would wreak havoc on this schedule, especially for the numerous third parties still to be deposed. If the depositions and discovery scheduled for February and March were lost due to a stay, then the timing of the remedies hearing would be imperiled. And in addition to confounding and delaying the

23

parties' current discovery efforts, a stay could cause already-completed discovery to become stale.

Apple has no legitimate response to all the prejudice that would result from a stay. It argues that prejudice to the parties and the district court is not a reason for denying an *intervention* motion, Mot. 19—but even if Apple were correct (it is not, *see supra* pp. 15-16), prejudice is a well-established ground for denying a *stay pending appeal*, which is an extraordinary "intrusion into the ordinary processes of administration and judicial review." *Nken*, 556 U.S. at 427. The prejudice factor weighs decisively against a stay here.

### D.    Delaying this Long-Pending Enforcement Action for Apple's Appeal Is Not in the Public Interest.

Finally, the public interest weighs strongly against granting a stay. Apple's perfunctory recognition that the public has an interest in the "timely" resolution of this case is a colossal understatement. Mot. 11. Congress has provided that courts should "proceed, as soon as may be, to the hearing and determination" of antitrust actions. 15 U.S.C. §§ 4, 25. That direction is even more salient now that the district court has found that Google has been violating Section 2—through conduct that has persisted for years and continues to this day—to maintain

24

monopolies in markets critical to the American economy. A stay would frustrate the Sherman Act's purposes and "maintain a status quo that the district court has concluded is illegal" under Section 2. *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 628 F. Supp. 1438, 1440, 1442 (D.D.C. 1986).

By "depriv[ing] consumers . . . of the benefits of competition *pendente lite*," *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 904 (7th Cir. 1989), a stay would also perpetuate the significant, real-world harms of Google's conduct. A finding that "the Government prove[d] a violation," without "a remedy adequate to address" the violation, is little help to consumers. *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 323 (1961). As long as the ISA and Google's other distribution agreements remain in place, Google's potential rivals will be unable to get off the ground, consumers will have fewer meaningful options in the search market, and advertisers will pay monopoly prices for ads. Apple's misplaced hand-wringing over whether the remedy in this case will "protect[]" *Apple*, Mot. 11—which has benefited from Google's conduct— ignores the need to deliver prompt relief to the consumers facing real harm from Google's monopolization.

25

Finally, the longer Google's stranglehold over the relevant markets persists, the more competitive harm the district court will need to address to "pry [them] open to competition." *Ford Motor Co.*, 405 U.S. at 577 (quoting *Int'l Salt*, 332 U.S. at 401). As the harm from the barriers to entry for Google's rivals compounds, the task before the district court at the remedial stage gets larger.

On the other side of the ledger, no public interest would be served by delaying this litigation. Apple repeats its insistence that a stay is necessary for the district court to have "the evidence it needs," Mot. 11, but that argument rings hollow. Apple has failed, despite multiple opportunities, to explain what new evidence it will put into the record or what alternative remedy it will propose. In any event, Apple will be given the opportunity to adduce fact affidavits (and to participate at the hearing if this Court reverses the denial of Apple's motion to intervene).

The public interest is therefore best served by allowing this litigation to proceed while Apple's appeal is resolved—not by throwing a wrench in the works (to the detriment of everyone except Apple) and delaying the district court from ordering relief for American consumers.

26

**II. Plaintiffs Consent to Expediting the Appeal.**

Apple requests that this Court expedite its appeal of the denial of intervention, conceding that expedition would allow it to "vindicate its rights" and participate at the hearing even in the absence of a stay. Mot. 21. Plaintiffs have no objection to Apple's proposed briefing schedule, *id.* at 22, although Plaintiffs take no position at this time on whether oral argument is necessary.

## CONCLUSION

The Court should deny Apple's stay motion.

Respectfully submitted.


/s/ *Patrick M. Kuhlmann*

February 7, 2025

OMEED A. ASSEFI
  *Acting Assistant Attorney*
  *General*

DAVID B. LAWRENCE
  *Policy Director*

DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
MATTHEW A. WARING
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 305-4639
patrick.kuhlmann@usdoj.gov

*Counsel for the United States*

*/s/ Christopher A. Knight*
John M. Guard, Acting Attorney
General
Christopher A. Knight, Assistant
Attorney General*
Office of the Attorney General,
State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Christopher.Knight@
myfloridalegal.com
* Admission and entry forthcoming

*Counsel for the State of Florida*

29

*/s/ William J. Shieber*
Ken Paxton, Attorney General
William J. Shieber, Assistant
Attorney General
Office of the Attorney General,
State of Texas
300 West 15th Street
Austin, Texas 78701
William.shieber@oag.texas.gov

