ORAL ARGUMENT NOT YET SCHEDULED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA, *et al.*,

        Plaintiffs-Appellees,

v.

GOOGLE LLC,

        Defendant-Appellee,

APPLE INC.,

        Movant-Appellant.

Case No. 25-5016

**APPELLANT APPLE INC.'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY OF PROCEEDINGS OR, IN THE ALTERNATIVE, TO EXPEDITE THE APPEAL**

Plaintiffs consent to expedited briefing to ensure that this appeal can be resolved before the remedies trial begins on April 21, 2025. So the critical question for this panel is whether to grant a stay pending appeal. It should. Absent a stay, Apple will be unable to view evidence, participate in depositions, or otherwise fully develop its case if and when this Court orders that Apple be allowed to intervene. Without a stay, Apple faces immediate and irreparable harm. Conversely, especially if the appeal is expedited, any delay in the proceedings will be small.

1

Apple meets all the stay factors. As to likelihood of success on the merits, Plaintiffs simply ignore the correct legal standard, which asks at what point it was "clear" to Apple that its interests would not be adequately protected by Google. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 279-80 (2022) (citation omitted). Plaintiffs' Proposed Final Judgment ("PFJ")—which was not filed until November 20, 2024—changed everything by expanding the case to reach *Apple*'s, and not just Google's, conduct. Plaintiffs do not dispute that their PFJ targets Apple by name and, if adopted by the district court, it would harm Apple's users and threaten billions of dollars in Apple's revenue and that Google lacks the same incentive to defend this interest. Plaintiffs likewise do not dispute that their PFJ rests on factual assumptions about Apple's business incentives and decision-making. These concessions make plain that November 20 marked a critical turning point in this litigation.

As to irreparable harm, Plaintiffs assert that because the district court granted Apple a limited *amicus* status, Apple faces no harm from being denied *party* status. This Court has rejected that logic before, and it should do so here, too. Apple's right to intervene will be lost if Apple is not permitted to act *as a party* in the lead-up to the remedies trial—including as to discovery, preparation of witnesses, and the presentation of evidence. With respect to the equities and the public interest, Plaintiffs urge this Court not to "throw[] a wrench in the works" by delaying the

district court's remedial order. Opp. 26. But a small delay of a couple of months in litigation is far from unusual, particularly when there is an intervening appeal presenting such a critical issue for the case. Plaintiffs' and the district court's objections stem from the erroneous premise that the remedies schedule is inviolable. The real public interest is in getting the remedy—which could impact consumers' use of search engines for decades—*right*. If the remedies phase proceeds without Apple's intervention and ability to participate as a party, it will harm not just Apple, but also Apple's users and the American public.

## ARGUMENT

### I. APPLE SATISFIES THE FACTORS FOR A STAY

#### A. Apple Is Likely To Succeed On The Merits

As Apple has explained, it faces a clear threat of irreparable harm if a stay is denied. Plaintiffs thus focus their motion on likelihood of success. Plaintiffs do not dispute that Apple has protectable interests that may be impaired by this litigation. They instead assert that Apple's motion was untimely and, in the alternative, that Google can adequately represent Apple's interests. Plaintiffs are wrong.

**1.** As to timeliness, Plaintiffs assert that the Court should look to when a putative intervenor "knew or should have known that any of its rights would be directly affected by the litigation." Opp. 14 (quoting *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (citation omitted)). But this ignores more

3

recent precedent on the governing standard. In *Cameron*, the Supreme Court held that "the most important circumstance relating to timeliness" is that an applicant "sought to intervene 'as soon as it became *clear*'" that its "interests 'would no longer be protected.'" 595 U.S. at 279-80 (citation omitted and emphasis added). Plaintiffs do not respond to *Cameron* or *United Airlines, Inc. v. McDonald*, which disclaimed that a putative intervenor needs to file an intervention motion "to guard against the *possibility* that" its interests might not be protected. 432 U.S. 385, 394 n.15 (1977) (emphasis added).

Only by ignoring the correct standard do Plaintiffs contend that Apple should have intervened at various prior points in the litigation below. In Plaintiffs' view, Apple should have intervened (1) at the very start of this case, or perhaps (2) after the district court issued its liability decision, or (3) at least when Plaintiffs filed their high-level remedial framework on October 8, 2024. Plaintiffs did not float the latter two dates until their opposition to this motion. But Plaintiffs' failure to state *which* of these vastly different dates started the intervention clock only highlights that none of them put Apple on notice—much less *clear* notice—of the stark divergence between Google's and Apple's interests brought about by the November 20 PFJ.

