[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 25-5016**

# United States Court of Appeals
# for the District of Columbia Circuit

_____

UNITED STATES OF AMERICA; ET AL.,

*Plaintiffs-Appellees*,

v.

GOOGLE LLC,

*Defendant-Appellee*,

APPLE INC.,

*Movant-Appellant*.

_____

On Appeal from the United States District Court for the District of Columbia
Nos. 1:20-cv-03010-APM; 1:20-cv-03715-APM (Hon. Amit Priyavadan Mehta)

---

### OPENING BRIEF OF APPELLANT APPLE INC.

---

| | |
|---|---|
| Alfred C. Pfeiffer, Jr. | Gregory G. Garre |
| Sarah M. Ray | Peter E. Davis |
| Aaron T. Chiu | LATHAM & WATKINS LLP |
| LATHAM & WATKINS LLP | 555 Eleventh Street, NW, Suite 1000 |
| 505 Montgomery Street, Suite 2000 | Washington, DC 20004 |
| San Francisco, CA 94111 | (202) 637-2200 |
| (415) 391-0600 | gregory.garre@lw.com |
| | |
| | Ben Harris |
| | LATHAM & WATKINS LLP |
| | 1271 Avenue of the Americas |
| | New York, NY 10020 |
| February 12, 2025 | (212) 906-1200 |

*Counsel for Appellant Apple Inc.*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1), the undersigned counsel certifies as follows:

**A.    Parties and Amici**

Movant-Appellant is Apple Inc. ("Apple").

Plaintiffs-Appellees are United States of America; State of Arkansas; State of Florida; State of Georgia; State of Indiana; Commonwealth of Kentucky; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of South Carolina; State of Texas; State of California; State of Wisconsin; State of Michigan; State of Colorado, 20-3715; State of Nebraska, 20-3715; State of Arizona, 20-3715; State of Iowa, 20-3715; State of New York, 20-3715; State of North Carolina, 20-3715; State of Tennessee, 20-3715; State of Utah, 20-3715; State of Alaska, 20-3715; State of Connecticut, 20-3715; State of Delaware, 20-3715; District of Columbia, 20-3715; Territory of Guam, 20-3715; State of Hawaii, 20-3715; State of Idaho, 20-3715; State of Illinois, 20-3715; State of Maryland, 20-3715; Commonwealth of Massachusetts, 20-3715; State of Minnesota, 20-3715; State of New Jersey, 20-3715; State of Oregon, 20-3715; State of Rhode Island, 20-3715; State of Washington, 20-3715; State of Kansas, 20-3715; State of Maine, 20-3715; State of Nevada, 20-3715; State of New Hampshire, 20-3715; State of New Mexico, 20-3715; State of North Dakota, 20-3715; State of Ohio, 20-3715; State of

Oklahoma, 20-3715; Commonwealth of Pennsylvania, 20-3715; Commonwealth of Puerto Rico, 20-3715; State of South Dakota, 20-3715; State of Vermont, 20-3715; Commonwealth of Virginia, 20-3715; State of West Virginia, 20-3715; and State of Wyoming, 20-3715.

Defendant-Appellee is Google LLC.

Limited purpose intervenors in the district court for the purposes of judicial records are The New York Times Company; Jon Schweppe; and Adam Candeub.

Amici in the district court are the American Antitrust Institute; Behavioral Economists (George Loewenstein, Klaus M. Schmidt; Paul Heidhues); and Pet Fund.

There were no other parties, intervenors, or amici before the district court, and no intervenors or amici have appeared in this Court.

### B.     Rulings Under Review

The ruling under review is the United States District Court for the District of Columbia Order denying Apple's motion for limited intervention, Dkt. 1153 (Jan. 27, 2025), reproduced at JA972-90.

### C.     Related Cases

This Court previously resolved an appeal in this case in USCA Case No. 24-5006.  Counsel for Movant-Appellant are not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Appellant Apple Inc. certifies that Apple does not have a parent company, and no publicly held corporation owns 10% or more of Apple's stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument would materially assist the Court's disposition of this appeal. This case is widely recognized as one of the most important antitrust cases in decades. Apple seeks to intervene as of right to protect its property interests in the wake of an extraordinary remedy proposed by Plaintiffs explicitly targeting Apple and preventing it from entering into any relationship with Defendant Google LLC for "anything of value" for a decade. The district court denied that motion on timeliness grounds even though Apple moved promptly after Plaintiffs proposed their extreme remedy. Oral argument would assist the Court in its consideration and resolution of this critical issue.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT................................... iii

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF AUTHORITIES ................................................................ vii

GLOSSARY.....................................................................................x

INTRODUCTION .............................................................................1

STATEMENT OF JURISDICTION..........................................................5

ISSUE PRESENTED ..........................................................................6

STATUTES AND REGULATIONS..........................................................6

STATEMENT OF THE CASE................................................................6

      A.     Plaintiffs Sue Google Under The Federal Antitrust Laws ..................6

      B.     The District Court Holds That Google Violated Section 2..................7

      C.     Plaintiffs Propose An Extraordinary Remedy Targeting Apple ..........9

      D.     Apple Moves To Intervene Under Rule 24 ........................................11

      E.     The District Court Denies Apple Intervention ....................................14

SUMMARY OF ARGUMENT ...............................................................16

STANDARD OF REVIEW ...................................................................20

ARGUMENT ..................................................................................20

I.     Apple's Motion To Intervene Was Timely Because It Moved
     Promptly After It Became Clear That Google Could No Longer
     Adequately Represent Apple's Interests ........................................23

A.  A Motion To Intervene Is Timely When Filed Promptly After It Becomes Clear That Representation Is Inadequate ............................ 23

B.  Apple Moved To Intervene Promptly After Plaintiffs' And Google's PFJs Made Clear Google Could Not Represent Apple's Interests ........................................................................................ 25

II.  The Remaining Timeliness Considerations Discussed By The District Court Support Apple's Intervention ................................................. 33

A.  The Purpose Of Intervention Supports Apple ..................................... 35

B.  The Need For Intervention Favors Apple ........................................... 39

C.  The Absence Of Unfair Prejudice Supports Apple's Intervention ........................................................................................ 40

CONCLUSION ....................................................................................... 46

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amador County v. United States Department of Interior*,
772 F.3d 901 (D.C. Cir. 2014)................................................................35

*\*Cameron v. EMW Women's Surgical Center, P.S.C.*,
595 U.S. 267 (2022)......................................................1, 3, 16, 23, 24

*\*Campaign Legal Center v. Federal Election Commission*,
68 F.4th 607 (D.C. Cir. 2023)..............................20, 21, 23, 33

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
386 U.S. 129 (1967).........................................................................39

*Coalition of Arizona/New Mexico Counties for Stable Economic
Growth v. Department of Interior*,
100 F.3d 837 (10th Cir. 1996) ..........................................................39

*Crossroads Grassroots Policy Strategies v. Federal Election
Commission*,
788 F.3d 312 (D.C. Cir. 2015)..........................................................20

*Deutsche Bank National Trust Co. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2013).........................................................44

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986).........................................................24

*Fordyce v. City of Seattle*,
55 F.3d 436 (9th Cir. 1995) ...............................................................39

*Forest Conservation Council v. United States Forest Service*,
66 F.3d 1489 (9th Cir. 1995) ...........................................................38

\* Authorities upon which we chiefly rely are marked with asterisks.

