**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 25-5016**

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

UNITED STATES OF AMERICA, et al.,

*Plaintiffs-Appellees,*

v.

GOOGLE LLC,

*Defendant-Appellee,*

APPLE INC.,

*Movant-Appellant.*

On Appeal from the United States District Court for the District of
Columbia, Nos. 1:20-cv-03010, 1:20-cv-3715 (Hon. Amit P. Mehta)

**RESPONSE BRIEF OF PLAINTIFFS-APPELLEES**

OMEED A. ASSEFI
  *Acting Assistant Attorney General*

DAVID B. LAWRENCE
  *Policy Director*

ALICE A. WANG
  *Counsel to the Assistant Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
MATTHEW A. WARING
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 305-4639
patrick.kuhlmann@usdoj.gov

(additional counsel listed in signature block)

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned certifies:

### A.    Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Opening Brief of Appellant Apple Inc. (Feb. 12, 2025).

### B.    Rulings Under Review

Reference to the ruling at issue appears in the Opening Brief of Appellant Apple Inc. (Feb. 12, 2025).

### C.    Related Cases

This Court previously resolved an appeal in this litigation in No. 24-5006. Counsel is unaware of any related cases for purposes of Circuit Rule 28(a)(1)(C).

s/ *Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs do not believe that oral argument in this appeal is necessary. The district court correctly applied the law to the facts of this case, and the issues presented on appeal are straightforward.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ...............................................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF AUTHORITIES...............................................................vi

GLOSSARY ...................................................................................xi

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES.............................................................1

STATUTES AND REGULATIONS .......................................................2

INTRODUCTION.............................................................................2

STATEMENT OF THE CASE ..............................................................5

SUMMARY OF ARGUMENT ............................................................20

STANDARD OF REVIEW.................................................................24

ARGUMENT ..................................................................................25

   I.   The District Court Correctly Concluded That Apple's Intervention
       Motion Was Untimely. ...........................................................29

      A.   Apple Moved for Intervention Long After It Knew Its Interests
          Were Affected. ................................................................30

      B.   Apple's Intervention Would Cause Substantial Unfair
          Prejudice to the Parties and the Public. ..................................43

      C.   Apple Lacks a Purpose Meriting Last-Minute Intervention...51

      D.   The District Court Granted Apple Substantial Participation
          Rights Beyond a Typical Amicus. ...........................................53

   II.   Rule 24(a) Intervention Is Also Unavailable Because Google Will
       Continue To Adequately Represent Apple's Interest. ................55

      A.   Google, Apple's Counterparty, Has Presumptively Provided
          Adequate Representation Throughout this Litigation............56

iv

# TABLE OF CONTENTS—Continued

Page

B. Nothing Has Materially Changed the Adequacy of Google's Representation Since the Liability Opinion Issued in August 2024. ........................................................................................ 58

CONCLUSION ........................................................................................ 66

CERTIFICATE OF COMPLIANCE ........................................................ 91

CERTIFICATE OF SERVICE ................................................................. 92

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Alternative Research & Development Foundation v. Veneman*,
262 F.3d 406 (D.C. Cir. 2001) .................................................................. 1

*Amador County, California v. U.S. Department of the Interior*,
772 F.3d 901 (D.C. Cir. 2014) ............................................. 25, 29, 30, 43

*Building & Construction Trades Department, AFL-CIO v. Reich*,
40 F.3d 1275 (D.C. Cir. 1994) ............................................................... 61

\*Cameron v. EMW Women's Surgical Center, P.S.C.,
595 U.S. 267 (2022) ...................................................... 26, 32, 33, 42, 46

\*Campaign Legal Center v. FEC,
68 F.4th 607 (D.C. Cir. 2023) ............................................. 24, 32, 33, 46

*Caterino v. Barry*,
922 F.2d 37 (1st Cir. 1990) .................................................................. 43

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth
v. Department of the Interior*,
100 F.3d 837 (10th Cir. 1996) .............................................................. 54

\*Cobell v. Jewell,
No. 96-01285 (TFH), 2016 WL 10703793
(D.D.C. Mar. 30, 2016) ................................................................. 56, 59

*Crossroads Grassroots Policy Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015) .............................................................. 61

*Defenders of Wildlife v. Perciasepe*,
714 F.3d 1317 (D.C. Cir. 2013) ........................................................... 37

---

\*     Authorities on which we chiefly rely are marked with asterisks.

vi

## TABLE OF AUTHORITIES—Continued

Page(s)

*Deutsche Bank National Trust Co. v. FDIC*,
  717 F.3d 189 (D.C. Cir. 2013) ...................................................... 25, 48

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ............................................................. 42

*Ford Motor Co. v. United States*,
  405 U.S. 562 (1972) .............................................................. 36, 40, 51

*Fordyce v. City of Seattle*,
  55 F.3d 436 (9th Cir. 1995) ................................................................ 54

*FTC v. Elders Grain, Inc.*,
  868 F.2d 901 (7th Cir. 1989) .............................................................. 50

*FTC v. Zurixx, LLC*,
  No. 2:19-cv-00713-DK-DAO, 2021 WL 3510804 (D. Utah Aug. 10, 2021) ...................................................................................................... 57

*Fund For Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ..................................................... 24, 61

*Hodgson v. United Mine Workers of America*,
  473 F.2d 118 (D.C. Cir. 1972) ............................................................ 42

*HRH Services. LLC v. Travelers Indemnity Co.*,
  No. 23-cv-02300 (JDB), 2024 WL 4699925 (D.D.C. Nov. 6, 2024) 57, 58

*In re Vitamins Antitrust Class Actions*,
  215 F.3d 26 (D.C. Cir. 2000) .............................................................. 55

*Intermax Towers, LLC v. Ada County, Idaho*,
  No. 1:23-cv-00127-AKB, 2024 WL 2245578
  (D. Idaho May 17, 2024) ..................................................................... 64

*International Salt Co. v. United States*,
  332 U.S. 392 (1947) ...................................................................... 38, 51

# TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*Jones v. Prince George's County, Maryland*,
  348 F.3d 1014 (D.C. Cir. 2003) ............................................................. 55

*Kalbers v. U.S. Department of Justice*,
  22 F.4th 816 (9th Cir. 2021) ................................................................ 46

*Karsner v. Lothian*,
  532 F.3d 876 (D.C. Cir. 2008) ........................................................ 25, 33

*Moten v. Bricklayers, Masons & Plasterers International Union of
  America*,
  543 F.2d 224 (D.C. Cir. 1976) .............................................................. 25

*NAACP v. New York*,
  413 U.S. 345 (1973) ............................................................... 29, 33, 46

*National Society of Professional Engineers v. United States*,
  435 U.S. 679 (1978) ....................................................................... 12, 35

*Natural Resources Defense Council v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) .............................................................. 61

*NLRB v. Express Publishing Co.*,
  312 U. S. 426 (1941) ........................................................................... 36

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) .............................................................. 54

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*,
  20 F.4th 466 (9th Cir. 2021) ........................................................... 36, 40

*R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*,
  584 F.3d 1 (1st Cir. 2009) ................................................................... 29

*Ramos v. Garland*,
  77 F.4th 932 (D.C. Cir. 2023) .............................................................. 25

*\*Roane v. Leonhart*,
  741 F.3d 147 (D.C. Cir. 2014) .......................................... 22, 25, 43, 46

# TABLE OF AUTHORITIES—Continued

Page(s)

*Securities Industry Ass'n v. Board of Governors of the Federal Reserve System*,
  628 F. Supp. 1438 (D.D.C. 1986) ........................................................ 50

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ............................................................... 47

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) .............................................................. 27, 42, 46

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
  45 F.4th 426 (D.C. Cir. 2022) ............................................................. 61

*United States v. American Telephone & Telegraph Co.*,
  642 F.2d 1285 (D.C. Cir. 1980) ......................................... 18, 30, 51, 53

*United States v. British American Tobacco Australia Services, Ltd.*,
  437 F.3d 1235 (D.C. Cir. 2006) ........................................................... 29

*United States v. City of Detroit*,
  712 F.2d 925 (6th Cir. 2013) ............................................................... 46

*United States v. E.I. du Pont de Nemours & Co.*,
  366 U.S. 316 (1961) ..................................................................... 35, 50

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ....................................................... 35, 36, 52

*Western Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ............................................................... 57

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969) ..................................................................... 12, 36, 38

**STATUTES**

15 U.S.C. § 2 ....................................................................................... 6

15 U.S.C. § 4 ................................................................................. 1, 49

## TABLE OF AUTHORITIES—Continued

Page(s)

15 U.S.C. § 25 ...................................................................49

15 U.S.C. § 26 ....................................................................1

28 U.S.C. § 1137(a) ............................................................1

28 U.S.C. § 1291 .................................................................1

28 U.S.C. § 1331 .................................................................1

28 U.S.C. § 1345 .................................................................1

**RULES**

*Federal Rule of Civil Procedure 24 ....................... 25, 29, 34, 55

**OTHER AUTHORITIES**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d ed., 2024 update) ....................................29, 46

# GLOSSARY

| ISA | Apple-Google Internet Services Agreement |
|-----|------------------------------------------|

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over the underlying action under 15 U.S.C. §§ 4, 26, and 28 U.S.C. §§ 1331, 1137(a), 1345. The district court denied Apple's motion to intervene on January 27, 2025. A989-90. Apple filed a notice of appeal on January 29, 2025. Dkt. 1156.[1] This Court's jurisdiction rests on 28 U.S.C. § 1291. *See Alternative Rsch. & Dev. Found. v. Veneman*, 262 F.3d 406, 409 (D.C. Cir. 2001).

## STATEMENT OF THE ISSUES

1.    Whether the district court abused its discretion by concluding, based on all the circumstances, that Apple's motion to intervene—filed over four years after Plaintiff's complaint, four-and-a-half months after the district court issued its liability opinion, and 76 days after Plaintiffs submitted their Proposed Remedy Framework—was untimely.

2.    Whether the district court's order denying intervention should be affirmed on the alternative basis that Google will adequately represent Apple's interest in advocating for the Internet Services

---

[1]    Citations to "Dkt." are to the docket in *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C.).

1

Agreement between them and for revenue sharing—as Google has done throughout this litigation.

## STATUTES AND REGULATIONS

All applicable statutes and rules are contained in Apple's Opening Brief.

## INTRODUCTION

Apple's Internet Services Agreement with Google (the ISA) has been at the heart of this case since the filing of Plaintiffs' complaints over four years ago. It was challenged as anticompetitive in the complaints, was a centerpiece of the evidence in the 10-week trial, and was a key predicate for the district court's liability opinion. Among other anticompetitive harms, the district court found that Google's revenue-share payments to Apple under the ISA "unquestionably have th[e] effect" of "contributing to keeping Apple on the sidelines of search, thus allowing Google to maintain its monopoly." A576. Yet despite the centrality of the ISA and the district court's warning that "time was of the essence" in crafting an antitrust remedy for Google's monopolization of two markets, A979, Apple did not seek to intervene in this case until well into the remedies phase.