*Counsel for the State of Texas*

*/s/ Paula L. Blizzard*
Rob Bonta, Attorney General
Paula L. Blizzard, Senior
Assistant Attorney General
Brian Wang, Deputy Attorney
General
Carolyn D. Jeffries, Deputy
Attorney General
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite
11000
San Francisco, California 94102
Paula.Blizzard@doj.ca.gov

*Counsel for the State of California*

/s/ *Matthew M. Ford*
Matthew M. Ford
Arkansas Bar No. 2013180
Assistant Attorney General
Office of the Arkansas Attorney
General Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for the State of Arkansas*

/s/ *Logan Winkles*
Chris Carr, Attorney General
Logan Winkles, Deputy Attorney
General*
40 Capitol Square SW
Atlanta, GA 30334
lwinkles@law.ga.gov
*Admission and entry pending

*Counsel for the State of Georgia*

*/s/ Scott L. Barnhart*
Theodore Edward Rokita, Attorney
General
Scott L. Barnhart, Chief Counsel
and Director, Consumer Protection
Division
Office of the Attorney General,
State of Indiana
Indiana Government Center
South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov
Entry forthcoming

*Counsel for the State of Indiana*

*/s/ Jonathan E. Farmer*
Jonathan E. Farmer
Deputy Executive Director of
Consumer Protection
Office of the Attorney General of
Kentucky
1024 Capital Center Drive, Suite
200
Frankfort, KY 40601
Tel: 502-696-5448
Fax: 502-573-8317
Jonathan.Farmer@ky.gov

*Counsel for the Commonwealth of
Kentucky*

*/s/ Patrick Voelker*
Liz Murrill, Attorney General
Patrick Voelker, Assistant
Attorney General
Office of the Attorney General,
State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov
Entry forthcoming

*Counsel for the State of Louisiana*

*/s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney
General
Michigan Department of Attorney
General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov
Entry forthcomign

*Counsel for State of Michigan*

*/s/ Michael Schwalbert*
Michael Schwalbert, Assistant
Attorney General
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
Michael.Schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981
*Admission forthcoming

33

*Counsel for the State of Missouri\**

*/s/ Lee Morris*
Lynn Fitch, Attorney General
Lee Morris, Special Assistant
Attorney General
Office of the Attorney General,
State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Lee.Morris@ago.ms.gov
*Admission forthcoming

*Counsel for the State of
Mississippi\**

*/s/ Christian B. Corrigan*
Christian B. Corrigan
Solicitor General, State of
Montana
Anna K. Schneider
Bureau Chief, Montana Office of
Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Christian.corrigan@mt.gov

*Counsel for the State of Montana*

*/s/ Mary Frances G. Jowers*
Alan Wilson, Attorney General
Mary Frances G. Jowers, Assistant
Deputy Attorney General
Office of the Attorney General,
State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-
1549
mfjowers@scag.gov

*Counsel for the State of South
Carolina*

*/s/ Laura McFarlane*
Joshua L. Kaul, Attorney General
Laura McFarlane, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Laura.McFarlane@Wisconsin.gov
Entry forthcoming

*Counsel for the State of Wisconsin*

35

*/s/ Shannon Wells Stevenson*
Shannon Wells Stevenson,
Colorado Solicitor General
Jonathan B. Sallet, Special
Assistant Attorney General
Bryn Williams, First Assistant
Attorney General*
Conor May, Assistant Attorney
General*
Colorado Department of Law
Office of the Attorney General,
10th Floor
1300 Broadway
Denver, CO 80203
Shannon.Stevenson@coag.gov
Jon.Sallet@coag.gov
Bryn.Williams@coag.gov
Conor.May@coag.gov
*Admission and entry pending

*Counsel for the State of Colorado*

*/s/ William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas,
Suite 2200
New York, NY 10036-6710
wfcavanaugh@pbwt.com

*Counsel for the State of Nebraska*

/s/ Jeff Pickett
Jeff Pickett, Senior Assistant
Attorney General*
State of Alaska, Department of
Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite
d200
Anchorage, Alaska 99501
Jeff.Pickett@Alaska.gov
*Admission and entry pending

*Counsel for the State of Alaska*

*/s/ Jayme L. Weber*
Jayme L. Weber, Senior Litigation
Counsel
Office of the Arizona Attorney
General,
400 W. Congress Street, Suite S-
215
Tucson, AZ 85707
Jayme.Weber@azag.gov

*Counsel for the State of Arizona*

37

/s/ Nicole Demers
Nicole Demers, Deputy Associate
Attorney General, Chief of
Antitrust Section*
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, CT 06106
Nicole.Demers@ct.gov
*Admission and entry pending