At the start of this case, Apple knew that Plaintiffs sought to hold Google liable for maintaining a monopoly through allegedly "exclusionary agreements," whereby Google is set as "the default search engine on web browsers and mobile

4

devices." Opp. 2. In Plaintiffs' own framing, this case centered on Google's agreements for default placement on web browsers. That remained true as of the August 5, 2024 liability decision, which held that "Google has violated Section 2 … through its exclusive distribution agreements." Dkt. 1033 at 276. On October 8, 2024, Plaintiffs filed their "high-level framework" regarding remedies. Dkt. No. 1052. But that framework did not mention Apple by name, did not propose the remedy they included in their later PFJ targeting Apple, and identified Google's "revenue share payments" as a problem only because they would "disincentivize its partners from diverting queries to Google's rivals," *id.* at 5. At none of these points did Apple have notice that its interests diverged from Google's interests.

But on November 20, Plaintiffs fundamentally changed the focus of this case. Whereas Plaintiffs had previously focused exclusively on Google, their PFJ targeted Apple by name with a remedy designed to force Apple—a non-party that had not been accused of any wrongdoing—to develop a competing search engine. *See* Dkt. 1062-1 at 3, 7. In so doing, the PFJ would harm Apple's users and Apple, with Google unable to defend these interests. Critically, Apple receives revenue for distributing every other search engine available on its devices, irrespective of default status. But the PFJ is designed to eliminate Apple's ability to receive such revenue from Google no matter the terms—and it indeed eliminates Apple's ability to contract for "anything of value" with Google for ten years, a term that reaches far

beyond the contours of the ISA. Dkt. 1062-1 at 7. In short, Plaintiffs' PFJ is premised on the erroneous assumption that it will compel a non-party, under the pain of economic sanction, to develop a new product.

Plaintiffs do not deny this. They in fact confirmed before the district court that they seek a "broad" remedy that would prohibit any "exchange of money" between Apple and Google for ten years. Tr. at 42:10-20; 41:18-42:2. The PFJ itself explains that it is designed to encourage "Apple to compete in or enter" the market for general search services. Dkt. 1062-1 at 7. And in opposition, Plaintiffs do not even acknowledge the breadth of their proposed remedy targeting Apple.

In attempting to defend the district court's reliance on October 8—a date Plaintiffs themselves did not propose below—Plaintiffs vaguely suggest that their October 8 framework "made clear" that "Plaintiffs would seek an order addressing existing harms and preventing their recurrence," Opp. 15, and so Apple should have intervened at that point. But by setting forth a generalized framework that failed even to mention Apple by name, Plaintiffs' October 8 filing in no way made Apple aware that Plaintiffs would subsequently propose a specific contractual remedy threatening to inure to Google's benefit.

Plaintiffs incorrectly assert several forms of "prejudice"—that the parties would have to "request documents," "depose Apple's additional witnesses," and devote "likely hundreds of hours necessary to review discovery" and "prepare" for

6

trial—as a reason to deny Apple's motion as untimely. Opp. 16. The fact that a party's intervention may create additional work is not a reason to otherwise deny an applicant their right to intervene under Rule 24. The critical question is whether Apple timely intervened after it became clear its interests were not adequately protected, not whether Apple's intervention would complicate the case going forward. If it were otherwise, existing parties could always point to the burdens of litigation and potential delay to defeat a motion to intervene. Rule 24, which provides a *right* to intervene, does not refer to, or countenance, such an approach. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[p]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."); *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013) (similar).

**2.** As for adequacy, although the district court did not find that Google could adequately represent Apple's interests, Plaintiffs argue in the alternative that Apple's and Google's interests are aligned because "Google has every incentive to protect its own contractual flexibility vis-à-vis Apple." Opp. 19. That is wrong: Google, which has its own commercial interests, cannot defend *Apple's* contractual right to receive payments from Google for distributing Google Search, especially when Plaintiffs' PFJ threatens to afford Google an advantage over competitors to the detriment of both Apple's users and Apple. *See supra* 5. And Plaintiffs' contention

7

that Apple and Google share "the same ultimate objective" is similarly misplaced. Opp. 18. Plaintiffs do not dispute that Google seeks to maintain its ability to be the pre-set default and that it has tied default status to paying Apple for distributing Google Search. Apple, however, believes "that revenue share should continue regardless of default." Motion for Stay (Mot.) 16. Apple cannot expect Google to defend Apple's right to receive revenue share in the absence of default status. Plaintiffs likewise ignore this Circuit's well-established precedent that where a putative intervenor would give an issue greater emphasis—or "primacy"—than an existing party, the putative intervenor has grounds to intervene under Rule 24. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

> **B. Apple Clearly Faces Irreparable Harm, And The Public Interest And Balance Of Equities Favor A Stay**

Plaintiffs' attempt to answer the remaining factors also fails.