**Page(s)**

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) .......................................................5, 36

*\*Hodgson v. United Mine Workers of America*,
  473 F.2d 118 (D.C. Cir. 1972) .......................................................5, 44

*Kalbers v. United States Department of Justice*,
  22 F.4th 816 (9th Cir. 2021) ...............................................................35

*Karsner v. Lothian*,
  532 F.3d 876 (D.C. Cir. 2008) .....................................................20, 21

*Massachusetts v. Microsoft Corp.*,
  373 F.3d 1199 (D.C. Cir. 2004) ...........................................................39

*Natural Resources Defense Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) ...............................................36, 43, 44

*NextEra Energy Global Holdings B.V. v. Kingdom of Spain*,
  112 F.4th 1088 (D.C. Cir. 2024) .............................................20, 32, 42

*\*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) .............................................................39

*Roane v. Leonhart*,
  741 F.3d 147 (D.C. Cir. 2014) .............................................................34

*Roeder v. Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003) .....................................................24, 25

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) .......................................................34, 41

*Smoke v. Norton*,
  252 F.3d 468 (D.C. Cir. 2001) .....................................................24, 34

*United States v. AT&T Co.*,
  642 F.2d 1285 (D.C. Cir. 1980) ...........................................................36

*United States v. City of Detroit*,
  712 F.3d 925 (6th Cir. 2013) ...............................................................34

**Page(s)**

## STATUTES

15 U.S.C. § 2 ..................................................................................................6

15 U.S.C. § 4 ..................................................................................................5

28 U.S.C. § 1291 ............................................................................................5

28 U.S.C. § 1331 ............................................................................................5

28 U.S.C. § 1337(a) .......................................................................................5

28 U.S.C. § 1345 ............................................................................................5

## OTHER AUTHORITIES

*Federal Rule of Civil Procedure Rule 24(a) ...................................22, 25

*Federal Rule of Civil Procedure Rule 24(a)(2).......................................1

Dave Michaels & Miles Kruppa, *Google Should Be Forced to Sell
    Chrome Browser, Justice Department Says*, Wall St. J. (Nov. 21,
    2024) .......................................................................................................27

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice &
    Procedure* (3d ed., 2024 update) .........................................................21

# GLOSSARY

| Abbreviation/acronym | Description |
| --- | --- |
| Apple | Apple Inc. |
| Google | Google LLC |
| ISA | Information Services Agreement |
| Op. | Memorandum Opinion Denying Apple's Motion for Limited Intervention, Dkt. 1153 (Jan. 27, 2025), reproduced at JA972-90. |
| PFJ | Proposed Final Judgment |

## INTRODUCTION

Federal Rule of Civil Procedure 24(a)(2) provides that, on a "timely motion," a "court *must* permit anyone to intervene" who claims a property interest that may be threatened by an action, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). The Supreme Court has held that, in gauging the timeliness of a Rule 24 motion, the "most important circumstance" is whether the movant sought to intervene promptly once it became "clear" that its interests were no longer adequately protected by existing parties to the case. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022). In this case, Apple moved to intervene promptly after Plaintiffs proposed an extraordinary remedy targeting Apple. But the district court subordinated Apple's right to intervene to secondary considerations about the strictures of its schedule and the risk that other entities might try to file their own intervention motions. That was error.

Plaintiffs filed this antitrust action against Google. Plaintiffs did not name Apple as a defendant, or allege that Apple had engaged in any wrongdoing. For more than four years, this antitrust case has been about whether Google monopolized several search-related markets. Plaintiffs argued, among other things, that Google's search distribution agreements with browser developers, phone manufacturers, and wireless carriers—through which Google was the pre-set default search engine and

1

Google paid a share of Google Search revenue generated through searches on those access points—were anticompetitive exclusive dealing arrangements.  And in a nearly 300-page liability decision issued in August 2024, the district court found that "Google has violated Section 2 of the Sherman Act by maintaining a monopoly . . . through its exclusive distribution agreements."  JA6010 (Liability Decision 276).

But on November 20, 2024, Plaintiffs decided to expand the case to focus on Apple.  Plaintiffs filed a Proposed Final Judgment ("PFJ") that, for the first time in this case, targeted Apple by name with a remedy designed to force Apple to develop its *own* general search engine to compete with Google.  Plaintiffs seek to accomplish that aim through a sweeping provision directing that for the next decade, "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets."  JA682 (Pls.' PFJ 7).  In other words, Plaintiffs threaten to eliminate billions of dollars in Apple's annual revenue—which, perversely, would benefit *Google*—all in the false hope that Apple will build an entirely new business to compete with Google.

Google filed its own PFJ one month later, on December 20, proposing a far narrower remedy that vigorously guards Google's interests but that does not represent Apple's unique concerns in protecting its users and preserving revenue share.  So just three days later, Apple moved to intervene under Rule 24 to protect

2

its *own* interests in this case—interests that are now directly threatened by Plaintiffs' PFJ explicitly targeting Apple with a term of extraordinary breadth and that are unguarded by Google's vision for the proper remedy protecting its own interests.

The district court did not dispute that Apple meets three of the four requirements for intervention as of right. The court did not dispute that Plaintiffs' remedy would both threaten harm to Apple's users and deny Apple substantial revenue. The court did not deny that Plaintiffs' remedy is premised on assumptions about Apple's future behavior. And the court did not deny that Plaintiffs' remedy came as a surprise to Apple—and indeed, to the court itself. Instead, the court rested its decision on a single factor—timeliness—concluding that Apple learned that Google could not adequately represent Apple's interests when, on October 8, 2024, Plaintiffs filed a high-level "framework" outlining a range of conceivable remedies. JA621-52 (Pls.' Remedy Framework). But that general framework document *did not mention Apple at all*, and Plaintiffs themselves never argued that the intervention clock began running on October 8. That decision is wrong and should be reversed.

First, the district court failed to heed the governing legal standard. As the Supreme Court recently emphasized, the "most important circumstance relating to timeliness" is whether the applicant sought intervention promptly once it became "clear" its interests were no longer protected. *See Cameron*, 595 U.S. at 279-80. Here, it certainly was not *clear* that Apple's interests were not adequately protected

by Google until Plaintiffs filed their PFJ explicitly targeting Apple, and Google's own PFJ confirmed that Google was focused on its own interests. The district court claimed that Apple should have intervened after Plaintiffs filed their proposed remedial framework on October 8, 2024—a position not even Plaintiffs advanced. But that general framework did not mention Apple by name, did not propose any specific remedies, and did not put Apple on notice that Plaintiffs would seek a remedy that threatens to advantage Google at Apple's expense.

Second, the district court erroneously invoked prejudice in the form of limited additional discovery and several extra trial hours at the remedies trial as a reason for extinguishing Apple's *right* to intervene under Rule 24. If a party moves promptly once its interests are not adequately protected, as Apple did here, then any resulting prejudice is no basis to deny intervention; it is the necessary consequence of Rule 24 affording parties the right to intervene. And the court's prejudice discussion also does not withstand scrutiny. The court's primary concern appeared to be adding two or three trial days, but it nowhere explained how such a minor change, in a case already lasting more than four years, would cause any harm. Indeed, roughly 30 minutes after hearing argument on Apple's motion, the court expanded the remedies trial by five days at the request of Google. The district court erroneously subordinated Apple's right to intervene to concerns about how Apple's intervention might make the trial slightly longer or more complicated.

4

The district court also erred in penalizing Apple based on the possibility that other third parties might seek to intervene. Plaintiffs' proposed remedy did not target any other third parties the way it targets Apple, and no other party has moved to intervene on this basis. But more fundamentally, the court's concern misses the point of Rule 24. "The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129, 130 (D.C. Cir. 1972). Especially in a case with of this public importance, that interest must trump concerns about case management, scheduling logistics, or additional work.

This Court should reverse.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 15 U.S.C. § 4, and 28 U.S.C. §§ 1331, 1337(a), and 1345, because this action arises under the federal antitrust laws. On January 27, 2025, the district court issued a memorandum opinion and order denying Apple's motion for limited intervention as of right and for permissive intervention. JA972-90 (Op.). This Court has jurisdiction under 28 U.S.C. § 1291. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) ("The denial of a motion for intervention as of right is an appealable final order.").

5

## ISSUE PRESENTED

Whether the district court erred in denying Apple's motion to intervene.

## STATUTES AND REGULATIONS

Pertinent statutes and rules are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Plaintiffs Sue Google Under The Federal Antitrust Laws

In October 2020, the United States and 11 States filed this lawsuit in the United States District Court for the District of Columbia, claiming that Google violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by (among other things) "entering into exclusive agreements to secure default distribution" on web browsers and mobile devices throughout the United States.  JA339 (Liability Decision 5); *see also* JA254-317 (Compl.).  In December 2020, 35 States, along with the District of Columbia, Puerto Rico, and Guam, filed a separate complaint with additional allegations.  JA339 (Liability Decision 5); *see* JA1005-1119 (Col. Pls.' Compl.).  The district court consolidated the two cases for purposes of discovery and trial and held a liability bench trial, which concluded on November 16, 2023.  JA340-41 (Liability Decision 6-7).