Apple claims that it only waited until it was "clear" that Google could no longer adequately represent Apple's interests. Br. 1. But Apple has relied on Google to protect its shared commercial interests for years and nothing has happened to change the adequacy of that representation. And even under Apple's claimed reasons why Google can no longer adequately represent its interests, the district court correctly found that the purported inadequacy had been "laid bare" when Plaintiffs filed their Proposed Remedy Framework, 76 days before Apple intervened. A977. The court correctly found that Apple's intervention at this late date would cause substantial unfair prejudice to the parties, the court, and the public.

Among other things, the court explained that the evidentiary hearing has already been stretched to its maximum length, meaning that giving Apple trial time would necessarily "come at the parties' expense." A987. And the parties would have to devote resources, during an already-hectic fact discovery period, to requesting more documents from Apple and deposing more Apple witnesses. A986. Attempting to reschedule the hearing for Apple would cause months of delay, harming the parties and "the public's keen interest in prompt resolution of this

3

matter." A988. That public interest in prompt relief, which is notably not mentioned in Apple's brief, is critical here: as long as the ISA and Google's other anticompetitive distribution agreements remain in place, technology firms seeking to compete with Google will be stymied from doing so, consumers will continue to have fewer options for search, and advertisers will continue to pay monopoly prices for search text ads.

Apple incorrectly suggests the same prejudice would have arisen had Apple moved earlier. Br. 41. The district court found expressly to the contrary: the court "simply does not have the same flexibility now as it did last September, when it first set the [remedies-stage] schedule." A988. In short, Apple made a calculated decision not to seek intervention until accommodating an intervenor became unworkable. The district court correctly exercised its discretion to hold that intervention attempt untimely.

Finally, Apple is incorrect to claim that enjoining the ISA and other revenue-share agreements would result in "penal consequences" for it by depriving it of substantial revenue. Br. 22. The money to which it claims an entitlement is, as the district court found, unlawfully maintained monopoly rents, and discontinuing them is a

straightforward result of the liability decision here. In any event, Apple and Google have a shared interest in retaining maximum flexibility to enter into as many lucrative types of contracts as possible, even if their interests in future negotiations might diverge. Apple can also exercise the substantial participation rights the district court granted it, beyond those of a normal amicus, to voice its views. Thus, there is no legitimate reason to find that the district court abused its discretion by denying the motion for intervention and declining to upend the court's carefully planned remedies proceeding at the last minute.

## STATEMENT OF THE CASE

**A.**     Defendant Google LLC operates the world's most-used general search engine,[2] receiving more than 89% of all general search queries and nearly 95% of queries on mobile devices. A347-48. The most critical distribution channel for search engines "is, by far, placement as the preloaded, out-of-the-box default" on a device because this makes the search engine integrated into the device's web browser. A358. Google has maintained its gargantuan market share in general search

---

[2]     A general search engine is "software that produces links to websites and other relevant information in response to a user query." A342.

by locking up this key distribution channel, through distribution agreements that secure default status for Google. The main such distribution agreement—Google's ISA with Apple—is at the center of this case.

Under the ISA, "Google pays Apple a share of its search ads revenue in exchange for Apple preloading Google as the exclusive, out-of-the-box default [search engine] on its mobile and desktop browser, Safari." A435. The ISA is enormously profitable for both companies. Google pays Apple roughly $20 billion in revenue share each year under the ISA, A437, and Google receives over $28 billion in net revenue from searches flowing through the Apple default, A364. These payments and profits continue to increase every year.

    B.    On October 20, 2020, the United States and 11 States (the U.S. Plaintiffs) filed their lawsuit alleging that Google violated Section 2 of the Sherman Act, 15 U.S.C. § 2.[3] A339. On December 17, 2020, 38 States (the Colorado Plaintiffs) filed their complaint, adopting the allegations in the U.S. Plaintiffs' complaint and making additional

---

[3]    Three additional States later joined the complaint. Dkt. 94.

allegations. A339. The district court consolidated the cases for pretrial proceedings and for trial. A340.

Plaintiffs alleged, *inter alia*, that Google illegally maintained monopolies in markets for general search services and general search text advertising by entering into a series of exclusionary agreements, including the ISA. A308-10. In particular, Plaintiffs alleged that the ISA "gives Google the coveted, preset default position on all significant search access points for Apple computers and mobile devices." A281. With the ISA, which covers roughly 36 percent of all general search queries in the United States, A291, Google "effectively lock[ed] up one of the most significant distribution channels for general search engines," A280. "Particularly when considered with the other exclusionary distribution agreements . . . , Google's hold on Apple's distribution channel is self-reinforcing, impairing rival general search engines' ability to offer competitive products and making Google's monopolies impenetrable to competitive discipline." A291; *see also* A1042 (Colorado Plaintiffs alleging that "[t]he Google-Apple agreement has harmed competition because it has foreclosed rival general search engines from

accessing search access points on a vital distribution channel—Apple and its devices—for nearly 15 years.").

Plaintiffs further alleged that "[b]y paying Apple a portion of the monopoly rents extracted from advertisers, Google has aligned Apple's financial incentives with its own," A291, and that Google's conduct has stunted innovation, A306-07. Plaintiffs requested, among other remedies, that the court (1) "[e]njoin Google from continuing to engage in the anticompetitive practices described herein and from engaging in any other practices with the same purpose and effect as the challenged practices" and (2) "[e]nter structural relief as needed to cure any anticompetitive harm." A310; *see also* A1081 (Colorado Plaintiffs asking the Court to "[e]nter any relief, as needed, to cure any anticompetitive harm from Google's conduct," including undoing harms caused by "agreements that limit the distribution to and/or use of potential or competitive general search engines by consumers").

Apple participated in this case throughout discovery and the liability trial. Apple produced documents and provided testimony at depositions. A319. Both Plaintiffs and Google included Apple employees on their lists of potential witnesses. A322. Apple responded by moving

(unsuccessfully) to quash both sides' trial subpoenas, arguing that it would be unduly burdensome for its executives to "go through the considerable burden and expense of preparing for their trial testimony and traveling 3,000 miles across the country to testify." A319. At the bench trial, which Apple "closely monitored," Apple Stay Mot. 4 (Doc. 2098492), two Apple executives testified about the ISA—testimony that the district court credited in its liability decision, A575-78.

C.    On August 5, 2024, the district court issued its liability decision, holding that Google illegally maintained monopolies in markets for general search services and general text search ads. A338. Apple was a "key third party" in the decision and the ISA played a leading role in the liability findings. A343; *see also* A435-39 (describing the ISA).

The district court found that the ISA qualified as exclusive dealing because it made Google the default search engine on Apple devices. A538-43. The court found that the ISA and other agreements "foreclosed 50% of the general search services market"—with the ISA alone foreclosing 28%, the most of any single agreement. A551; A556. This "significant foreclosure" blocks Google's rivals from the "most effective

channels of search distribution" and deprives them of scale[] needed to effectively compete." A536; A560. Thus, the ISA and other agreements "have significantly contributed to Google's ability to maintain its highly durable monopoly." A536.

The district court found that the ISA separately harmed competition by reducing Apple's incentives to invest and innovate. As the court explained, both "Apple and Google understand that Apple could develop its own [general search engine] and replace Google as the default" in Apple devices. A575. However, if Apple did so "it would have to be prepared to lose [the] large revenue share payments" under the ISA. A575. The district court thus found that the revenue-share payments have the "anticompetitive effect" of "disincentiviz[ing] Apple from launching its own search engine," thereby "allowing Google to maintain its monopoly." A576.

**D.**    The case thereafter promptly proceeded to the remedies stage.

1. On September 6, 2024, the district court held a status conference on the upcoming remedies proceedings and made clear that the parties and the court had to proceed expeditiously to remedy

10

Google's antitrust violations. Because the court's decisional process depended on the institutional knowledge it had developed regarding this case and its massive record, the court needed to issue its opinion by August 2025—11 months from then. Dkt. 1040 at 6:21-7:3. The district court ordered a "compressed schedule" for the remedies phase, with fact discovery running from late September 2024 to the end of February 2025, and the remedies hearing beginning on April 21, 2025, and concluding by May 2025. A617-18; A1004.

The district court emphasized that "time [was] of the essence" going forward. A979. Its remedies-phase schedule "left little breathing room between deadlines," and the court discouraged extensions of time. A979. And the court "ordered the [parties] to produce documents on an expedited basis." *Id.*

2. Plaintiffs filed their first remedies proposal—the "Proposed Remedy Framework"—on October 8, 2024. A621. The Proposed Remedy Framework explained that under longstanding Section 2 law, "Plaintiffs have a duty to seek—and the [District] Court has the authority to impose—an order that not only addresses the harms that already exist as a result of Google's illegal conduct, but also prevents and restrains

11

recurrence of the same offense of illegal monopoly maintenance going forward." A622 (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 133 (1969)). The remedy would need to "account for alternative and future forms of monopoly maintenance in the affected markets and reasonably related markets in addition to [Google's] specific conduct to date." A624 (citing *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978) (recognizing that "it is not necessary that all of the untraveled roads to [a similar] end be left open and that only the worn one be closed.")). And Plaintiffs' proposed remedy would "restore competition and prevent future monopolization" by addressing the network effects and barriers to entry that currently prevent new entry in these markets. A623.

The Proposed Remedy Framework explained that the "starting point for addressing Google's unlawful conduct is undoing its effects on search distribution." A626. Plaintiffs specified that they were considering "remedies that would limit or end Google's use of contracts, monopoly profits, and other tools to control or influence longstanding and emerging distribution channels," *id.*, including remedies that would

12

"limit or prohibit default agreements, preinstallation agreements, and other revenue-sharing arrangements," A627.

Plaintiffs also explained that they were considering remedies going beyond the specific anticompetitive conduct found by the court, consistent with the obligation to restore competition and prevent future violations. For example, Plaintiffs stated they could propose "behavioral and structural remedies that would prevent Google from using products such as Chrome, Play, and Android to advantage Google search and Google search-related products and features." A627.

3. A month and a half later, on November 20, 2024, Plaintiffs filed their initial Proposed Final Judgment. A653. In accordance with the district court's finding that Google had used revenue-share payments to maintain its monopoly, Plaintiffs' Proposed Final Judgment provided that "Google must not offer or provide something of value to a third party, including payments or other commercial terms that create an economic disincentive to compete in or enter the [general search services] or Search Text Ad market(s)." A682. The Proposed Final Judgment separately repeated that prohibition as to Apple. *Id.*

13

A month after that, Google filed its own Proposed Final Judgment, on December 20, 2024. A711. Google's Proposed Final Judgment proposed only modest changes to Google's relationship with Apple under the ISA. Under Google's Proposed Final Judgment, Google would retain the ability to pay Apple to make Google the default search engine on the Safari browser on Apple devices; the only changes to the current ISA were that Apple would be allowed to (1) change defaults every year and (2) promote rival search engines. A726-27. And Google's Proposed Final Judgment explicitly clarified that "[n]othing in this Final Judgment shall otherwise prohibit Google from providing Consideration" to Apple or other device makers "in exchange for such entity's distribution, placement on any access point, promotion, or licensing of [a] Google product or service." A727.