*Counsel for the State of Connecticut*
BRIAN L. SCHWALB

*/s/ Caroline S. Van Zile*
Caroline S. Van Zile
Solicitor General
Ashwin Phatak
Principal Deputy Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
Tel: (202) 724-6609
Caroline.Vanzile@dc.gov
Ashwin.Phatak@dc.gov

*Counsel for the District of
Columbia*

*/s/ Michael A. Undorf*
Michael A. Undorf, Deputy
Attorney General*
Delaware Department of Justice,
5th Floor
820 N. French Street
Wilmington, DE 19801
Michael.Undorf@Delaware.gov
*Entry pending

*Counsel for the State of Delaware*
DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of
Guam
590 S. Marine Corps Drive, Suite
901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org
*Admission and entry pending

*Counsel for the Territory of Guam**

*/s/ Rodney I. Kimura*
Rodney I. Kimura, Deputy
Attorney General
State of Hawaii, Department of the
Attorney General
425 Queen Street
Honolulu, HI 96813
Rodney.I.Kimura@Hawaii.gov

*Counsel for the State of Hawaii*

39

*/s/ John K. Olson*
John K. Olson, Deputy Attorney
General*
Idaho Office of the Attorney
General
954 W. Jefferson Street, 2nd Floor
PO Box 83720
Boise, ID 83720-0010
John.Olson@ag.idaho.gov
*Admission and entry pending

*Counsel for the State of Idaho*

*/s/ Alex Hemmer*
Alex Hemmer, Deputy Solicitor
General
Office of the Illinois Attorney
General
115 LaSalle Street
Chicago, IL 60603
Alex.Hemmer@ilag.gov

*Counsel for the State of Illinois*

*/s/ Noah Goerlitz*
Noah Goerlitz, Assistant Attorney
General*
Office of the Attorney General,
State of Iowa
1305 East Walnut Street
Hoover Building, 2nd Floor
Des Moines, IA 50319-0001
Noah.Goerlitz@ag.iowa.gov
*Admission and entry pending

*Counsel for the State of Iowa*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney
General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov
*Admission and entry pending

*Counsel for the State of Kansas**

41

*/s/ Christina M. Moylan*
Christina M. Moylan, Assistant
Attorney General*
Office of the Attorney General,
State of Maine
6 State House Station
Augusta, ME 04333-006
Christina.Moylan@Maine.gov
*Entry pending

*Counsel for the State of Maine*

*/s/ Schonette J. Walker*
Schonette J. Walker*
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
swalker@oag.state.md.us
*Admission and entry pending

*Counsel for the State of Maryland*
*/s/ Jennifer E. Greaney*
Jennifer E. Greaney, Deputy Chief,
Antitrust Division*
Massachusetts Office of the
Attorney General
One Ashburton Place
Boston, MA 02108
jennifer.greaney@mass.gov
*Admission and entry pending

*Counsel for the Commonwealth of
Massachusetts*

*/s/ Zach Biesanz*
Zach Biesanz, Senior Enforcement
Counsel Antitrust Division*
Elizabeth Odette, Assistant
Attorney General*
Office of the Attorney General,
State of Minnesota, Suite 600
445 Minnesota Street
St. Paul, MN 55101-2127
Zach.Biesanz@ag.state.mn.us
Elizabeth.Odette@ag.state.mn.us
*Entry pending

*Counsel for the State of Minnesota*
JOHN FORMELLA
Attorney General of New
Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail:
Brandon.h.garod@doj.nh.gov
*Admission and entry pending

*Counsel for Plaintiff State of New
Hampshire**

43

*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior
Deputy Attorney General
Office of the Attorney General,
State of Nevada
100 North Carson Street
Carson City, NV 89701-4717
mbadorine@ag.nv.gov

*Counsel for the State of Nevada*
MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's
Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov
*Admission and entry pending

*Counsel for the State of New
Jersey**

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov
*Admission and entry pending

*Counsel for the State of New
Mexico**
*/s/ Judith Vale*
Judith Vale, Deputy Solicitor
General
New York State Office of the
Attorney General
Appeals & Opinion Bureau
28 Liberty Street, 23rd Floor
New York, NY 1005-1400
Judith.Vale@ag.ny.gov

*Counsel for State of New York*

*/s/ James W. Doggett*
James W. Doggett, Deputy
Solicitor General*
North Carolina Department of
Justice
114 W. Edenton Street
Raleigh, NC 27603
jdoggett@ncdoj.gov
*Entry pending

*Counsel for the State of North
Carolina*

*/s/ Elin S. Alm*
Elin S. Alm, Assistant Attorney
General
Director, Consumer Protection &
Antitrust Division
Office of the Attorney General,
State of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
ealm@nd.gov