**1.** The threat of irreparable harm is clear and undeniable. If the trial—and discovery leading up to trial—proceeds without Apple as an intervenor, Apple will forever lose its right to participate and develop the record *as a party*. That is why denials of motions to intervene as of right are immediately appealable, *State of Alaska v. FERC*, 980 F.2d 761, 763 (D.C. Cir. 1992), and why this Court has granted a stay of proceedings while such appeals unfold, *Yocha Dehe Wintun Nation v. U.S. Dep't of Interior*, 3 F.4th 427, 429 (D.C. Cir. 2021).

Plaintiffs have no response to *Yocha Dehe*, nor to the cases from the Ninth, Tenth, and Federal Circuits, which are in accord. *See* Mot. 12. Instead, Plaintiffs contend that "[t]he district court has already granted Apple extensive participation rights" because Apple is an *amicus*. Opp. 20. But *Nuesse v. Camp* squarely rejects that argument: "The applicant is often relegated to the status of amicus curiae when intervention is properly denied. … But this is not an adequate substitute for participation as a party." 385 F.2d 694, 704 n.10 (D.C. Cir. 1967). Cases in agreement are legion. *See, e.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) ("[T]he opportunity to file an *amicus* brief in no way substitute[s] for a formal opportunity to participate fully as an intervening party."); *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (similar). And as to the (up to) two paper affidavits the district court afforded Apple, Plaintiffs have already indicated their intent to dispute their admissibility. *See* Dkt. 1158-1 (Ray Decl.) ¶¶ 3-4.

If the remedies phase proceeds without Apple's participation, Apple will be unable to collect or view evidence, present or cross-examine witnesses (including those who testify directly about Apple), or argue in open court. Those rights will be irretrievably lost. And even if this Court expedites the appeal, as Plaintiffs recognize would be appropriate, Apple will be at a decided disadvantage relative to the existing parties—who will have had the opportunity to develop evidence through depositions

9

and build their case based on the full record. Witnesses are being deposed and documents are being produced while Apple is forced to stand on the sidelines. At best, if this Court later reverses the order below, Apple will be hamstrung at trial given that it was unable to participate as a party in the critical period leading up to trial. The trial in this case is already expedited. Leaving Apple with (at most) a few weeks to prepare for trial, and to prepare its witnesses for trial, would irreparably compromise its intervention right.

**2.** The equities and the public interest also favor a stay. Plaintiffs contend that the court "must issue a final judgment by early August 2025." Opp. 22. Apple agrees the remedy in this case should be resolved expeditiously, but there is nothing talismanic about "early August 2025." That date was picked by the court; the timing of litigation is always in flux as cases evolve. Moreover, Plaintiffs do not deny that the remedy in this case may reshape the general search services market in the United States and thereby affect how hundreds of millions of people interact with search engines—Plaintiffs indeed embrace the notion that this case promises such sweeping relief. But they simultaneously suggest that the remedies phase of this case must proceed on a rigid schedule, lest the district court lose its institutional knowledge of the case. The notion that a brief delay in this long-running litigation might render "stale" the "already-completed discovery," Opp. 24, simply cannot be squared with Plaintiffs request for a remedial order that lasts *ten years*. Plaintiffs cannot in any

10

event explain why the protectable interests of a non-party must be sacrificed at the altar of an artificial deadline for issuing a remedial order.

The public interest also favors a stay. The district court has carefully presided over this case for four years. It is not the district court's fault that, nearing the finish line, Plaintiffs disrupted the remedial phase of this case by proposing a remedy that compelled Apple to promptly move to protect its interests. But with Plaintiffs' PFJ hanging over Apple's head, the district court abused its discretion by subordinating Apple's rights—guaranteed by the Federal Rules of Civil Procedure—to the strictures of the court's schedule. Rule 24 safeguards "the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). That is clearly true here given the stakes of this important case.

## II. PLAINTIFFS CONSENT TO EXPEDITION

Plaintiffs have consented to the expedition of this appeal. Accordingly, this Court should at a minimum grant expedition based on Apple's proposed schedule. That also will minimize any impact of the stay necessary to protect Apple's intervention right.[1]

---

[1] Consistent with that schedule, Apple plans to file its opening brief on February 12.

11

Dated: February 10, 2025

Respectfully submitted,

*/s/ Gregory G. Garre*
Gregory G. Garre
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
gregory.garre@lw.com

Alfred C. Pfeiffer, Jr.
Sarah M. Ray
Aaron T. Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Movant-Appellant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,597 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: February 10, 2025                             */s/ Gregory G. Garre*