At the liability trial, the district court heard evidence about a contract between Apple and Google called the Information Services Agreement ("ISA").  Two Apple witnesses, Eddy Cue and John Giannandrea, testified at trial about the history of the

6

ISA, which requires Apple to pre-set Google Search as the default search engine for queries in Apple's web browser, called Safari.  JA743 (Mot. to Intervene 3); JA1120 (Ex. JX0033 at 1).   Under the ISA, Google pays Apple a percentage of its net advertising revenue generated from searches through Safari and on Apple devices (sometimes referred to as Apple's "search access points").  JA743 (Mot. to Intervene 3).

In both 2009 and 2012, Apple "sought greater flexibility to grant its users access to other" search engines by attempting to negotiate for revenue share without any promise to make Google the pre-set default search engine.  JA444-45 (Liability Decision 110-11).  Apple maintains that more flexible arrangement with every other search engine available on Apple devices.  JA762-63 (Cue Decl. ¶¶ 2-3). But Google did not agree, and the ISA continues to provide Google pre-set default status.  JA538, 540 (Liability Decision 204, 206).  In 2022, Google paid Apple roughly $20 billion under the ISA for distributing Google Search to Apple users via Apple search access points.  JA437 (*id.* at 103).  In addition to testifying about the history of the ISA, Apple's witnesses also explained that Apple determined not to build a search engine. JA438-442 (*id.* at 104-08).

### B.     The District Court Holds That Google Violated Section 2

On August 5, 2024, the district court issued Findings of Fact and Conclusions of Law, holding that Google violated Section 2 of the Sherman Act "by maintaining

its monopoly in two product markets in the United States—general search services and general text advertising—through its exclusive distribution agreements." JA610 (*id.* at 276). The court characterized Apple as a "Key Third Part[y]" in the case. JA343 (*id.* at 9).

Among other things, the district court determined that the ISA and Google's other similar distribution agreements with third parties are "exclusive insofar as they establish Google as the out-of-the-box default search engine." JA538 (*id.* at 204). In concluding as much, the district court explained that "Google's additional counterargument that the ISA is not exclusive because Apple may not want more flexibility under the ISA is without merit." JA540 (*id.* at 206). And, the court added, "Google also overlook[ed] that Apple had previously tried to negotiate around exclusivity in the ISA to no avail." *Id.*; *see also* JA444-45 *(id.* at 110-11) (recounting Apple's efforts to seek flexibility). The district court held that Google's exclusive dealing arrangements had anticompetitive effects in the market for general search services. *See* JA548-82 (*id.* at 214-48). And such agreements did not result in cognizable procompetitive effects, because Google had not shown that "*exclusive* defaults" specifically were necessary to "enhance the user experience, quality, and output in the market for general search services." JA582 (*id.* at 248). The district court concluded that "Plaintiffs have established that Google is liable under Section 2 of the Sherman Act for unlawfully maintaining its monopoly in the market for

general search services through its exclusive distribution agreements with browser developers," among others.  JA591-92 (*id.* at 257-58).

### C. Plaintiffs Propose An Extraordinary Remedy Targeting Apple

Following its liability decision, the district court ordered Plaintiffs to file a "high-level framework of potential remedies" by October 8, 2024, and a more specific PFJ by November 20, 2024.  JA617-18 (Scheduling Order 1-2).  Google's own PFJ was due by December 20, 2024.  JA618 (*id.* at 2).

On October 8, 2024, Plaintiffs filed their "high-level framework," which generally identified "four categories of harms," including "search distribution and revenue sharing."  JA625 (Pls.' Remedy Framework 4).  In line with the "high-level" nature of the framework, Plaintiffs did not propose specific remedies.  So the framework did not propose a remedy seeking divestiture; it instead stated that Plaintiffs were "considering behavioral and structural remedies."  JA627 (*id.* at 6).  Nor did the framework mention by name or otherwise propose any remedies particular to Apple.

On November 20, 2024, Plaintiffs filed their PFJ.  Unlike the October 8 framework, Plaintiffs' PFJ identifies Apple by name and targets Apple with an extremely broad provision.  JA676-710 (Pls.' PFJ).  The PFJ does not simply prohibit Apple and Google from maintaining an "exclusive distribution agreement[]," JA592 (Liability Decision 258), whereby Google has pre-set default

status on Apple devices. Instead, Plaintiffs propose a remedy premised on forcing Apple to create its own search engine to compete with Google, specifically: "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets." JA682 (Pls.' PFJ 7). Plaintiffs propose that the prohibition on Apple and Google's exchange of "anything of value" last 10 years. JA682, 709 (*id.* at 7, 34). Despite hinging its proposed remedy on what *Apple* would do, Plaintiffs nevertheless did not include a single Apple witness on their witness list for the remedies phase trial. JA872 (Status Conference Tr. 31:9-10).

In addition to singling out Apple by name with this unique remedial term, for the first time the PFJ also proposed structural remedies that would split up Google's business units. Google would have to "promptly and fully divest Chrome," Google's web browser, JA684 (Pls.' PFJ 9); Google could not preference itself on "Android or Google-owned apps or data," JA685 (*id.* at 10), or, in the alternative, must divest Android, JA686 (*id.* at 11); Google must provide its competitors "ongoing access to its Search Index," JA687 (*id.* at 12); and Google may not invest in "any technologies, such as AI products, that are potential entrants into the GSE or Search Text Ads markets," JA683 (*id.* at 8).

On December 20, 2024, Google filed its own PFJ. Google broadly opposes any divestiture of Chrome, significant changes to Google's relationship with Android, or prohibitions regarding AI investments. JA711-22 (Summ. of Def.'s PFJ). As for Google's search distribution agreements, Google's PFJ focuses on maintaining its ability to contract for pre-set default status on Apple's browser. JA726-27 (Def.'s PFJ 4-5). The PFJ proposes that Google be allowed to continue to "enter into . . . agreement[s] requiring a Browser Developer to set Google Search as the Browser Default Search Engine" so long as browser developers can revisit default status "on an annual basis" by choosing a different default for particular operating systems or browser modes. *Id.* Google's PFJ also provides that browser developers (such as Apple) will not "forego[] any payments . . . where Google search remains set as the Default Search Engine"; Google's PFJ does not defend Apple's right to receive revenue for distributing Google Search separate and apart from Google's ability to contract for default status. *Id.* In short, Google proposes to retain the ability to bargain for default placement and reserve to itself the right to condition payments on that placement, something no other general search engine does.

### D. Apple Moves To Intervene Under Rule 24

Just three days after Google filed its PFJ, and 33 days after Plaintiffs filed their PFJ explicitly targeting Apple, Apple moved under Federal Rule of Civil Procedure 24 for limited intervention in the remedies phase of this case to protect

both its present and future contractual rights.  *See* JA735-61 (Mot. to Intervene).

Apple sought only "limited" intervention to "provide testimony of two or three

witnesses, relevant documents, and briefing to ensure that [the district] court ha[d]

the complete record required to issue a fair and effective remedial decree."  JA742

(*id.* at 2).

Apple explained that it satisfied this Circuit's four-part test for intervention as

of right because it has protectable interests in its current and future contracts with

Google that may be impaired by the remedies phase of this case, and because—after

Plaintiffs' November 20 PFJ threatened Apple with an untenable remedy that goes

far beyond the contours of the ISA—Google can no longer adequately represent

Apple in this next phase of litigation.  In addition to asserting intervention as of right,

Apple sought permissive intervention under Rule 24(b).

Google did not oppose Apple's motion to intervene, but Plaintiffs did.  *See*

JA766-81 (Co. Pls.' Opp.); JA782-813 (Pls.' Opp.).  Plaintiffs argued that Apple has

known since the start of this litigation that the ISA between Apple and Google would

be examined as part of the case.  JA792-93 (Pls.' Opp. 6-7).  Plaintiffs' response did

not address their November 20 proposed remedy that Apple be precluded from

receiving "anything of value" from Google that might "disincentive[ize]" Apple

from developing a general search engine.  JA682 (Pls.' PFJ 7).