Apple still had not moved to intervene.

**E.**    Three days later, and just before Christmas Eve, Apple at last moved to intervene in the case. A735. Apple's motion stated that Apple had a legally protected interest in the case "due to its contractual rights under the ISA"—the contract the district court had held unlawful four months prior. A747. Apple argued that Plaintiffs' Proposed Final

14

Judgment—filed more than a month earlier—would impair Apple's interest by "upend[ing] the status quo in Apple's relationship with Google." A749. And although Plaintiffs' Proposed Final Judgment asked for remedies that the earlier Proposed Remedy Framework had squarely previewed, Apple claimed that it was only "now clear" that Google could not represent Apple's interests. A750.

The district court heard oral argument on Apple's motion. Apple explained that it wanted to call three witnesses at trial, including a potential expert, and cross-examine Apple and Google witnesses, requiring "a couple of additional days on the schedule." A892-93. Apple's "limited" participation also would include participating in depositions, proposing its own remedy, participating in oral argument, and filing a post-hearing brief. *Id.*; A981.

The district court raised several concerns to Apple's counsel, who gave only threadbare responses. First, the court asked what "unique testimony" Apple would be presenting "that I haven't already heard." A894. In particular, the district court stated that it had already heard substantial testimony, "over the course of two days at least," that Apple "doesn't want to enter the search market." A894-95. Apple's counsel

15

responded only that "we're in a different time" and that it wanted to make clear "there is nothing that this Court could order that would cause Apple to enter into search" now. A895. The court said that fact was "now on the record," and it would likely be able to get the same information from Eddy Cue, an Apple witness who testified at trial and who Google was likely to call at the remedies hearing. *Id.*

Second, the district court asked why "full-party status is necessary to accomplish" Apple's goals, A899, noting that it would be hearing from Mr. Cue and that there "are ways [Apple] can present evidence" without being a party, A898. Apple cursorily explained that it needed to cross-examine witnesses because "[w]e don't know how the testimony is going to unfold" and that its own additional witnesses would "complete the record before this Court." A899.

Third, the district court repeatedly asked Apple how its interests diverged from Google's, noting that Google's Proposed Final Judgment "is exactly what Apple would like": Google's remedy preserves revenue sharing and *enhances* Apple's flexibility regarding default search engines in the Safari browser. A896. Apple, repeatedly, had little to say:

- Asked directly how its Proposed Final Judgment would "differ from Google's proposal," Apple had no answer. A900.

16

- Apple agreed with the district court that Google's Proposed Final Judgment "would actually improve Apple's position in negotiations with Google." A901.

- When the district court pointed out—contrary to Apple's suggestion in its intervention papers—that Google was "going to defend both" agreements for default-search-engine status *and* revenue sharing payments to Apple, Apple had to acknowledge that was "true as a general matter." A902. Apple contended only that Google's representation would not be adequate because Google has "many things on its plate" besides revenue sharing. A903.

**F.**     The district court denied Apple's intervention motion as untimely, without reaching any of Rule 24's other requirements. A989. The court concluded, in its "sound discretion," that "all four factors" going to timeliness "weigh[ed] against finding that Apple timely sought to intervene." A973 (citation omitted).

*First,* Apple had waited an "unduly" long time to move for intervention. A974. It "should have known since this suit's inception that its contractual rights [in the ISA] would be directly affected," yet waited over four years to seek intervention. A975. Even if the need to intervene arose only at the remedies stage, the district court found that Apple's motion still would be untimely because Apple did not seek intervention until 76 days after the filing of Plaintiffs' Proposed Remedy

Framework. A977. That delay was "lengthy, even under Apple's own cases." *Id.* And in the circumstances of this case, where 76 days comprises "nearly half (49%) of the remedies-phase fact discovery period" and "nearly one-third (31%) of the remedies phase as a whole," Apple's delay was even more problematic. A978.

*Second*, Apple's claimed purpose for intervening—i.e., to present evidence and argument—demonstrated untimeliness, given that Apple "permitted significant time to elapse" before filing its motion and that the parties were well into preparation for the hearing. A982 (quoting *United States v. AT&T*, 642 F.2d 1285, 1294-95 (D.C. Cir. 1980)). Additionally, Apple failed to explain what evidence it wished to present that it had not already presented at the liability trial. *Id.* And the court was unconvinced that "Google lacks incentive to make Apple's position known to the court." A983 n.4. "Indeed," the court noted, "Google's [remedies] proposal would arguably put Apple in a better position than it is today," and Apple had failed to explain—even when directly asked at oral argument—"why Google's proposal does not align with its stated interests." *Id.*

18

*Third*, intervention was not needed to protect Apple's rights since the court would "afford Apple an opportunity to be heard" as amicus curiae during the remedy stage, including opportunities not normally accorded to amici. A985. The court authorized Apple to file a post-hearing brief and to offer either one or two fact-witness affidavits, depending on whether Google calls Mr. Cue to testify at the hearing. A990.

*Fourth*, the parties "would suffer substantial prejudice were Apple to intervene at this late stage." A989. Plaintiffs would have to divert some of their limited resources to responding to Apple's witnesses and a potential Apple expert report. A986. And Apple's presentation at the hearing would "necessarily encroach upon the parties' time to present their own cases," given the limited court time available for the trial. A987. The alternative—postponing the remedies trial—would mean a delay of "months," which the district court and the public could not afford. A988.

Apple appealed the district court's order, and moved for a stay pending appeal, which the district court and this Court denied. A1000-

19

03 (district court); Doc. 2099916 (this Court). The remedies hearing is scheduled to begin on April 21, 2025. A1004.

## SUMMARY OF ARGUMENT

Apple asserts that Google no longer adequately represents it in this litigation and that it moved to intervene in the case as soon as that potential inadequacy became clear. Both assertions are wrong. As the district court found, even if some potential inadequacy existed, the bases for it would have been clear to Apple long before it sought intervention. But in any event, Google continues to adequately represent its shared interests with Apple in defending the ISA and maximizing the companies' flexibility to contract with each other.

**I.** The district court correctly exercised its discretion in finding Apple's intervention motion untimely. All four timeliness factors weigh strongly against Apple.

First, Apple waited too long to intervene after its purported need for intervention arose. This case has directly implicated Apple's interest in the ISA from the start—and the district court's liability opinion in August 2024, holding that Google's payments to Apple under the ISA "unquestionably" maintain Google's monopolies, necessitates broad

20

equitable relief, including enjoining the ISA and other forms of anticompetitive revenue sharing. A576. Yet Apple sat on its hands by not moving to intervene until late December 2024, when the remedies stage was well underway. Apple does not claim that the district court clearly erred in any factual determination and fails to justify its delay. Indeed, even if Apple were correct that timeliness should be measured from the filing of Plaintiffs' Proposed Final Judgment, its failure to seek intervention for over another month would still be unjustified.

Second, as the district court found, Apple's intervention at this late stage would cause substantial unfair prejudice. Apple's intervention would increase the already-massive discovery burden on the parties, at a time when they could ill afford it. It would take valuable time away from the parties' presentations at the remedies hearing, which the district court explained can no longer be lengthened. And if the hearing were rescheduled, Apple's intervention would significantly delay the resolution of the case, prolonging the serious harms to competition the district court found in its liability opinion. Apple's response—that prejudice cannot overcome an "otherwise timely" motion, Br. 34—gets the law exactly backwards. This Court has stated

21

that prejudice is the "most important" consideration in the analysis, *Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014), and Apple's intervention would cause prejudice in spades.

Third, Apple's purpose for intervening weighs against finding timeliness. This Court has emphasized the need for timely action when an intervenor seeks to present evidence and argument, as Apple does, making Apple's dilatory conduct all the more inexcusable. Moreover, the evidence Apple wants to present is evidence that the district court already heard and credited. A982.

Fourth, Apple has shown no need for intervention. It repeatedly failed below to offer specifics about why it needed party status to protect its interests. Even so, the district court granted Apple substantial participation rights, including the ability to file a post-hearing brief and the right to file fact-witness affidavits. Apple still has no explanation— beyond conclusory assertions—as to why these generous participation rights are insufficient for its purposes.

**II.**    Apple's intervention bid fails in any event because Google— Apple's counterparty in the ISA—adequately represents Apple's

interests. If necessary, the Court should affirm on this alternative ground.

Google shares Apple's goal of perpetuating the ISA as much as possible, given how lucrative the agreement is for both companies, and this shared objective triggers a well-recognized presumption of adequacy. And both parties share the goal of maximizing their flexibility in future contractual negotiations. Indeed, Apple acknowledges that Google's interests in defending the ISA and revenue sharing has provided adequate representation for Apple's throughout this case. Google is contractually obligated to defend the ISA, and it told the district court that it has "vehemently defended" the ISA and "will continue to defend the legality of that agreement through the remedies phase and on appeal in this matter." A889 (Tr. 48:4-7).

Apple cannot identify any recent development that changes Google's ability to adequately represent Apple's interests, as Google has done for four years. Apple claims that Google will not defend its ability to pay Apple revenue share apart from default status, but that is implausible—Google's Proposed Final Judgment would permit such payments, allowing Google and Apple to reach profitable revenue-

sharing arrangements for distributing Google's search engine on Apple devices. Apple insists it must provide the district court evidence about its intentions in the search market, but the district court explained—in findings that Apple does not challenge—that it has already heard and credited the evidence Apple wants to provide, and in any event, Apple will be permitted to submit affidavits as an amicus. And Apple's fear that Google will not "prioritize" defending the ISA, even though Google has done so for years and nothing has changed about the case's complexity, is unfounded and insufficient to justify intervention.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to intervene pursuant to Rule 24(a)(2) for abuse of discretion. *Campaign Legal Ctr. v. FEC*, 68 F.4th 607, 610 (D.C. Cir. 2023). An abuse of discretion occurs when the district court applies the wrong legal standard or relies on clearly erroneous findings of fact. *Id.*

A district court's determinations on timeliness and adequacy of representation "involve a measure of judicial discretion and hence are reviewed for an abuse of discretion." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003); *see also Roane v. Leonhart*, 741 F.3d

147, 151 (D.C. Cir. 2014) ("We review a district court's assessment of timeliness for abuse of discretion."). Where "the district court considered all the relevant factors," this Court "will not disturb its judgment" on timeliness. *Amador Cty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014).

## ARGUMENT

A nonparty seeking intervention of right under Rule 24(a)(2) "must demonstrate" four elements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013) (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)).[4] The district court did not abuse its discretion in denying Apple's motion for untimeliness.

---

[4]     Apple has forfeited its argument for permissive intervention under Rule 24(b). *Ramos v. Garland*, 77 F.4th 932, 941 (D.C. Cir. 2023) (a party forfeits arguments not adequately developed in opening brief). Regardless, "[i]ntervention, whether of right or permissive, must be timely," *Moten v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976); *see also* Fed. R. Civ. P. 24(a)-(b)

25

Apple must thread the eye of a needle on appeal. Throughout the four-plus-year history of this case, Google's contractual relationship with Apple has been front and center. Indeed, Apple knows this firsthand from the complaints, participating in discovery, attending trial, and reading the district court's extensive liability opinion. Thus, to prevail, Apple must show that the inadequacy of Google's representation of their shared interests only became clear just before Apple's December 23, 2024, request to intervene. Apple's gambit fails for at least two reasons.