*Counsel for the State of North
Dakota*
*/s/ Jennifer L. Pratt*
Jennifer L. Pratt, Director of Major
Litigation
Office of the Attorney General,
State of Ohio
30 East Broad Street, 26th Floor
Columbus, OH 43215
Jennifer.Pratt@OhioAgo.gov

*Counsel for the State of Ohio*

46

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney
General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov
*Admission and entry pending

*Counsel for the State of Oklahoma*

*/s/ Gina Ko*
Gina Ko, Assistant Attorney
General*
Cheryl Hiemstra, Assistant
Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Gina.Ko@DOJ.Oregon.gov
Cheryl.Hiemstra@DOJ.Oregon.gov
*Admission and entry pending

*Counsel for the State of Oregon*

47

_/s/ Tracy Wright Wertz_
Tracy Wright Wertz, Chief Deputy
Attorney General
Office of the Attorney General,
Commonwealth of Pennsylvania
Strawberry Square, 14th Floor
Harrisburg, PA 17120
twertz@attorneygeneral.gov

_Counsel for the State of
Pennsylvania_

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext.
1201
E-Mail: gdiaz@justicia.pr.gov
*Admission and entry pending

_Counsel for the Territory of Puerto
Rico*_

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz, Special Assistant
Attorney General*
Office of the Attorney General,
State of Rhode Island
150 South Main Street
Providence, RI 02903
nvaz@riag.ri.gov
*Entry pending

*Counsel for the State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of
South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us
*Admission and entry pending

*Counsel for the State of South Dakota**

49

*/s/ Tyler T. Corcoran*
Tyler T. Corcoran, Assistant
Attorney General*
Austin Ostiguy, Assistant Attorney
General*
Office of Tennessee Attorney
General
UBS Building, 19th Floor
315 Deaderick Street
Nashville, TN 37243
Tyler.Cororan@ag.tn.gov
Austin.Ostiguy@ag.tn.gov
*Entry pending

*Counsel for the State of Tennessee*

*/s/ Matthew Michaloski*
Matthew Michaloski, Assistant
Attorney General*
Marie Martin, Deputy Division
Director*
Utah Office of the Attorney
General
160 E. 300 South, 5th Floor
PO Box 140830
Salt Lake City, UT 84114-830
mmichaloski@agutah.gov
mwmartin@agutah.gov
*Entry pending

*Counsel for the State of Utah*

*/s/ Christopher J. Curtis*
Christopher J. Curtis, Chief, Public
Protection Division
Office of the Attorney General,
State of Vermont
109 State Street
Montpelier, VT 05609-1001
Christopher.Curtis@Vermont.gov
*Entry pending

*Counsel for the State of Vermont*

*/s/ Tyler T. Henry*
Tyler T. Henry, Assistant Attorney
General
Office of the Attorney General of
Virginia, Antitrust Unit
202 North 9th Street
Richmond, VA 23219
thenry@oag.state.va.us

*Counsel for the State of Virginia*

*/s/ Amy Hanson*
Amy Hanson, Senior Managing
Assistant Attorney General
Office of the Attorney General,
State of Washington
800 5th Avenue, Suite 2000
Seattle, WA 98104
Amy.Hanson@atg.wa.gov

*Counsel for the State of Washington*

*/s/ Douglas L. Davis*
Douglas L. Davis, Senior Assistant
Attorney General
Office of the Attorney General,
State of West Virginia
Consumer Protection and Antitrust
Division, Room 401
1900 Kanawha Boulevard East
PO Box 1789
Charleston, WV 25326
Douglas.L.Davis@wvago.gov

*Counsel for the State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: amy.pauli@wyo.gov
*Admission and entry pending

*Counsel for the State of Wyoming**

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because the document contains 5,168 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(b) because the document has been prepared in Microsoft Word for Microsoft 365 using 14-point New Century Schoolbook font, a proportionally spaced typeface.


*/s/ Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*

## CERTIFICATE OF SERVICE

I certify that on February 7, 2025, I caused this response to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users.


/s/ *Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1), the undersigned certifies:

### A.    Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in Appellant Apple Inc.'s Emergency Motion for a Stay of Proceedings or, in the Alternative, to Expedite the Appeal (Feb. 3, 2025).

### B.    Ruling Under Review

The ruling under review is the Memorandum Opinion and Order of the U.S. District Court for the District of Columbia (Mehta, J.) denying Apple's motion to intervene. Dkt. 1153.

### C.    Related Cases

This case has not previously been before this Court. Counsel is unaware of any related cases for purposes of Circuit Rule 28(a)(1)(C).

/s/ *Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*