The district court addressed Apple's motion at a status conference held on January 17, 2025. The court asked Plaintiffs whether their proposed remedy targeting Apple was as broad as it appeared. And the answer, in short, was an emphatic yes. Plaintiffs stated that the PFJ intends to provide that "Google can no longer contract . . . with [Apple] for anything of value" for ten years. JA881-82 (Status Conference Tr. 40:22, 41:1:22-23). Plaintiffs elaborated that Apple and Google would not be able engage in "the exchange of money," JA882 (*id.* at 41:24-42:2), because the PFJ is "attempting to be broad," JA883 (*id.* at 42:19-20).

Apple explained to the district court the narrow contours of its request for limited intervention and its efforts to adhere to the existing schedule. Apple committed to not issuing written discovery requests, JA892 (*id.* at 51:3-4), to asking only "limited questions at the end of depositions" on topics "specific . . . to Apple's interests," JA892 (*id.* at 51:5-8), and to calling only up to three witnesses at trial, JA892 (*id.* at 51:11-13). Apple requested eleven total hours of time at trial, including seven hours for direct examination and four hours for cross examination. JA892, 893 (*id.* at 51:20-22, 52:2-4). The district court questioned Apple about whether Google adequately represented Apple's interests but admitted that its "real concern here is opening up the floodgates." JA876 (*id.* at 35:3-7); *see also* JA903 (*id.* at 62:13-16) ("[I]f I let Apple in, there are going to be other people knocking on the door."); JA903 (*id.* at 62:22-23) ("So how am I not opening the floodgates if I let

13

Apple in?"); JA906 (*id.* at 65:4-5) ("How do I prevent others from coming forward, or how do I deny others the same opportunity?").

Following argument on Apple's intervention motion, at the same status conference, the district court discussed the schedule for the remedies trial with Google and Plaintiffs. JA942 (*id.* at 101:24-107:2). After hearing from both sides, the court agreed to *expand* the trial by five days. *See* JA987 n.5 (Op. 16 n.5); JA840-41 (Am. Scheduling Order).

### E.    The District Court Denies Apple Intervention

The district court denied Apple intervention on January 27, 2025. JA972-90 (Op.). The court did not question that Apple has protectable property interests that may be impaired, nor did it find that Google would adequately represent Apple's interests. Rather, the court's opinion was grounded almost entirely in its view that Apple's motion was untimely by, at most, several weeks. The court posited that as of October 8, 2024—the date on which Plaintiffs filed their "high-level framework" concerning remedies—Apple knew that it might not be adequately represented in challenging a remedial provision that was not proposed until November 20. JA976-77 (*id.* at 5-6). Because "Apple waited 76 days" after October 8 (until December

14

23) to seek intervention, the district court concluded the motion was untimely. JA977 (*id.* at 6).

The district court also stressed the accelerated timeline it had ordered for the remedies phase, emphasizing the "need to proceed on a compressed schedule," JA978 (*id.* at 7), and the court's desire to resolve the case by early August 2025—a "tight timetable" that "necessarily left little breathing room between deadlines" that were "unlikely to move," JA979 (*id.* at 8). The court went so far as to fault Apple for declining to "oppose Plaintiffs' request for [an additional two days] to file their response" when Plaintiffs' response time overlapped with the Christmas and New Years' holidays. JA979-80 (*id.* at 8-9). The court likewise stated that granting Apple intervention would prejudice the parties by upsetting the "strict confines of the court's Scheduling Order." JA987 (*id.* at 16).

While denying Apple's request for intervention, the district court granted Apple *amicus curiae* status and permitted it to "submit two affidavits from fact witnesses"—or just one affidavit if Google calls Eddy Cue, Apple's Senior Vice President of Services, as a witness—and "file a post-hearing brief alongside the parties." JA990 (*id.* at 19). As an *amicus*, Apple will not be able to develop evidence, present witnesses, conduct direct or cross examination, argue in open court, or file an appeal. And, as to the limited opportunity to present affidavits,

15

Plaintiffs have informed Apple that they intend to challenge the admissibility of the affidavits allowed by the court's order.  *See* JA999 (Ray Decl. ¶¶ 3-4).

Apple filed a notice of appeal on January 29, 2025, and moved the district court for a stay of its proceedings pending this appeal on January 30, 2025, JA991-97 (Stay Mot.), which the district court denied on February 2, 2025, JA1000-1003 (Order Denying Stay).  Apple subsequently moved for a stay in this Court or an expedited appeal the next day, February 3.  ECF Doc. 2098492.  This Court granted expedition and denied a stay.  ECF Doc. 2099916.

## SUMMARY OF ARGUMENT

Apple's motion to intervene as of right was timely because Apple moved promptly after it became clear its interests were not adequately protected—once Plaintiffs proposed an extraordinary provision in their PFJ directed at Apple.  The district court's denial of Apple's motion fails to heed the legal standard and improperly elevates scheduling concerns over a party's fundamental right under the Federal Rules of Civil Procedure to intervene to protect its interests.

**I.**  Apple plainly satisfies what the Supreme Court recently called "the most important circumstance relating to timeliness": it moved promptly once it became "clear" its interests were not adequately protected.  *Cameron*, 595 U.S. at 279-80.  Everything changed for Apple on November 20, when Plaintiffs proposed a final judgment targeting Apple by name with a far-reaching remedy whose scope the

16

district court could not even determine.  In foreclosing any form of revenue share or other exchange of consideration, this remedy triggered a divergence between Google and Apple, which was then confirmed by Google's December 20 PFJ.

Google and Apple are, of course, separate entities with distinct commercial interests.  Indeed, they compete in many important respects.  Google, which faces a range of possible sanctions, is now focused on preserving its pre-set default status, and revenue share only to the extent it maintains that default status.  Apple prefers flexibility with regard to defaults and seeks to preserve revenue share arrangements—which it has with all other search providers that are not defaults— even if Google loses its default status.  In foreclosing any such revenue share arrangements, Plaintiffs' PFJ threatens to afford Google a competitive advantage over its rivals in the form of free search distribution.  Only Apple can prevent that.

The district court disregarded that divergence of interests and instead determined that Apple should have moved to intervene after Plaintiffs filed the broad outlines of the remedial framework they were considering as of October 8.  But that framework did not target Apple, did not include the sweeping remedial prohibition in Plaintiffs' PFJ barring any contracts between Apple and Google for a decade, and did not put Apple on notice that Plaintiffs would pursue a remedy that threatens to afford Google a windfall.  It certainly did not make it "clear" to Apple that it would

17

not be adequately represented.  This explains why no party even mentioned October 8 as a date that matters in the timeliness inquiry before the district court.

**II.**  The remaining timeliness considerations cited by the district court are insufficient to deny an otherwise timely intervention motion here.  But those factors favor Apple in any event.

**A.**  As to the purpose of intervention, Apple seeks to intervene for the limited purpose of protecting its rights in the remedial phase of this case and ensuring the court has an adequate record to determine the appropriate remedy in a market that is rapidly changing given advances in AI.  Apple's intervention would permit it to address a critical assumption underlying Plaintiffs' PFJ—that if deprived of a revenue share agreement with Google that Apple has with other search distributors, Apple will decide to build its own search engine.  Not only is that assumption incorrect, but it threatens to either entrench Google's market share by affording Google free search distribution or require Apple to withhold access to Google, thereby preventing consumers from accessing their browser of choice.  Only Apple can explain how it would react to this proposed remedy.  Apple's intervention will ensure that the record is complete on this critical factual premise.

**B.**  The need for intervention likewise favors Apple.  This case implicates Apple's ability to contract with Google for any purpose, for a decade, threatening to foreclose multiple pro-competitive collaborations that serve Apple's users and to

eliminate billions of dollars in Apple revenue.  As this Court has recognized, *amicus* status is no substitute for party participation.  Rule 24 grants Apple the right to intervene *as a party*, not in some limited amicus role.  As things stand, Apple will be forced to watch as a spectator as witnesses and attorneys debate whether or how Apple will react to the remedies proposed by the parties.  The consequences of getting the remedy wrong, both for Apple and the public, demand Apple's participation.

**C.**   Apple's intervention would cause no unfair prejudice to the parties because Apple moved promptly after the inadequacy of representation arose.  None of the court's prejudice concerns—additional discovery, trial time, and third party motions, all of which would be limited—is a legitimate reason to deny an otherwise timely intervention motion in this case.  Indeed, the court identified no prejudice flowing from Apple's intervention on December 23 as opposed to October 8, the date on which the court believed Apple should have intervened.  So even accepting the court's identification of October 8 as the relevant marker, there is minimal prejudice from Apple's intervention.  The court's concern about other third parties moving to intervene overlooks the unique remedial provision targeting Apple and the fact that the court would have other grounds on which to deny such follow-on motions.  Ultimately, the decision below prioritizes the court's preferred schedule over Apple's substantive rights under the federal rules.  That is wrong.