First, Google adequately represents their shared interests, and nothing happened in the days prior to December 23, 2024, to change that. Google did not withdraw from the case or announce it would no longer vigorously defend it. To the contrary, it continues to defend the ISA and seeks to maintain maximal contractual flexibility with respect to other means of distributing search. This is distinguishable from the cases on which Apple relies, where the circumstances changed abruptly. *Compare, e.g., Cameron v. EMW Women's Surgical Ctr., PSC*, 595 U.S.

---

(requiring a "timely motion"), and Apple's motion was untimely, *infra* Section I.

26

267, 280 (2022) (state official ceased defending a law); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390 (1977) (putative class representative decided not to appeal denial of class certification). Apple told the district court it did not even know what it would seek differently in a Proposed Final Judgment than what Google now seeks. In Plaintiffs' view, Google's representation of Apple remains as adequate as it has been from when Plaintiffs filed their complaints explicitly challenging Google's contracts with Apple.

Second, Apple waited far too long to intervene, even assuming that Apple is correct that Google's representation of their shared interests became inadequate in the remedies phase. Apple does not identify anything new that it learned shortly before its motion. Apple makes much of Plaintiffs' Proposed Final Judgment mentioning Apple's contracts with Google by name, but Apple was named in the complaints, the liability judgment, and many pleadings in between and since. Apple asserts that Google became distracted when Plaintiffs' Proposed Final Judgment sought a divestiture of Chrome, Br. 21, but the complaints prayed for structural relief, and Plaintiffs' Proposed Remedy Framework expressly said Plaintiffs were evaluating it. And while

27

Apple tries to suggest that a new problem arose with the Proposed Final Judgment's provision barring certain types of revenue sharing, Plaintiffs' Proposed Remedy Framework underscored that their remedy would address revenue sharing and go farther than simply barring the exact practices found illegal. Thus, the district court did not abuse its discretion in finding that, even if Google no longer adequately represents Apple's interests, any such rift was clear at the latest from the filing of Plaintiffs' Proposed Remedy Framework.

Apple also downplays the substantial unfair prejudice to the parties, the court, and the public interest that would result if Apple intervened at this late stage. As the district court explained, Apple's intervention now (as compared to earlier) would upend the proceedings and potentially delay, by months, the remedies trial—and accordingly delay the imposition of a remedy for the significant harms Google has inflicted on competition and consumers. American consumers and businesses should not have to pay the price for Apple's delay.

Because the district court reached only the timeliness issue in its decision denying Apple's intervention motion, we discuss that issue first in Section I, explaining why the district court did not abuse its

28

discretion in finding Apple's motion untimely. Then, in Section II, we explain how adequate representation provides an alternative basis for affirmance here.

## I. The District Court Correctly Concluded That Apple's Intervention Motion Was Untimely.

An untimely motion for intervention "must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973); Fed. R. Civ. P. 24(a) (requiring a "timely motion"). Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of [1] time elapsed since the inception of the suit, [2] the purpose for which intervention is sought, [3] the need for intervention as a means of preserving the applicant's rights, and [4] the probability of prejudice to those already parties in the case."[5] *United States v. Brit. Am. Tobacco Australia*

---

[5]     Apple contends that timeliness is "a thin reed on which to deny intervention as of right." Br. 21. But the rule specifically requires "a timely motion," Fed. R. Civ. P. 24(a), and courts regularly deny intervention of right on that basis, *see, e.g.*, *Amador*, 772 F.3d at 902, 906. The treatise that Apple quotes out of context merely says that timeliness is judged more strictly for permissive intervention than for intervention of right. But "even in the case of a motion to intervene as of right, the district court's discretion is appreciable, and the timeliness requirement retains considerable bite." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (3d ed.) (describing *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009)).

*Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. AT&T Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).

The district court correctly found that "all four factors weigh against finding that Apple timely sought to intervene in this case." A973. Because the court "set forth the proper test, analyzed the relevant factors, and concluded that [Apple's] motion to intervene did not satisfy Rule 24(a)'s timeliness requirement," it "did not abuse its discretion." *Amador*, 772 F.3d at 906.

### A.  Apple Moved for Intervention Long After It Knew Its Interests Were Affected.

The district court correctly found that the time elapsed before Apple sought to intervene—over four years from the commencement of litigation, over four-and-a-half months after the finding of liability, over ten weeks after Plaintiffs' Proposed Remedy Framework, and more than a month after Plaintiffs' Proposed Final Judgment—"weighs against the timeliness of Apple's motion." A980.

Apple "does not dispute that it knew or should have known since the suit's inception that its contract rights would be directly affected." A975. As the district court found, the ISA has been "at the heart of this antitrust action . . . since the beginning," and the complaints "made

30

clear the risks this litigation posed for Apple" by praying for structural

relief and injunctive relief, which "would limit Apple's ability to contract

with Google now and in the future." A975.[6]

Nor does Apple dispute that the ISA was a focus of the evidence at

trial and that the district court found the ISA to be anticompetitive,

discussing at length the multiple ways that the ISA contributed to

Google's monopolies. Under the ISA, Google pays Apple tens of billions

of dollars annually to be preloaded as the default search engine on all

Safari search access points. A438; A538. The ISA thereby, in

combination with other agreements, foreclosed a substantial portion of

the general search-services-market and impaired rivals' opportunities

to compete. A557-60. Additionally, these agreements deprived rivals of

the scale necessary to compete effectively. A560-70. The "revenue share

---

[6]     Apple's claim the lawsuit "expand[ed] . . . to focus on Apple" with
Plaintiffs' Proposed Final Judgment, Br. 2, is contradicted by the
district court's findings. Apple also notes that in their complaints,
"Plaintiffs did not name Apple as a defendant, or allege that Apple had
engaged in any wrongdoing." Br. 1. But Plaintiffs' decisions, in their
prosecutorial discretion, not to bring a Section 1 claim challenging the
ISA did not suggest the ISA was lawful. On the contrary, as explained
below, the district court found the ISA to be a key part of the unlawful
conduct because it was an important way Google unlawfully maintained
its monopolies.

payments" from Google further harmed competition by reducing Apple's incentives to invest and innovate: "The prospect of losing tens of billions in guaranteed revenue from Google—which presently come at little or no cost to Apple—disincentivizes Apple from launching its own search engine when it otherwise has the capacity to do so." A576.

Thus, any question whether Apple's contractual rights would be affected by the litigation was answered unequivocally on August 5, 2024, when the district court issued its liability opinion. Yet, for over four months, Apple made no effort to intervene, all the while participating in the remedies proceedings in other ways.[7] As the district court correctly found, Apple's dilatoriness weighs against timeliness. A980.

Relying on *Cameron* and *Campaign Legal Center*, Apple argues that its motion was timely because it moved "'as soon as it became clear' that [Apple's] interests 'would no longer be protected' by the parties in the case." Br. 23 (quoting *Campaign Legal Ctr.*, 68 F.4th at 610 (quoting

---

[7]     Apple participated in remedies-stage discovery and discussed its views on remedies with Plaintiffs in October 2024. A790. Apple also produced documents pursuant to Plaintiffs' subpoena in November 2024. *Id.*

32

*Cameron*, 595 U.S. at 279-80)). This argument fails because Google has adequately represented Apple's interest in this case and will continue to do so. *See infra* Section II. Regardless, the district court assumed *arguendo* that Google's representation is inadequate, applied *Cameron* and *Campaign Legal Center*, and found that Apple still waited far too long to intervene. A974 (citing *Cameron* and *Campaign Legal Center* and finding the motion untimely "[r]egardless of how the timeliness inquiry is framed"); A977 (distinguishing *Cameron*).

Apple's argument that its motion "was timely as a matter of law" (Br. 21) is inconsistent with this Court's and the Supreme Court's approach to timeliness. "Timeliness is to be determined from all the circumstances." *Cameron*, 595 U.S. at 279 (quoting *NAACP*, 413 U.S. at 365-66). "And it is to be determined by the [district] court in the exercise of its sound discretion." *NAACP*, 413 U.S. at 366. Apple ignores these basic principles and the district court's considered findings. Instead, it asks this Court to take its word that it moved "promptly" when it discovered inadequacy of representation and to skip over "consideration[s]" that this Court has identified as "especially" significant. *Campaign Legal Ctr.*, 68 F.4th at 610 (quoting *Karsner*, 532

33

F.23d at 886). If Apple were right, timeliness would not be a meaningful limitation, contrary to precedent and Rule 24(a) itself. Fed. R. Civ. P. 24(a) (making a "timely motion" a threshold requirement).

Apple contends that Plaintiffs' Proposed Final Judgment "generated a divergence between Google's and Apple's interests" by proposing a "broad" remedy including a provision prohibiting certain revenue-sharing arrangements between Apple and Google. Br. 25-27. But, as the district court found, Plaintiffs' Proposed Remedy Framework "laid bare the very cleavage that Apple now claims is the reason Google can no longer adequately represent its interests in this case." A977. The Proposed Remedy Framework explained that Plaintiffs would seek "a number of mutually reinforcing remedies," A626, addressing "four categories of harm," A625, including "structural remedies" and prohibitions on "revenue-sharing arrangements related to search and search-related products," A627. It also explained that the remedy "need not be limited to the specific means or methods of how Google achieved that illegal monopoly maintenance," and "should account for alternative and future forms of monopoly maintenance." A624.

34

Indeed, if anything, the district court was being generous to Apple because the facts and circumstances forming that purported "cleavage" would already have been apparent to Apple from the district court's liability opinion months before. Apple and its experienced counsel would have known from the court's liability findings that a remedy enjoining the ISA, including its revenue-share payments—*and other related practices*—would be forthcoming. Because the district court found that the revenue-share payments "reasonably appear[] capable of contributing to keeping Apple on the sidelines of search," A576, Apple would have known that the remedy, at a minimum, must "enjoin [that] offensive conduct," *United States v. Microsoft Corp.*, 253 F.3d 34, 80, 106 (D.C. Cir. 2001) (en banc). Moreover, Apple would have known that the remedy must "restore competition" to the monopolized markets, *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961), and, accordingly, could "go[] beyond a simple proscription against the precise conduct previously pursued," *Prof'l Eng'rs*, 435 U.S. at 698. Indeed, when "monopolization or attempted monopolization has occurred, the available injunctive relief is broad, including to 'terminate the illegal monopoly, deny to the defendant the fruits of its statutory

35

violation, and ensure that there remain no practices likely to result in monopolization in the future.'" *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co*., 20 F.4th 466, 486 (9th Cir. 2021) (quoting *Microsoft,* 253 F.3d at 103, and citing *Ford Motor Co. v. United States,* 405 U.S. 562, 573 (1972)). In particular, it would have been apparent to Apple that the district court could enjoin other types of revenue-sharing agreements, given the court's "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed." *Zenith Radio*, 395 U.S. at 132 (quoting *NLRB v. Express Publishing Co.*, 312 U.S. 426, 435 (1941)).