19

## STANDARD OF REVIEW

This Court "review[s] the denial of a motion to intervene as of right de novo for issues of law, clear error as to findings of fact, and . . . abuse of discretion on issues that 'involve a measure of judicial discretion.'" *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) (citation omitted). The district court issued no findings of fact in its order denying Apple's motion for intervention. A district court abuses its discretion when it "fail[s] to consider a relevant factor or relie[s] on an improper factor." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1107 (D.C. Cir. 2024) (citation omitted). The district court also abuses its discretion when it "applies the wrong legal standard" or commits another error of law. *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (citation omitted).

## ARGUMENT

Rule 24(a) affords Apple the right to intervene in the remedies phase of this case. Apple has a "protected interest" in the ISA and future contracts with Google. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (listing elements under Rule 24(a)). This action "threaten[s] to impair that interest" because Plaintiffs' PFJ would forbid any contracts involving the exchange of anything of value between Apple and Google for a decade. *Id.* Google cannot "adequately represent" Apple with respect to a remedy threatening to afford Google a competitive advantage over rivals in the

20

form of tens of billions of dollars each year, particularly when Google has other more important priorities, such as preventing the divestiture of entire business units. *Id.* And Apple moved promptly once it became "clear that its interests would no longer be protected." *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (citation omitted).

The district court took issue only with this last requirement for intervention as of right: timeliness. At the outset, that is a thin reed on which to deny intervention as of right. "Since in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (3d ed., 2024 update). That is especially so here: the ultimate remedy in this case will be informed by facts in only Apple's possession (its own interests in *not* entering the search market), threatens serious harm to Apple's users, implicates substantial annual revenue for Apple, and may shape the search market for decades to come. Not just Apple, but all parties, the court, and the public itself would benefit from Apple's limited intervention in this case to ensure a complete record. But regardless, Apple has the *right* to intervene under Rule 24 to protect is clear property interests.

Apple's motion was timely as a matter of law. Apple moved promptly once it became clear its interests were not adequately represented—one month after

21

Plaintiffs targeted Apple with a sweeping remedy divorced from the court's liability decision and just three days after Google's proposed remedy confirmed the divergence of interests. The district court was wrong to adopt October 8 (when Plaintiffs submitted their high-level framework for potential remedies) as the relevant date for gauging the timeliness of Apple's motion—a date Plaintiffs themselves never proposed. And the court further erred in relying on the strictures of a previously set schedule and the possibility that other entities might seek to intervene to find that Apple's motion was untimely. Apple's proposed participation is limited and would advance the interests of a fair and lawful remedy without unduly prejudicing anyone. And those considerations cannot in any event defeat an applicant's right to intervene when, as here, the other elements of Rule 24 are met. Rule 24(a) is clear on this score: a court "must" grant intervention when Rule 24's requirements are met. Fed. R. Civ. P. 24(a).

If this Court were to accept the district court's denial of intervention, it would create a troubling precedent. It would permit the government or other plaintiffs to hold back in terms of describing the reach of the proposed remedies they seek, suddenly introduce a provision targeting a non-party with penal consequences out of the blue, and then deprive that non-party of the opportunity to defend its own interests on the theory that it should have acted earlier—before the proposed remedy

22

naming it was ever announced.  Rule 24 exists to prevent precisely such an unfair and prejudicial situation.

While district courts no doubt enjoy discretion in managing cases, they do not have the discretion to deny intervention in such circumstances.

## I.    Apple's Motion To Intervene Was Timely Because It Moved Promptly After It Became Clear That Google Could No Longer Adequately Represent Apple's Interests

Plaintiffs' PFJ represented a sea change in this case for Apple.  For the first time, Plaintiffs, although they had never accused Apple of wrongdoing in this case, proposed an extraordinary remedy explicitly targeting Apple and threatening its property interests.  At that point, only Apple could adequately defend its interests against that extraordinary request for relief.  Because Apple moved to intervene promptly after it became clear its interests were not adequately protected, Apple's motion was timely.  On that basis alone, the district court's decision should be reversed.

### A.    A Motion To Intervene Is Timely When Filed Promptly After It Becomes Clear That Representation Is Inadequate

"'[T]he most important circumstance relating to timeliness' is whether a party 'sought to intervene as soon as it became clear' that its 'interests would no longer be protected by the parties in the case.'"  *Campaign Legal Ctr.*, 68 F.4th at 610 (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022)).  So while timeliness "is to be determined from all the circumstances," a motion is

necessarily timely when made promptly after the inadequacy of representation becomes "*clear*." *Cameron*, 595 U.S. at 279 (emphasis added) (citations omitted). Timeliness must be assessed based on "the need to seek intervention"—and not on the amount of time that elapsed since the case was filed. *Id.* at 280; *see also Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (holding that "post-judgment motion to intervene" is timely when "the potential inadequacy of representation came into existence only at the appellate stage" (citation omitted)).

Plaintiffs' opposition below ignored the rule laid down in *Cameron* and *Campaign Legal Center*, and argued instead that "timeliness to intervene is measured from when the intervenor knew or should have known that its rights would be affected by the litigation." JA792-93 (Pls.' Opp. 6-7) (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)). But *Cameron* (and *Campaign Legal Center*) refute that rule. In *Cameron*, the state attorney general's rights had long been affected in the underlying suit. But the fact that "the litigation by that time had proceeded for years" did not matter because "[t]he attorney general's need to seek intervention did not arise until the secretary [of state] ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time." 595 U.S. at 280; *see also Smoke*, 252 F.3d at 471; *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986). Plaintiffs' citation to *Roeder*— which predates *Cameron* by two decades—is inapposite, because that decision

24

*granted* intervention and did not limit the circumstances when a motion to intervene is timely.  333 F.3d at 233.

Plaintiffs' argument would have the untenable consequence that some parties never have the opportunity to intervene to protect their property interests: If a party moved to intervene when its interests were first implicated but adequately protected, its motion would be denied due to the adequacy of representation; if the party subsequently moved once its interests were no longer protected, its motion would be denied on timeliness grounds.  That is not how Rule 24, or this Court's case law applying Rule 24, works.  The *Cameron* standard—that an intervention motion is timely when filed promptly after it became "clear" that the applicant's interests were not adequately protected—eliminates that problem and preserves a movant's "right" to intervene to guard their inadequately represented interests.  Fed. R. Civ. P. 24(a).

## B. Apple Moved To Intervene Promptly After Plaintiffs' And Google's PFJs Made Clear Google Could Not Represent Apple's Interests

Plaintiffs precipitated Apple's motion because they proposed an extraordinarily—and unexpectedly—broad remedy on November 20 targeting Apple.  Google's proposed remedy, submitted on December 20, then confirmed that Google cannot represent Apple's unique interests.  Disregarding these critical circumstances, the district court instead traced a conceivable divergence between Apple and Google to October 8—a date that no party had raised—when Plaintiffs

filed a high-level remedies "framework." But Plaintiffs' framework said nothing about Apple, and did not suggest that Plaintiffs would propose a remedy threatening to advantage Google over its competitors to Apple's detriment. So it certainly was not *clear* on October 8—a month and a half before Plaintiffs filed their PFJ explicitly targeting Apple—that Apple's interests would not be adequately protected. The district court's intervention decision therefore was erroneous under *Cameron*.

**1.** Plaintiffs' November 20 proposed remedy could not have been predicted. In a case that has focused in relevant part on Google's alleged monopolization using exclusive distribution agreements, Plaintiffs proposed for the first time an exceptionally broad remedy that specifically targets *Apple*. Once again, the provision states: "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets." JA682 (Pls.' PFJ 7). The district court admitted that it was puzzled about the term's scope and requested clarification from Plaintiffs about its meaning. JA880 (Status Conference Tr. 39:19-40:2). In response, Plaintiffs simply doubled down, taking the remarkable position that this term would prohibit any "type of contract between Google and Apple in which there would be anything exchanged of value from Google to Apple." JA882 (*id.* at 41:18-42:2) (Plaintiffs' counsel answering court's question: "I think in short, yes"). Elsewhere, Plaintiffs sought

other incredibly intrusive remedies as to Google, including divestiture of Chrome, to the surprise of many. JA684 (Pls.' PFJ 9).[1]

Plaintiffs' PFJ generated a divergence between Google's and Apple's interests in three respects. *First*, Plaintiffs' PFJ would prohibit absolutely any form of revenue share agreement between Apple and Google—including agreements that do not provide for any form of default status. As Apple told the district court, this proposed term would likely *advantage* Google relative to competitors.