Apple does not argue that its motion would be timely if time elapsed is measured from Plaintiffs' Proposed Remedy Framework. That 76-day delay "comprises nearly half (49%) of the remedies-phase fact discovery period" and "amounts to nearly one-third (31%) of the remedies phase as a whole." A978. And Apple "knew (or should have known)" that this "constitute[s] significant delay." A980.

Apple has not identified any clear error in the district court's factual findings.[8] *See Defenders of Wildlife v. Perciasepe,* 714 F.3d 1317, 1322 (D.C. Cir. 2013) ("[w]e review the denial of a motion to intervene . . . for clear error as to findings of fact"). And the record squarely refutes Apple's assertion that "everything changed" with the Proposed Final Judgment. Br. 16. Specifically, Apple cannot have been surprised that Plaintiffs' Proposed Final Judgment (a) specifically addresses one of the anticompetitive harms found by the district court and (b) is broad enough to address Google's multifaceted course of anticompetitive conduct.

1. Apple claims it "could not have [] predicted" the provision in the Proposed Final Judgment prohibiting Google from providing "anything of value to Apple" that "in any way creates an economic disincentive for Apple" to enter the monopolized markets.[9] A682; *see* Br. 1, 13, 20, 26.

---

[8] Apple argues that the district court made no factual findings at all. Br. 20. To the contrary, the district court's 19-page opinion contains ample factual findings, including in its determination that the facts and circumstances giving rise to the purported inadequacy of representation were clear by at least October 8. *E.g.*, A976-78; A1001.

[9] The provision reads in full: "<u>Apple Search Access Points And Devices</u>: Google must not offer or provide anything of value to Apple—or

But this provision directly follows from the district court's liability finding that revenue-share payments under the ISA "disincentivize[] Apple from launching its own search engine when it otherwise has built the capacity to do so." A576. Those payments "unquestionably had the effect" of protecting Google's monopoly by "contributing to keeping Apple on the sidelines of search, thus allowing Google to maintain its monopoly." A576. Predictably, then, Plaintiffs proposed a remedy prohibiting payments that would keep this "economic disincentive" in place. A682.

Apple cannot have expected that Plaintiffs would request only that the ISA be enjoined. "[I]t is not necessary that all of the untraveled roads to [the anticompetitive] end be left open and that only the worn one be closed," *Int'l Salt Co. v. United States*, 332 U.S. 392, 400 (1947), and courts have "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed,'" *Zenith Radio*, 395 U.S. at 132.

---

offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [general-search-services] or Search Text Ad markets." A682.

If Apple and its lawyers did not appreciate the implications of the liability decision, Plaintiffs' Proposed Remedy Framework spelled them out. It stated that Plaintiffs were considering prohibitions on "revenue-sharing arrangements related to search and search-related products." A627. And it explained that the remedy "need not be limited to the specific means or methods of how Google achieved that illegal monopoly maintenance" and "should account for alternative and future forms of monopoly maintenance." A624.

Apple's assertion that this provision was a surprise because the Proposed Remedy Framework did not specifically name Apple (Br. 26) is not credible. The Proposed Remedy Framework identified well-defined *categories* of contracts—including "default agreements" and "other revenue-sharing arrangements"—that clearly encompass the ISA. Moreover, the ISA has been a major focus of this case since its inception, and it was a central part of the violations found by the district court. *See, e.g.*, A254-312 (U.S. Plaintiffs' complaint mentioning Apple 56 times); A1011-1049 (Colorado Plaintiffs' complaint mentioning Apple 35 times); A331-616 (liability opinion mentioning Apple 348

39

times). Apple must have understood that any remedy would address the harms stemming from that agreement.

2. Apple's argument that it was blindsided by Plaintiffs' Proposed Final Judgment's "broadside attack on Google's business" (Br. 28) also is implausible. The district court found that Google engaged in multiple anticompetitive practices over many years that harmed competition in numerous ways. Because "antitrust relief must restore competition," *Optronic*, 20 F.4th at 486 (citing *Ford Motor,* 405 U.S. at 573), it was apparent from the court's liability findings that a broad remedy would be necessary to "unfetter [the] market[s] from anticompetitive conduct and pry [them] open to competition," *Ford Motor*, 405 U.S. at 577-78. And, again, if this was not plain enough for Apple from the liability opinion, Plaintiffs' Proposed Remedy Framework advertised that Plaintiffs would seek a "comprehensive" decree with "a number of mutually reinforcing remedies" addressing "four categories of harm." A625.

Tellingly, the very remedies that Apple singles out from the "broadside" were identified in the Proposed Remedy Framework. Apple points to the Proposed Final Judgment's provisions (1) requiring

40

divestiture of Chrome and Android; (2) requiring Google to provide access to its search index to competitors; and (3) prohibiting Google from investing in technologies, such as Artificial Intelligence products, that are potential entrants into the monopolized markets. Br. 28. But the Proposed Remedy Framework addressed all of those remedies. It advised that Plaintiffs were considering (1) "structural remedies that would prevent Google from using products such as Chrome, Play, and Android to advantage Google search and Google search-related products and features"; (2) requiring "Google to make available . . . the indexes, data, feeds, and models used for Google search"; and (3) "remedies that would limit or end Google's use of contracts, monopoly profits, or other tools to control or influence . . . search-related products (e.g., browsers, search apps, artificial intelligence summaries and agents)." A626-28. Apple's claim that the Proposed Remedy Framework did not contain "specific remedies" (Br. 31) is thus wrong.[10]

---

[10]    Even if the Proposed Remedy Framework had not put Apple on notice that Plaintiffs might seek divestiture, the result would be the same. Apple is not claiming a protected interest in whether the district court orders structural relief. Apple argues only that divestiture and other remedies issues will distract Google from what Apple cares about:

Finally, even if Apple were right that time elapsed should be measured from the filing of Plaintiffs' Proposed Final Judgment on November 20, 2024, its motion *still* would be untimely. Apple did not move to intervene "promptly" (Br. 25)—it waited 33 days. This delay is much longer than those in the cases on which it relies. In *Cameron*, the nonparty moved to intervene only two days after the potential inadequacy of representation arose. 595 U.S. at 273. In *United Airlines*, the nonparty moved to intervene 18 days after the triggering event. 432 U.S. at 390; *see also Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (nonparty moved to intervene two days after triggering event); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 122, 129 (D.C. Cir. 1972) (intervention sought four days after a Supreme Court decision authorizing intervention in a similar case). Apple offers no explanation for its month-plus delay—less than the *entire* briefing schedule in this appeal—to file a basic motion for intervention, notwithstanding "the court's repeated indications that time is of the essence." A979.

---

the ISA and its revenue sharing. Br. 29. And as explained above, the ISA's revenue sharing was at stake long before Apple intervened.

### B.    Apple's Intervention Would Cause Substantial Unfair Prejudice to the Parties and the Public.

1. As the district court found, "the existing parties would suffer substantial prejudice were Apple to intervene at this late stage." A989. The possibility of prejudice to existing parties has been called "the most important consideration." *Roane v. Leonhart*, 741 F.3d at 152. It serves to "prevent[] potential intervenors from unduly disrupting litigation, to the unfair detriment of existing parties." *Id.* at 151. Accordingly, courts routinely deny intervention where it could require additional discovery, necessitate additional proceedings, or delay resolution of the case. *See, e.g.*, *Amador*, 772 F.3d at 906 (intervention would cause "prejudicial delay" because the case "would be further delayed as the district court at the very least would need to accept briefing on [intervenor's merits] motion, hear argument, and rule on the motion"); *Caterino v. Barry*, 922 F.2d 37, 41-42 (1st Cir. 1990) (need for discovery from proposed intervenor and additional time to prepare for trial and potential delay of trial prejudicial); A985-86 (collecting cases).

The district court found ample unfair prejudice of this sort. It explained that "[b]y this point in the litigation—just one month before the close of fact discovery and less than three months until the

43

evidentiary hearing—the parties have structured their discovery, served their written requests, disclosed their initial witness lists, scheduled their witness depositions, and reviewed hundreds of thousands of documents." A987. Apple's intervention would disrupt these plans and add to the parties' "already heavy burden." A988. They would have to request documents and depose Apple's additional witnesses. A986. And they would have to "devote considerable time and resources" to respond to Apple's expert witness. *Id.* Plaintiffs expect this would require hundreds of hours to review discovery documents, prepare for and take depositions, prepare responsive expert reports, and prepare for cross-examination at trial—time that Plaintiffs do not have at this late stage of the remedies phase.

Additionally, Apple's participation at the evidentiary hearing "will necessarily encroach upon the parties' time to present their own cases." A987. Apple's direct examination of its witnesses and cross-examination of the parties' witness would consume a day-and-a-half of the 14-day trial, and the parties' cross-examinations of Apple's witnesses would consume more. Finally, if Apple were allowed to intervene, that would

"open the door to intervention" by other third parties potentially affected by the remedy "halfway through the remedial phase." A989.

The district court explained that it could not mitigate the unfair prejudice by extending the existing hearing because it "does not have the same flexibility now that it did last September, when it first set the schedule." A988. It declined to reschedule the hearing because that would mean a delay of "months, not weeks," swapping "one form of prejudice for another." *Id.* In particular, "such a delay would be prejudicial to the parties and contrary to the public's keen interest in prompt resolution of this matter." *Id.*

2. Apple's response misstates the law, second-guesses the district court's management of the case, and elevates its own interest above the paramount public interest in enforcing the antitrust laws. Apple falls far short of establishing that the district court's on-the-ground assessment of the impact of Apple's intervention was an abuse of discretion.

a. Apple begins by claiming that "prejudice [does not] overcome an otherwise timely motion." Br. 34. But prejudice is part of the timeliness analysis because the point of the timeliness requirement is to prevent

"potential intervenors from unduly disrupting litigation." *Roane*, 741 F.3d at 151. Accordingly, this Court has called possible prejudice the "most important" factor in assessing timeliness. *Id.* at 152; *see also* 7C Wright & Miller, *supra*, § 1916 ("If prejudice is found, the motion [to intervene] will be denied as untimely.").

Contrary to Apple's suggestion (Br. 34), *Cameron* does not teach differently. There, the Supreme Court that stated that "timeliness is to be determined from all the circumstances," and it considered not just time elapsed but also "disruption" and other prejudice to existing parties from intervention. 595 U.S. at 279-81. The Court broke no new ground, relying on its earlier decisions. *Id.* at 279-80 (quoting *United Airlines*, 432 U.S. at 394, and *NAACP*, 413 U.S. at 365-66). Indeed, in *Campaign Legal Center*, this Court cited *Cameron* in the same paragraph in which it restated this Court's well-established standard for timeliness. 68 F.4th at 610.