Apple receives revenue share payments from all search engines that it distributes to its users, regardless of whether they are the default. JA763 (Cue Decl. ¶ 3). In barring such agreements solely with Google, Plaintiffs' PFJ would leave Apple two bad options. Option 1 is that Apple could distribute Google to its users for free, thereby affording Google a windfall in the tens of billions of dollars to Apple's detriment, and to the detriment of Google's competitors, who unlike Google, *would* pay for distribution. If anything would help Google maintain its share of the general search market, it would be free distribution on all Apple devices. Option 2 is that Apple could decide not to make Google available to its users, which would harm competition by restricting consumer choice as to the highest-quality

---

[1] *See, e.g.*, Dave Michaels & Miles Kruppa, *Google Should Be Forced to Sell Chrome Browser, Justice Department Says*, Wall St. J. (Nov. 21, 2024), https://www.wsj.com/tech/google-should-be-forced-to-sell-chrome-browser-justice-department-says-13602df9 (noting that Plaintiffs initially did not plan to seek divestiture but had recently changed course).

27

search engine, threaten harm to Apple's users by degrading their product experience, and (like Option 1) deprive Apple of significant revenue.  *Id.*

*Second*, Plaintiffs' PFJ is premised on an assumption about Apple's future intentions with regard to search.  In attempting to bar any contract between Apple and Google for a decade, Plaintiffs effectively are trying to force Apple to build its own search engine.  But that is something Apple has no intention of doing for numerous reasons that are specific to Apple and to the market as it stands today.  Google cannot make these points; only Apple can do so.

*Third*, Plaintiffs' PFJ launches a broadside attack on Google's business that now requires Google to decide how to prioritize its remedial defenses.  In addition to disrupting Apple and Google's contractual relationship for 10 years, Plaintiffs' 35-page PFJ would (a) require Google to "promptly and fully divest Chrome, to a buyer approved by the Plaintiffs in their sole discretion"; (b) prohibit Google from providing itself "preferential access to Android or Google-owned apps or data" (or, alternatively, divest Android); (c) provide, at marginal cost, ongoing access to its Search Index to Qualified Competitors; and (d) prohibit Google from investing in "any technologies, such as AI Products, that are potential entrants into the GSE or Search Text Ads markets."  JA683-87 (Pls.' PFJ 8-12).  These broad threats to Google's business will force it to make judgments about which provisions to contest and how much weight to give different objections—all within the constraints of time

limits at trial, page limits in briefs, and time limits at oral argument.  And Google certainly cannot be expected to prioritize a defense of revenue share payments that, were they enjoined, could mean a competitive advantage to Google at Apple's expense.

Further confirmation of these areas of divergence came through Google's PFJ, filed on December 20.  *See* JA711-22 (Summ. of Def.'s PFJ).  The district court believed that Google's proposal generally serves Apple's interests in providing Apple more flexibility as to default status and preserving revenue share.  JA983 n.4 (Op. 12 n.4).  But that high-level agreement masks the critical divergence that Apple identified—the parties' vastly different priorities in defending default status versus revenue share.  The district court found that Google's search distribution agreements were "exclusive insofar as they establish Google as the out-of-the-box-default search engine" and that those agreements had anticompetitive effects.  JA538 (Liability Decision 204).  Google, however, continues to defend the right to be the pre-set default across search access points.  Apple, on the other hand, has long sought flexibility when it comes to default status but has been rebuffed by Google.  JA444-45 (*id.* at 110-11).

Google and Apple also have distinct interests with respect to revenue share.  Google's PFJ views revenue share as inextricably linked to default status: its PFJ would preserve revenue share payments only "where Google Search remains set as

the Default Search Engine." JA726-27 (Def.'s PFJ 4-5). Apple has a very different view. Consistent with the revenue share agreements it has with other search engines, Apple maintains that it is entitled to revenue share regardless of default status, and that all search engines should be free to compete equally for access to Apple's users. Put simply, Apple's position is not represented in this case. Plaintiffs view revenue share and default status as falling together; Google believes both should survive or neither. This has serious practical consequences for Apple's interests: if, or once, the district court takes default status off the table and Google's proposed remedy fails, Google will then have little incentive then to protect Apple's interest in revenue share in the face of Plaintiffs' PFJ. Only Apple can represent that view.

**2.** While the district court did not dispute that Apple's and Google's interests diverged in the remedies phase, the court picked a different precipitating event—the filing of Plaintiffs' high-level remedies "framework" on October 8. No party raised this argument below: Plaintiffs never argued that the October 8 framework put Apple on notice that its interests were affected. And the court did not ask about October 8 at the hearing, instead focusing its questions on the adequacy prong for intervention and concerns about other third parties moving to intervene.

Plaintiffs did not invoke the October 8 filing because that filing did not make clear that Apple's interests were inadequately represented. Unlike the November 20 PFJ, the remedial framework did not target Apple by name, did not include a term

30

premised on Apple's incentives in the search market, and did not force Apple into a Hobson's choice about whether or how to distribute Google Search to its users. JA621-52 (Pls.' Remedy Framework). Indeed, the framework does not contain any specific remedies at all. It simply provides high-level categories of potential remedies that Plaintiffs were "currently considering." JA625 (*id.* at 4). Any attempt to intervene at that stage would have been opposed by Plaintiffs as premature and resting on speculation about a possible future divergence in interests since no remedy had been proposed.

The district court noted that Plaintiffs stated they were considering "'remedies that would, among other things, limit or prohibit default agreements, preinstallation agreements, and other revenue-sharing arrangements related to search and search-related products.'" JA976 (Op. 5) (quoting JA625-27 (Pls.' Remedy Framework 4-6)). But that line shows that the Government viewed default and revenue sharing as going hand in hand—thus the reference to "*other* revenue-sharing arrangements" beyond the "default agreements." *Id.* (emphasis added). And that framework identified Google's "revenue share payments" as a problem only because they would "disincentivize its partners from diverting queries to Google's rivals." JA626 (Pls.' Remedy Framework 5). A reasonable observer thus would have no idea that Plaintiffs would seek to end *any* form of revenue share, regardless of whether it is part of a default agreement. The district court overlooked that key issue.

31

*See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1107

(D.C. Cir. 2024) (district court abuses its discretion when it "fail[s] to consider a

relevant factor" or "relie[s] on an improper factor" (alterations in original) (citation

omitted)).

The district court also emphasized that Plaintiffs' "framework" noted the

possibility of "structural remedies that would prevent Google from using products

such as Chrome."  JA976 (Op. 5) (citation omitted).  The court also cited news

articles indicating that DOJ was considering whether to propose a divestiture of

Chrome.  JA977 (*id.* at 6).  But considering such remedies and demanding them are

very different things; indeed, as noted above, news reporting indicated that Plaintiffs

had initially decided *not* to seek divestiture of Chrome as a first-order remedy.  *See*

*supra* at 27 n.1.  And nothing suggested that Plaintiffs were considering adding a

provision targeting Apple and prohibiting it from contracting with Google for

"anything of value" for ten years.

The district court also ignored that the areas of divergence arising from the

November 20 PFJ *work together* to deprive Apple of adequate representation.  Faced

with the threat of divestiture, Google, like any business in its position, will naturally

prioritize keeping its business intact over defeating a remedial term that targets

another entity (Apple) and raises the prospect of a windfall to Google.  That

underscores that the ISA's provision requiring the parties to collaborate in defense

of the agreement cannot adequately protect Apple's interests. Those concerns, revealed only as of November 20, make Google an inadequate representative.