Citing out-of-circuit cases, Apple further argues that only "the prejudice caused by the untimeliness" counts. Br. 34-35 (quoting *United States v. City of Detroit*, 712 F.2d 925, 933 (6th Cir. 2013), and citing *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021), and

46

*Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994)). But the
prejudice found by the district court flows directly from Apple's
tardiness. The additional discovery and other trial preparation would
unfairly prejudice the parties because, at this late stage in the remedies
phase, they have already "structured their discovery" and mapped out
their trial strategies. A987-88. Intervention would upset all this work
and force the parties to rejigger their plans with the trial looming.

Likewise, the district court explained that Apple's trial
presentation would "necessarily encroach on the parties' time to present
their own cases," and, at this late date, the court could not add time to
the existing schedule. A987-88. As the court explained, it "simply does
not have the same flexibility now as it did last September"—when it
was apparent that a remedy addressing the ISA was forthcoming—and
"the delay from postponing the evidentiary hearing would be months,
not weeks." A988. Apple simply ignores all this in speculating that, had
it moved earlier, "the court and the parties would be confronting the
same basic circumstances." Br. 41.

b. Apple also ignores the abuse-of-discretion standard of review
and invites this Court to superintend the district court's management of

47

this case and its docket. It asks this Court to disregard the district court's assessment that Apple's intervention would add to the parties' "already heavy burden," A988, and instead take Apple's word that there would be "no meaningful burden on discovery that would move the needle," Br. 41-42. Apple insists that the court "certainly could have accommodated an additional two days" of trial, *id.* at 42, when the court said exactly the opposite: that it had already set aside "the maximum number of days it has available." A987 (adding five days to extend the trial to 14 days "was challenging").

Apple criticizes the district court for noting that other follow-on intervenors (if Apple were allowed to intervene at this late stage) could add to the already substantial prejudice. Br. 43. But this Court has noted the possibility of follow-on intervention in affirming the denial of a Rule 24(a)(2) motion. *Deutsche Bank*, 717 F.3d at 192 (proposed intervenors "are swimming up river" because if they are entitled to intervene "there is no apparent reason why [others] could be denied a similar opportunity). One third party has already sought "at least" the same participation rights the district court granted Apple—and

48

reserved the right to move to intervene if this Court reverses as to Apple. Dkt. 1165-1 at 3 n.4.

c. Apple lastly tries to substitute its self-interest for the public interest. It argues that the district court abused its discretion by failing to address "the public's interest in a fair, lawful, and appropriate remedy." Br. 42. The court did no such thing. It assessed whether Apple had anything to contribute to the record and afforded it the opportunity to provide affidavits and file a post-hearing brief, A982; A990, ensuring that Apple will *not* be a "mere spectator," *contra* Br. 40.

It is *Apple* that ignores the "the public's keen interest in prompt resolution of this matter." A988. Congress has provided that courts should "proceed, as soon as may be, to the hearing and determination" of federal antitrust enforcement actions. 15 U.S.C. §§ 4, 25. That direction is even more salient now that the district court has found that Google has been violating Section 2—through conduct that has persisted for years and continues to this day—to maintain monopolies in markets critical to the American economy. Excusing Apple's tardiness and delaying resolution of this matter would frustrate the Sherman Act's purposes and "maintain a status quo that the [district

49

court] has concluded is illegal" under Section 2. *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys*., 628 F. Supp. 1438, 1440, 1442 (D.D.C. 1986).

By "depriv[ing] consumers . . . of the benefits of competition pendente lite," *FTC v. Elders Grain, Inc*., 868 F.2d 901, 904 (7th Cir. 1989), intervention would also perpetuate the significant, real-world harms of Google's conduct. A finding that "the Government prove[d] a violation," without "a remedy adequate to redress" the violation, is little help to consumers. *du Pont*, 366 U.S. at 323. Rather, the district court must promptly order relief that addresses Google's conduct and restores competition to the relevant markets. Apple's focus on ensuring that it can protect "its own interests," Br. 45—i.e., the billions of dollars it has received in shared rents from Google's illegally maintained monopolies—ignores the need to deliver prompt relief to the consumers facing real harm from Google's monopolization.

Finally, the longer Google's stranglehold over the relevant markets persists, the more competitive harm the district court will have to address when "pry[ing the monopolized markets] open to

50

competition." *Ford Motor Co.*, 405 U.S. at 577-78 (quoting *Int'l Salt*, 332 U.S. at 401). Such prejudice weighs heavily against timeliness.

### C.    Apple Lacks a Purpose Meriting Last-Minute Intervention.

1. The district court properly found that "the purpose for which Apple seeks intervention weighs against the timeliness of the motion." A985. Apple's purpose—presenting "evidence and argument"—is "the very purpose [this Court] has suggested would render intervention untimely where, as here, the movant 'permitted significant time to elapse' before filing its motion." A982 (quoting *AT&T*, 642 F.2d E 1294-95). Additionally, the district court "doubt[ed] that the scope of Apple's intervention is truly as circumscribed as [Apple] believes." A981.

Further, Apple failed to "establish that the information it wishes to present is any different than that the court already considered—and largely credited—during the liability phase." A982. Indeed, at oral argument, the district court repeatedly asked Apple to identify the new evidence it wished to present, and Apple's attorneys provided only generalities. *See supra* pp. 15-17 (listing testimony); A896 (Tr. 55:6-8) (district court stating "I'm still struggling to understand what I'm going to hear . . . that is really going to advance the ball"); A899 (Tr. 58:17-19)

51

(Apple attorney stating that Apple would "supplement the record" and "complete the record").

2. Apple's disagreements with the district court's findings and management of the case fall far short of establishing an abuse of discretion. Apple insists that its purpose is "narrow and targeted." Br. 35. But the district court carefully explained that Apple's intent to focus on how "the remedy affects Apple" "hardly imposes a meaningful limitation." A981; *see also id.* (Apple "did not specify which remedies it believes would affect Apple's interests and, therefore, which remedies it intends to weigh in on").

Apple faults the district court for not having allowed intervention with "guardrails on Apple's participation to ensure it was not delaying the proceedings." Br. 36. But Apple does not identify those "guardrails," and the assertion is hard to square with Apple's repeated insistence that the guardrails the district court chose (a post-hearing brief plus multiple factual affidavits) are insufficient. More fundamentally, Apple ignores the basic principle that a district court has "broad discretion" to manage its cases. *Microsoft*, 253 F.3d at 98.

52

Apple protests that the district court's analysis of Apple's purpose cannot override its "right to intervene." Br. 38. But Apple has a "right" to intervene only if it establishes timeliness and the other elements of Rule 24(a)(2), and "the purpose for which intervention is sought" is, of course, a factor of timeliness. *AT&T*, 642 F.2d at 1295. Finally, the district court did not apply a different Rule 24 standard for antitrust cases, Br. 38; it distinguished cases cited by Apple in correctly applying this Court's standard for Rule 24 timeliness. A983-85.

### D.    The District Court Granted Apple Substantial Participation Rights Beyond a Typical Amicus.

Apple cannot show that the district court abused its discretion in finding that "[t]he need for intervention to protect Apple's contractual rights likewise weighs against timeliness, as the court will afford Apple an opportunity to be heard through post-hearing submissions." A985. The district court granted Apple substantial means of participation in the remedies phase, permitting it to submit affidavit(s) from one or two fact witnesses and to participate as amicus curiae filing a post-hearing brief alongside the parties. A990. This provides Apple multiple ways to educate the district court about its purported "Hobson's Choice" of distributing Google free or dropping Google. Br. 37.

Apple protests that this level of participation "simply is not enough." Br. 40. But it offers no specifics and no reason for this Court to second-guess the district court's assessment that Apple's substantial participation would provide the court with sufficient information to make an informed decision.[11]

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), does not help Apple. Br. 39. That case did not involve an amicus with participation rights like those the district court granted Apple. *Id.* at 704 n.10; *see also Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) (same); *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837 844 (10th Cir. 1996) (same). Moreover, *Nuesse* simply made a case-specific determination that amicus participation was insufficient under the circumstances. *Nuesse*, 385 F.2d at 704 n.10. Elsewhere, this Court has recognized that amicus participation can accommodate a nonparty's purported need for participation. *In re*

---

[11]    Apple complains that Plaintiffs may challenge the admissibility of the affidavits. Br. 40. But Apple has not yet even identified or served the relevant affidavits, thus Plaintiffs have not yet determined their position on them.

54

*Vitamins Antitrust Class Litig.*, 215 F.3d 26, 32 (D.C. Cir. 2000) (district court did not abuse its discretion "in denying intervention but granting them *amicus* status—enabling them to elucidate the court on their position with less risk of delaying the settlement"). So too here.

## II. Rule 24(a) Intervention Is Also Unavailable Because Google Will Continue To Adequately Represent Apple's Interest.

Even if Apple had timely moved to intervene, it could not satisfy Rule 24(a)'s separate requirement that its interest not be adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2). Contrary to Apple's repeated assertions that the district court "did not challenge" that the elements of Rule 24(a)(2) other than timeliness are satisfied, Br. 38, the district court did not reach the other Rule 24 elements because Apple failed to meet the threshold requirement of timeliness. And the inadequate-representation requirement is fatal to Apple's intervention motion, providing an alternative ground for affirmance.[12] *See, e.g.*, *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1019-20

---

[12]    *See also* A766-81 (Colorado Plaintiffs' opposition to Apple's motion arguing that Apple failed to demonstrate that it has a legally protected interest in the remedies phase and that this action would threaten to impair that interest).

55

(D.C. Cir. 2003) (denying intervention solely on basis of adequate representation). Apple has relied on Google, its counterparty in the ISA, to represent its interests for over four years, and Google will continue to do so.

### A.   Google, Apple's Counterparty, Has Presumptively Provided Adequate Representation Throughout this Litigation.

"Although an intervenor's burden of showing inadequacy of representation is [generally] minimal," courts have long held that "a presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective." *Cobell v. Jewell*, No. 96-01285 (TFH), 2016 WL 10703793, at *2 & n.2 (D.D.C. Mar. 30, 2016) (collecting cases from six courts of appeals). That presumption of adequacy applies here. Apple and Google are contractual counterparties who share the same ultimate objectives—maintaining the status quo under the ISA to the maximum extent possible and maximizing their flexibility in future contractual negotiations. In fact, Google is contractually required to cooperate with Apple to defend the ISA in court. A1127.

Courts regularly apply the presumption of adequacy when a party and an intervenor share an interest in upholding a transaction. *See, e.g.*, *W. Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022) (applying the presumption where the would-be intervenor and a defendant shared the objective of upholding the intervenor's oil and gas lease purchases); *HRH Servs. LLC v. Travelers Indem. Co.*, No. 23-cv-02300 (JDB), 2024 WL 4699925, at \*10 (D.D.C. Nov. 6, 2024) (insured tenant and its landlord shared ultimate objective of maximizing recovery under insurance policy); *FTC v. Zurixx, LLC*, No. 2:19-cv-00713-DK-DAO, 2021 WL 3510804, at \*5 (D. Utah Aug. 10, 2021) (intervenors—defendant's customers—shared the ultimate objective of upholding their contracts with defendant). This Court should do the same. Apple's ultimate goal is to preserve the ISA, which generates a substantial share of Apple's operating profit. A575. And Google's counsel affirmed below that Google shares that goal and will "continue to defend the legality of that agreement through the remedies phase and on appeal." A889 (Tr. 48:6-7). Indeed, the ISA *obligates* Google to "cooperate" with Apple "to defend the agreement." A436. Additionally, Google and Apple have a "mutual interest" in maximizing their

57

flexibility to negotiate for revenue sharing and other terms, even from separate sides of the bargaining table. *See HRH Servs.*, 2024 WL 4699925, at \*10 (tenant adequately represented tenant's and landlord's "mutual interest" in maximizing insurance proceeds, even if they disagreed about who was entitled to the proceeds). Google's and Apple's common goals create a presumption of adequacy that Apple cannot rebut.