Even if there were some conceivable inadequacy earlier in the case, Apple's motion was still timely because it moved once it "'became *clear*' that its 'interests would no longer be protected by the parties in the case.'" *Campaign Legal Ctr.*, 68 F.4th at 610 (emphasis added). Assuming there were questions about Google's adequacy on October 8, such questions alone were not enough to require Apple to move to intervene at that point. Apple had no intention to enter this case until Plaintiffs left it with no choice but to do so with their extraordinary PFJ.

*       *       *

The district court did not dispute that if the key date to determine inadequate representation was November 20 or December 20, rather than October 8, Apple's motion to intervene was timely. Plaintiffs did not dispute the point either. That makes the proper course here straightforward: reverse and remand with instructions to hold that Apple's motion to intervene was timely because it moved promptly after it became clear that Apple's interests were not adequately represented.

## II.    The Remaining Timeliness Considerations Discussed By The District Court Support Apple's Intervention

To the extent they bear on the question in this case, the remaining timeliness considerations support Apple's intervention too. The D.C. Circuit has stated that the timeliness inquiry considers "the purpose for which intervention is sought, the need

33

for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke*, 252 F.3d at 471 (citation omitted).

Under *Cameron* and *Campaign Legal Center*, however, a motion to intervene *is* timely when filed promptly after the inadequacy of representation arises. *See supra* at 24-25. In that scenario, the purpose or nature of intervention cannot outweigh the parties' right to intervene. Nor does the prejudice prong overcome an otherwise timely intervention motion. This Court is clear that the *absence* of prejudice can require granting an intervention motion filed after a significant delay. Those are the facts of *Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014), cited by the district court and the parties. JA985 (Op. 14) (quoting 741 F.3d at 151-52). That the applicant "*could* have intervened earlier" was not dispositive; rather, the absence of meaningful prejudice required the district court to *grant* the motion. *Roane*, 741 F.3d at 152.

But the converse is not true: the presence of prejudice is not enough to foreclose intervention when the motion is filed promptly after a party is not adequately represented. The timeliness question considers "the prejudice caused by the untimeliness, not [prejudice from] the intervention itself." *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013); *see also, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[P]rejudice must be measured by the delay in

34

seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."); *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) ("Delay is not alone decisive otherwise every intervention motion would be denied out of hand because it carried with it, almost by definition, the prospect of prolonging the litigation" (formatting modified)).  The question is "whether the intervention will '*unfairly* disadvantage[] the original parties.'" *Amador County v. U.S. Dep't of Interior*, 772 F.3d 901, 906 (D.C. Cir. 2014) (citation omitted) (affirming denial of intervention given undue delay and resulting prejudice).  There is simply no *undue* prejudice when the party acts promptly to protect its rights; any ensuing harm to the parties would simply follow from Rule 24(a)'s grant of intervention as of right.  Tellingly, none of the cases cited by the district court or Plaintiffs rejected an otherwise timely intervention motion based solely on prejudice.

Regardless, the remaining timeliness factors—the purpose of intervention, the nature of intervention, and prejudice—all favor Apple's intervention here.

## A.    The Purpose Of Intervention Supports Apple

Apple's purpose with regard to intervention is narrow and targeted: it wishes to participate in the remedies phase solely to the extent the court considers a search distribution remedy affecting Apple's contractual rights.  Apple believes its participation would preserve Apple's rights, help the court craft a fair and lawful

remedial decree, and protect the interests of Apple's users and the public.  After all, the success of Plaintiffs' PFJ undisputedly turns on a prediction about Apple's future behavior.   So only with Apple's participation can that proposal be properly evaluated.  *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 n.9 (D.C. Cir. 2003) (granting intervention where applicant could offer a "vigorous and helpful supplement" to party's argument (citation omitted)); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977) (concluding the "possible benefit to the court" favored intervention).  The court raised a smattering of objections that do not pass muster.

First, the district court doubted whether Apple's intervention was "truly as circumscribed" as Apple sought. JA981 (Op. 10).  But if that was so, the court could easily have imposed guardrails on Apple's participation to ensure it was not delaying the proceedings.  The answer to any such concerns was not denying Apple's right to intervene but monitoring that right using the many tools that a court has at its disposal to manage a trial in a fair and efficient manner.  JA898 (Status Conference Tr. 57:19-58:1) (recognizing district court's discretion to manage trial in numerous ways).

Second, the district court invoked its earlier determination that Apple waited too long after October 8 to move to intervene. JA982 (Op. 11) (citing *United States v. AT&T Co.*, 642 F.2d 1285, 1294-95 (D.C. Cir. 1980)).  In its view, applicants

should not be able to present facts and arguments after a lengthy delay. But as shown above, October 8 is the wrong measuring point; only on November 20, at the earliest, was Apple on notice that it was being targeted by Plaintiffs and unprotected by Google. And only on December 20 did Apple know how Google would respond to Plaintiffs' PFJ, the other part of the equation. Apple filed its motion immediately thereafter.

Third, the district court cast doubt on whether Apple's witnesses would offer new or additional information beyond that provided in the liability phase that would be useful to the court. This overlooks the critical issue on which Apple wishes to provide testimony: the Hobson's Choice posed by Plaintiffs' PFJ. As explained, Apple seeks to provide evidence that Plaintiffs' prohibition on revenue share would harm consumers either by giving Google a windfall or restricting consumer choice. Such testimony was not offered at the liability phase, because the issue simply was not before the court. And, contrary to the court's footnoted suggestion that Google had an "incentive" to represent Apple's views, JA983 n.4 (Op. 12 n.4), Google has the opposite motivation with respect to revenue share if, or once, default status is lost. *See supra* at 29-30. Finally, Apple's earlier testimony was historical—and addressed a market that is now dramatically different. Apple appreciates that the court credited Mr. Cue's testimony at the liability phase, but it cannot predict what new testimony or evidence the court will receive during the remedies phase.

37

More fundamentally, the right to intervene does not turn on a court's speculation as to the impact of the testimony or evidence an intervenor would provide at trial. It turns on the elements of Rule 24—which, except for timeliness, the district court did not challenge were met. It is also unclear how the court expected Apple to articulate the precise evidence Apple wishes to present when Apple does not even have access to the proposed witness lists, much less to the ongoing discovery and depositions. Apple has the right to intervene to protect its interests as it sees fit—not to be outweighed by the court's judgment about the value of Apple's evidence months before trial, before witness lists have been finalized, and before discovery and depositions have been completed.

Finally, the district court faulted Apple for not identifying a case with the same facts as this one. But the court did not and could not dispute that parties frequently intervene in the remedial phase of litigation to protect their contractual interests. *See, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1495-96, 1496 (9th Cir. 1995) (collecting cases). The district court's suggestion that the intervention analysis may be different here because this is an "antitrust enforcement action" with a "remedial phase featuring extensive discovery" is perplexing. JA984 (Op. 13). The court offered no reason why Rule 24's requirements should apply differently in antitrust cases (and certainly the text of Rule 24 does not either). If anything, given the possibility of remedial decrees with widespread effects on

38

national markets, properly applying Rule 24's requirements is all the more important in the antitrust context. And indeed, the Supreme Court in *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.* reversed an antitrust decree due to the erroneous denial of intervention during a remedies phase. 386 U.S. 129, 136 (1967); *see also Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235-36 (D.C. Cir. 2004) (permitting intervention of trade groups in antitrust settlement proceeding).

## B.    The Need For Intervention Favors Apple

Apple's intervention is necessary to protect its users' experience and its contractual rights, worth in the tens of billions of dollars each year. The district court nevertheless in one sentence dismissed the need for Apple's intervention because "the court will afford Apple an opportunity to be heard through post-hearing submissions." JA985 (Op. 14). That is wrong for several reasons.

First, as this Court has long recognized, amicus status is not an "adequate substitute for participation as a party." *Nuesse v. Camp*, 385 F.2d 694, 704 n.10 (D.C. Cir. 1967); *see also, e.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) ("[T]he opportunity to file an amicus brief in no way substitute[s] for a formal opportunity to participate fully as an intervening party."); *Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (similar). Apple will have no ability to develop its own witness testimony at trial, nor will it have the ability to cross-examine witnesses called at trial. Apple

will be a mere spectator as Plaintiffs call fact and expert witnesses testifying about everything from Apple's capabilities in the search market to its economic incentives related to search engines.  Given what is at stake, the prospect of a post-hearing brief simply is not enough.  Nor can Apple's (up to) two witness affidavits replace the value of live testimony and cross-examination.