**B.    Nothing Has Materially Changed the Adequacy of Google's Representation Since the Liability Opinion Issued in August 2024.**

Apple does not dispute the adequacy of Google's representation throughout the liability phase and in the opening months of the remedies phase of this proceeding. Were Google an inadequate representative of Apple's interests during that time, Apple's intervention now would plainly be untimely. Apple thus accepts that for the first three-plus years of this case, "there was no indication that Google could not adequately represent Apple's interests" because "[b]oth companies are parties to the ISA, and Google was incentivized to defeat in full the antitrust challenge to that agreement." Apple Stay Mot. 14 (Doc. 2098492).

58

Apple must contend that Plaintiffs' Proposed Final Judgment created a recent "divergence between Google's and Apple's interests." Br. 27. As discussed above, this argument faces a timeliness bar because Plaintiffs' Proposed Remedy Framework previewed all of the aspects of Plaintiffs' Proposed Final Judgment that Apple claims create a divergence of interests.

Timeliness notwithstanding, Apple has not shown that the remedies proposals "demonstrat[e] special circumstances that make [Google's] representation inadequate." *Cobell*, 2016 WL 10704595 at *2 & n.1 (collecting cases). Plaintiffs' Proposed Remedy Framework and Proposed Final Judgment merely elaborated on long-predictable relief Plaintiffs could be expected to seek as a remedy for the monopolization findings in the liability opinion. And Google's Proposed Final Judgment so fully defends Apple's interests that Apple's counsel was unable to identify to the district court any changes Apple would advocate for if it were granted intervention.

1. Apple's principal claim is that Google will not defend its revenue-share payments to Apple for distributing Google Search. Apple acknowledges, as it must, that Google's Proposed Final Judgment in

59

fact allows these very revenue-share payments to continue. Br. 29.

Indeed, when asked point-blank by the district court what it would

change about Google's proposed remedy, "Apple demurred." A983 n.4.

Apple accordingly cannot sustain an inadequacy argument based on

concerns revealed by the text of Google's Proposed Final Judgment.

Apple argues that notwithstanding Google's defense of the

revenue-share payments, "Google's PFJ views revenue share as

inextricably linked to default status," Br. 29; "Google believes both

should survive or neither," *id.* at 30. But Google's proposal does *not*

"inextricably" link revenue sharing and default status. On the contrary,

Google's Proposed Final Judgment treats the two separately, by first

restricting Google's ability to contract for default status (§§ III.K-L) and

then expressly clarifying that Google may continue "providing

Consideration to a mobile device manufacturer," such as Apple, "in

exchange for such entity's distribution" of Google products or services

(§ III.M). A726-27; *see also* A714 (Google stating that the district court

"did not find that Google's payment for non-exclusive distribution or

promotion of Google Search would have been anticompetitive or

otherwise unlawful"). Thus, Google's Proposed Final Judgment would

retain *some* kinds of revenue sharing, including payments for distribution, even if revenue sharing for default status is prohibited. That is precisely what Apple wants to advocate, which demonstrates adequate representation. *See, e.g.*, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) (under Rule 24, "[a] would-be intervenor is adequately represented when she 'offer[s] no argument not also pressed by' an existing party.") (quoting *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)).[13]

Apple also argues that whatever Google's Proposed Final Judgment actually says, Google has no *incentive* to resist a prohibition

---

[13]    Apple suggests it is enough for inadequate representation that Apple could "supplement" Google's efforts, Br. 36, but its authorities involved intervention on the side of the government, where this Court "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)), and *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977)). Those cases do not suggest that Google—Apple's counterparty in the very contract Apple cares about—inadequately represents Apple. And like many of Apple's arguments, the point proves too much, because if Apple's ability to argue a point more vigorously demonstrates inadequacy, Google's representation has long been inadequate and Apple's motion is far out of time.

on nondefault revenue sharing because such a prohibition could give Google a "windfall." Br. 27. But here again, Apple runs into a timeliness problem. The respective incentives of Apple and Google have been clear for the entirety of this proceeding, and any inadequacy of representation they created would have arisen long ago. Apple can identify nothing about Google's incentives that recently changed so as to render Google's representation only recently inadequate.

Apple's speculation about Google's incentives is wrong in any event. Google will want the ability to preserve as much revenue sharing and contractual flexibility as possible. Apple's own brief shows why: Apple says that without *any* revenue sharing, it will have less incentive to distribute Google Search—and it may "decide not to make Google available to its users" at all. Br. 27-28. To be sure, Google has demanded both default status *and* revenue sharing from Apple in the past when it could do so, A444-45, but if the district court enjoins an Apple-Google default agreement, Google will want the option—allowed in Google's Proposed Final Judgment—to pivot to using a revenue-

sharing scheme of which Apple approves, as Apple itself says all of Google's search rivals do. Br. 27.[14]

2. Apple's remaining arguments likewise fail. Apple first says that Plaintiffs' Proposed Final Judgment seeks to "force Apple to build its own search engine" and that only Apple can show the district court that it "has no intention of doing" so. Br. 28. But Apple is wrong on both fronts. Plaintiffs' Proposed Final Judgment seeks to remove a restraint on competition, not to force Apple to do anything. Whether Apple enters the search market is Apple's business and does not affect the "success" of Plaintiffs' Proposed Final Judgment. *Id.* at 36.

Nor does Apple need to intervene to provide evidence on its future search intentions. The district court already heard multiple Apple witnesses testify in the liability trial that Apple does not want to enter the search market. A894-95 (Tr. 53:18-25, 54:1-25). And in the liability opinion, the district court *credited* that testimony: It found that "Apple

---

[14]    If Apple were right that Google does not want to pay it revenue share without a default agreement, that would undercut Apple's claim of a legally protected interest here. As the Colorado Plaintiffs have explained, a movant's interest in future contracting with a party, on terms which the party would not accept, is too speculative to satisfy Rule 24(a). *See* A769-70.

has decided not to enter general search at this time," A438, including

for reasons unrelated to the ISA, A882 (Tr. 41:5-11); A983.

Thus, as the district court found, Apple has not shown it would

offer evidence "any different than that the court already considered."

A982. Apple does not challenge the district court's finding as clearly

erroneous, and that omission is dispositive. Apple cannot complain of

inadequate representation based on an inability to present cumulative

evidence. *See, e.g.*, *Intermax Towers, LLC v. Ada Cnty., Idaho*, No. 1:23-

cv-00127-AKB, 2024 WL 2245578, at *3 (D. Idaho May 17, 2024)

(representation was adequate where proposed intervenors' evidence was

"already in the administrative record").

3. Finally, Apple worries that Google may not "prioritize"

defending revenue sharing given the other remedies issues, such as a

divestiture proposal, that Google will want to address. Br. 29. But it has

long been clear that Plaintiffs would seek robust remedies here, and

structural relief was previewed in the complaints and Plaintiffs'

Proposed Remedy Framework. Nothing has recently changed Google's

ability to manage its multiple priorities alongside adequately

representing Apple's interests. Moreover, Google has strong financial

64

incentives to "prioritize" defending revenue sharing. *See supra* pp. 62-63. Indeed, Google has already shown it will emphasize the issue, by taking care in its Proposed Final Judgment to preserve the ability to pay Apple for "distribution." A727. Google told the district court that it has "vehemently defended" the ISA and "will continue to defend the legality of that agreement through the remedies phase and on appeal in this matter." A889 (Tr. 48:4-7).

4. Apple lastly argues—for the first time on appeal—that the three "divergence[s]" it has identified "*work together* to deprive Apple of adequate representation." Br. 32. But that argument does not move the ball for Apple: the sum of three zeros is zero. As shown above, nothing has changed regarding these asserted divergences since—at the latest—the filing of Plaintiffs' Proposed Remedy Framework, and each claim of divergence fails on its merits. Apple accordingly has not rebutted the presumption of adequate representation.

65

# CONCLUSION

This Court should affirm.

Respectfully submitted,


s/ *Patrick M. Kuhlmann*

Dated: February 26, 2025

OMEED A. ASSEFI
  *Acting Assistant Attorney General*

DAVID B. LAWRENCE
  *Policy Director*

ALICE A. WANG
  *Counsel to the Assistant Attorney*
  *General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
PATRICK M. KUHLMANN
MATTHEW A. WARING
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 305-4639
patrick.kuhlmann@usdoj.gov

*Counsel for the United States*

*/s/ Christopher A. Knight*
James Uthmeier, Attorney
General
Christopher A. Knight, Assistant
Attorney General
Office of the Attorney General,
State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Christopher.Knight@
myfloridalegal.com

*Counsel for the State of Florida*

*/s/ William J. Shieber*
Ken Paxton, Attorney General
William J. Shieber, Assistant
Attorney General
Office of the Attorney General,
State of Texas
300 West 15th Street
Austin, Texas 78701
William.shieber@oag.texas.gov

*Counsel for the State of Texas*

*/s/ Paula L. Blizzard*
Rob Bonta, Attorney General
Paula L. Blizzard, Senior
Assistant Attorney General
Carolyn D. Jeffries, Deputy
Attorney General*
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite
11000
San Francisco, California 94102
Paula.Blizzard@doj.ca.gov
* Admission and entry forthcoming

*Counsel for the State of California*

/s/ *Matthew M. Ford*
Matthew M. Ford
Arkansas Bar No. 2013180
Assistant Attorney General
Office of the Arkansas Attorney
General Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for the State of Arkansas*

/s/ *Logan Winkles*
Chris Carr, Attorney General
Logan Winkles, Deputy Attorney
General*
40 Capitol Square SW
Atlanta, GA 30334
lwinkles@law.ga.gov
*Entry forthcoming

*Counsel for the State of Georgia*

/s/ *Scott L. Barnhart*
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director, Consumer Protection Division*
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov
*Entry forthcoming

*Counsel for the State of Indiana*

/s/ *Jonathan E. Farmer*
Jonathan E. Farmer
Deputy Executive Director of Consumer Protection
Office of the Attorney General of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: 502-696-5448
Fax: 502-573-8317
Jonathan.Farmer@ky.gov

*Counsel for the Commonwealth of Kentucky*

*/s/ Patrick Voelker*
Liz Murrill, Attorney General
Patrick Voelker, Assistant
Attorney General*
Office of the Attorney General,
State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov
*Entry forthcoming