Second, Plaintiffs have informed Apple that they intend to challenge the admissibility of the witness affidavits the district court afforded Apple.  *See* JA999 (Ray Decl. ¶¶ 3-4).  This adds a cloud of uncertainty over the extent to which Apple will be able to offer even the limited, paper witness testimony that the district court allowed.  This uncertainty can, and should, be eliminated by holding that Apple has a right to intervene.

### C.     The Absence Of Unfair Prejudice Supports Apple's Intervention

The district court also erred in invoking prejudice to deny intervention.  As explained above, the absence of prejudice can require the court to grant an otherwise delayed intervention motion; the presence of some litigation delay does not support denying a promptly filed intervention motion.  *See supra* at 34.  Because Apple moved promptly once its interests were affected, its motion was timely—full stop.  To the extent prejudice factors into the analysis, its purpose is to measure whether the party's *undue delay* in moving to intervene causes harm.  The court's prejudice analysis misunderstood these principles, and it fails on its own terms.

40

At the outset, the court's prejudice analysis is untethered to the 76-day delay it attributed to Apple. The court cited the possibility of added written and expert discovery, more time at the evidentiary hearing, and the prospect for additional intervenors (none of which have appeared yet). *See* JA983-84 (Op. 12-13). None of these considerations has anything to do with the 76-day delay between October 8 and December 23. Had Apple moved in October, or in early December, the court and parties would be confronting the same basic circumstances. That simply confirms that the so-called "prejudice" is not remotely unfair, and thus is no basis for denying intervention. As other courts have recognized, "[p]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206. Here, the district court did not explain how Apple's intervention shortly after its October 8 date would have avoided the prejudice that the court cited in terms of lengthening the trial by a few days in denying Apple's motion.

Regardless, the court's prejudice analysis fails on its own terms. As for added discovery, Apple committed not to take affirmative discovery. The court noted that the one to two additional Apple witnesses would need to produce documents and be available for deposition. JA986 (Op. 15). That ignores that Apple is already participating in discovery as a non-party; Mr. Cue will be deposed, and Apple has identified the two potential affiants, from whom Apple is producing custodial

documents in response to discovery requests. The district court identified no meaningful burden on discovery that would move the needle.

On the question of the remedies hearing, the court placed too much weight on the time required to include Apple in the trial. Apple agrees that this case should proceed expeditiously; that is why it offered to proceed on the court's timeline. But to the extent the court believes it needs to add two more days to the trial schedule to accommodate the parties' requests and Apple's participation, that is a minimal burden as compared to Apple and the public's interest in a fair, lawful, and appropriate remedy. The court noted that this case has been "pending for over four years," but that simply underscores why adding two more days to hear critical evidence from Apple is reasonable. The court failed to address these critical factors, a clear abuse of discretion. *NextEra Energy*, 112 F.4th at 1107.

Indeed, while the district court cited the fact that Apple's intervention might add two days to the trial in denying intervention, the district court itself *added five days* to the trial at a hearing immediately following argument on Apple's intervention motion. *See* JA987 n.5 (Op. 16 n.5); JA945-47 (Status Conference Tr. 104:17-106:11). This confirms that the court's trial schedule was not inviolate—and certainly could have accommodated an additional two days.

Finally, the court raised a concern about other third parties filing intervention motions. This concern dominated the status hearing, as the district court kept

returning to it.  *See* JA876, 908-09 (Status Conference Tr. 35:8-13, 67:25-68:3).  But it is unfounded.  No other party has sought to intervene to date.[2]  And no other third-party is subject to the same broad remedial term as Apple.  Urged on by Plaintiffs, the district court overlooked this point, stating: "[A]s Plaintiffs rightly point out, 'Plaintiffs' PFJ prohibits Google from paying *any* third party . . . for making Google the default search engine on its devices.'"  JA989 (Op. 18 (quoting JA791)).  But the PFJ bars revenue share as to Apple *regardless of whether it is part of an agreement where Google is the default*.  The unique breadth of this term is precisely what makes Apple's participation so necessary.  *See supra* at 26-27.  And, again, the prejudice must stem from the alleged untimeliness.  The threat that other entities might attempt to intervene exists no matter when Apple filed its motion.

Moreover, the court would have other grounds to deny follow-on intervention motions.  The prospect that other parties could timely intervene becomes more far-fetched with each passing day, as the remedies trial nears and those parties have not acted to protect their rights.  *See Costle*, 561 F.2d at 911 n.36 (noting that in event of "future intervention by other parties," courts have tools to ensure that proceedings

---

[2]    At the hearing on Apple's intervention motion, counsel for Plaintiffs stated that two parties had contacted him about potentially moving to intervene.  *See* JA875 (Status Conference Tr. 34:10-11).  But he did not identify those parties or the nature of their interest or communications with Plaintiffs, nor explain why they would have contacted Plaintiffs in advance of their potential motion to intervene if they were similarly situated to Apple.

"are workable, nonduplicative and fair"). And even if such third parties did file their own motions, and those motions were somehow deemed timely, they may be denied because Apple adequately represents their interests. *Cf. id.* at 913 (asking whether applicant was adequately represented by existing industry intervenors).

The district court's concern about follow-on intervenors also misunderstands Rule 24. The possibility that interested parties will intervene to protect their contractual rights is exactly what Rule 24 protects. If an applicant is not adequately represented by existing parties and it moves promptly when its interests are not protected, as Apple did here, then Rule 24 *requires* the court to grant intervention. This follows from "the basic jurisprudential assumption" underlying Rule 24: "that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson*, 473 F.2d at 130. This case is a world away from *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013), which the district court cited to support its view that the possibility of other intervenors is enough to deny intervention under Rule 24. JA988 (Op. 17) (citing 717 F.3d at 192). There, the court was concerned that permitting a creditor to intervene in a suit involving a bank would allow any of thousands of ordinary creditors the right to participate.

Apple is nothing like the ordinary creditor; Apple's actions are unquestionably central to the success of Plaintiffs' proposed remedy, it is targeted

44

by a unique remedial provision, and it has billions of dollars at stake. If that is not enough for intervention, it is hard to understand what would be.

*       *       *

Plaintiffs, of their own accord, proposed a term in their PFJ of extraordinary breadth, targeting a non-party in an unexpected, unprecedented, and unusually penal way. Apple—the target—moved promptly to intervene after Plaintiffs' filed their PFJ to protect Apple's interests. None of the reasons that the district court gave for denying Apple's motion holds up to scrutiny, nor is appropriate under Rule 24. All the requirements of Rule 24 are met. Permitting this case to proceed without Apple's limited intervention would undermine Rule 24 and disserve the court and the parties. Not only would Apple be denied an opportunity to defend its own interests, but the public and court would be deprived of the complete record necessary to evaluate the far-reaching remedy that Plaintiffs ask the court to adopt. It is no exaggeration to say that this remedy that could change the search market and impact millions of Americans for decades. The district court's decision should be reversed.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order denying Apple's motion for intervention to protect its property interests.

Dated:  February 12, 2025                    Respectfully submitted,

                                             */s/ Gregory G. Garre*
Alfred C. Pfeiffer, Jr.                      Gregory G. Garre
Sarah M. Ray                                 Peter E. Davis
Aaron T. Chiu                                LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                         555 Eleventh Street, NW, Suite 1000
505 Montgomery Street, Suite 2000            Washington, DC 20004
San Francisco, CA 94111                      (202) 637-2200
(415) 391-0600                               gregory.garre@lw.com

                                             Ben Harris
                                             LATHAM & WATKINS LLP
                                             1271 Avenue of the Americas
                                             New York, NY 10020
                                             (212) 906-1200

*Counsel for Appellant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 32(f) and (g), because it contains 10,864 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

*/s/ Gregory G. Garre*
Gregory G. Garre

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Gregory G. Garre*
Gregory G. Garre

**ADDENDUM
PURSUANT TO RULE 28(a)(5)**

## TABLE OF CONTENTS

**Page**

15 U.S.C. § 2 .................................................................................................ADD1

Federal Rule of Civil Procedure 24 ................................................................ADD2

## 15 U.S.C. § 2

### § 2.  Monopolizing trade a felony; penalty

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

## Federal Rule of Civil Procedure 24

### Rule 24. Intervention

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

(1) In General. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.