*Counsel for the State of Louisiana*

*/s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney
General*
Michigan Department of Attorney
General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov
*Entry forthcoming

*Counsel for State of Michigan*

71

*/s/ Michael Schwalbert*
Michael Schwalbert, Assistant
Attorney General*
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
Michael.Schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981
*Admission and entry forthcoming

*Counsel for the State of Missouri*

*/s/ Lee Morris*
Lynn Fitch, Attorney General
Lee Morris, Special Assistant
Attorney General*
Office of the Attorney General,
State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Lee.Morris@ago.ms.gov
*Admission and entry forthcoming

*Counsel for the State of
Mississippi**

72

*/s/ Christian B. Corrigan*
Christian B. Corrigan
Solicitor General, State of
Montana
Anna K. Schneider
Bureau Chief, Montana Office of
Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Christian.corrigan@mt.gov

*Counsel for the State of Montana*

*/s/ Mary Frances G. Jowers*
Alan Wilson, Attorney General
Mary Frances G. Jowers, Assistant
Deputy Attorney General
Office of the Attorney General,
State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-
1549
mfjowers@scag.gov

*Counsel for the State of South
Carolina*

*/s/ Laura McFarlane*
Joshua L. Kaul, Attorney General
Laura McFarlane, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Laura.McFarlane@Wisconsin.gov
Entry forthcoming

*Counsel for the State of Wisconsin*

*/s/ Shannon Wells Stevenson*
Shannon Wells Stevenson,
Colorado Solicitor General
Jonathan B. Sallet, Special
Assistant Attorney General
Bryn Williams, First Assistant
Attorney General
Conor May, Assistant Attorney
General
Colorado Department of Law
Office of the Attorney General,
10th Floor
1300 Broadway
Denver, CO 80203
Shannon.Stevenson@coag.gov
Jon.Sallet@coag.gov
Bryn.Williams@coag.gov
Conor.May@coag.gov

*Counsel for the State of Colorado*

*/s/ William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas,
Suite 2200
New York, NY 10036-6710
wfcavanaugh@pbwt.com

*Counsel for the State of Nebraska*

*/s/ Jeff Pickett*
Jeff Pickett, Senior Assistant
Attorney General*
State of Alaska, Department of
Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite
d200
Anchorage, Alaska 99501
Jeff.Pickett@Alaska.gov
*Admission and entry pending

*Counsel for the State of Alaska*

*/s/ Jayme L. Weber*
Jayme L. Weber, Senior Litigation
Counsel
Office of the Arizona Attorney
General,
400 W. Congress Street, Suite S-
215
Tucson, AZ 85707
Jayme.Weber@azag.gov

*Counsel for the State of Arizona*

75

/s/ *Nicole Demers*
Nicole Demers, Deputy Associate
Attorney General, Chief of
Antitrust Section
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, CT 06106
Nicole.Demers@ct.gov

*Counsel for the State of Connecticut*

BRIAN L. SCHWALB

/s/ *Caroline S. Van Zile*
Caroline S. Van Zile
Solicitor General
Ashwin Phatak
Principal Deputy Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
Tel: (202) 724-6609
Caroline.Vanzile@dc.gov
Ashwin.Phatak@dc.gov

*Counsel for the District of
Columbia*

*/s/ Michael A. Undorf*
Michael A. Undorf, Deputy
Attorney General
Delaware Department of Justice,
5th Floor
820 N. French Street
Wilmington, DE 19801
Michael.Undorf@Delaware.gov

*Counsel for the State of Delaware*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of
Guam
590 S. Marine Corps Drive, Suite
901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org
*Admission and entry pending

*Counsel for the Territory of Guam**

*/s/ Rodney I. Kimura*
Rodney I. Kimura, Deputy
Attorney General
State of Hawaii, Department of the
Attorney General
425 Queen Street
Honolulu, HI 96813
Rodney.I.Kimura@Hawaii.gov

*Counsel for the State of Hawaii*

77

*/s/ John K. Olson*
John K. Olson, Deputy Attorney
General
Idaho Office of the Attorney
General
954 W. Jefferson Street, 2nd Floor
PO Box 83720
Boise, ID 83720-0010
John.Olson@ag.idaho.gov

*Counsel for the State of Idaho*

*/s/ Alex Hemmer*
Alex Hemmer, Deputy Solicitor
General
Office of the Illinois Attorney
General
115 LaSalle Street
Chicago, IL 60603
Alex.Hemmer@ilag.gov

*Counsel for the State of Illinois*

*/s/ Noah Goerlitz*
Noah Goerlitz, Assistant Attorney
General
Office of the Attorney General,
State of Iowa
1305 East Walnut Street
Hoover Building, 2nd Floor
Des Moines, IA 50319-0001
Noah.Goerlitz@ag.iowa.gov

*Counsel for the State of Iowa*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney
General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov
*Admission and entry pending

*Counsel for the State of Kansas**

79

*/s/ Christina M. Moylan*
Christina M. Moylan, Assistant
Attorney General
Office of the Attorney General,
State of Maine
6 State House Station
Augusta, ME 04333-006
Christina.Moylan@Maine.gov

*Counsel for the State of Maine*

*/s/ Schonette J. Walker*
Schonette J. Walker
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
swalker@oag.state.md.us

*Counsel for the State of Maryland*

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney, Deputy Chief,
Antitrust Division
Massachusetts Office of the
Attorney General
One Ashburton Place
Boston, MA 02108
jennifer.greaney@mass.gov

*Counsel for the Commonwealth of
Massachusetts*

*/s/ Zach Biesanz*

Zach Biesanz, Senior Enforcement
Counsel Antitrust Division
Elizabeth Odette, Assistant
Attorney General
Office of the Attorney General,
State of Minnesota, Suite 600
445 Minnesota Street
St. Paul, MN 55101-2127
Zach.Biesanz@ag.state.mn.us
Elizabeth.Odette@ag.state.mn.us

*Counsel for the State of Minnesota*

JOHN FORMELLA
Attorney General of New
Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail:
Brandon.h.garod@doj.nh.gov
*Admission and entry pending

*Counsel for Plaintiff State of New
Hampshire**

81

*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior
Deputy Attorney General
Office of the Attorney General,
State of Nevada
100 North Carson Street
Carson City, NV 89701-4717
mbadorine@ag.nv.gov

*Counsel for the State of Nevada*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's
Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov
*Admission and entry pending

*Counsel for the State of New
Jersey**

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov
*Admission and entry pending

*Counsel for the State of New
Mexico**

LETITIA JAMES
Attorney General of New York

*/s/ Judith Vale*
Judith Vale, Deputy Solicitor
General
New York State Office of the
Attorney General
Appeals & Opinion Bureau
28 Liberty Street, 23rd Floor
New York, NY 1005-1400
Judith.Vale@ag.ny.gov

*Counsel for State of New York*

*/s/ James W. Doggett*
James W. Doggett, Deputy
Solicitor General
North Carolina Department of
Justice
114 W. Edenton Street
Raleigh, NC 27603
jdoggett@ncdoj.gov

*Counsel for the State of North
Carolina*

*/s/ Elin S. Alm*
Elin S. Alm, Assistant Attorney
General
Director, Consumer Protection &
Antitrust Division
Office of the Attorney General,
State of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
ealm@nd.gov

*Counsel for the State of North
Dakota*

*/s/ Jennifer L. Pratt*
Jennifer L. Pratt, Director of Major
Litigation
Office of the Attorney General,
State of Ohio
30 East Broad Street, 26th Floor
Columbus, OH 43215
Jennifer.Pratt@OhioAgo.gov

*Counsel for the State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson*
Office of the Oklahoma Attorney
General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov
*Admission and entry pending

*Counsel for the State of Oklahoma*

/s/ *Gina Ko*
Gina Ko, Assistant Attorney
General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Gina.Ko@DOJ.Oregon.gov

*Counsel for the State of Oregon*

/s/ *Tracy Wright Wertz*
Tracy Wright Wertz, Chief Deputy
Attorney General
Office of the Attorney General,
Commonwealth of Pennsylvania
Strawberry Square, 14th Floor
Harrisburg, PA 17120
twertz@attorneygeneral.gov

*Counsel for the State of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext.
1201
E-Mail: gdiaz@justicia.pr.gov
*Admission and entry pending

*Counsel for the Territory of Puerto Rico**

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz, Special Assistant
Attorney General
Office of the Attorney General,
State of Rhode Island
150 South Main Street
Providence, RI 02903
nvaz@riag.ri.gov

*Counsel for the State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of
South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us
*Admission and entry pending

*Counsel for the State of South
Dakota**

*/s/ Tyler T. Corcoran*
Tyler T. Corcoran, Assistant
Attorney General
Austin Ostiguy, Assistant Attorney
General
Office of Tennessee Attorney
General
UBS Building, 19th Floor
315 Deaderick Street
Nashville, TN 37243
Tyler.Cororan@ag.tn.gov
Austin.Ostiguy@ag.tn.gov

*Counsel for the State of Tennessee*

87

*/s/ Matthew Michaloski*
Matthew Michaloski, Assistant
Attorney General
Marie Martin, Deputy Division
Director
Utah Office of the Attorney
General
160 E. 300 South, 5th Floor
PO Box 140830
Salt Lake City, UT 84114-830
mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for the State of Utah*

*/s/ Christopher J. Curtis*
Christopher J. Curtis, Chief, Public
Protection Division
Office of the Attorney General,
State of Vermont
109 State Street
Montpelier, VT 05609-1001
Christopher.Curtis@Vermont.gov

*Counsel for the State of Vermont*

*/s/ Tyler T. Henry*
Tyler T. Henry, Assistant Attorney
General
Office of the Attorney General of
Virginia, Antitrust Unit
202 North 9th Street
Richmond, VA 23219
thenry@oag.state.va.us

*Counsel for the State of Virginia*

/s/ *Amy Hanson*

Amy Hanson, Senior Managing
Assistant Attorney General
Office of the Attorney General,
State of Washington
800 5th Avenue, Suite 2000
Seattle, WA 98104
Amy.Hanson@atg.wa.gov

*Counsel for the State of Washington*

/s/ *Douglas L. Davis*

Douglas L. Davis, Senior Assistant
Attorney General
Office of the Attorney General,
State of West Virginia
Consumer Protection and Antitrust
Division, Room 401
1900 Kanawha Boulevard East
PO Box 1789
Charleston, WV 25326
Douglas.L.Davis@wvago.gov

*Counsel for the State of West
Virginia*

BRIDGET HILL
Attorney General of Wyoming

Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: amy.pauli@wyo.gov
*Admission and entry pending

*Counsel for the State of Wyoming*

## CERTIFICATE OF COMPLIANCE

      1.    This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), the brief contains 12,510 words.

      2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Word for Microsoft 365 using 14-point New Century Schoolbook font, a proportionally spaced typeface.

s/ *Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*

## CERTIFICATE OF SERVICE

I certify that on February 26, 2025, I caused the foregoing brief to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users, including counsel for all parties.

*s/ Patrick M. Kuhlmann*
Patrick M. Kuhlmann
*Counsel for the United States*
