[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 25-5016**

# United States Court of Appeals
# for the District of Columbia Circuit

———————————————

UNITED STATES OF AMERICA; ET AL.,

*Plaintiffs-Appellees,*

v.

GOOGLE LLC,

*Defendant-Appellee,*

APPLE INC.,

*Movant-Appellant.*

———————————————

On Appeal from the United States District Court for the District of Columbia
Nos. 1:20-cv-03010-APM; 1:20-cv-03715-APM (Hon. Amit Priyavadan Mehta)

———————————————

## REPLY BRIEF OF APPELLANT APPLE INC.

———————————————

Alfred C. Pfeiffer, Jr.
Sarah M. Ray
Aaron T. Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Gregory G. Garre
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
gregory.garre@lw.com

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

March 5, 2025

*Counsel for Appellant Apple Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY ............................................................................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ........................................................................................... 4

I.  Apple's Motion Was Timely Because Apple Moved Promptly Once It Became Clear Its Interests Were No Longer Adequately Represented .......... 4

   A.  Binding Precedent Rejects Plaintiffs' Legal Rule ................................ 4

   B.  Apple Moved Promptly Once It Became Clear That Google Could No Longer Represent Apple's Interests ..................................... 7

   C.  The Remaining Timeliness Factors Favor Apple's Intervention ........ 14

      1.  Plaintiffs Do Not Identify Any Unfair Prejudice From Apple's Intervention ................................................................. 15

      2.  Plaintiffs Do Not Refute The Purpose And Need Supporting Apple's Intervention ................................................ 20

II.  Google Can No Longer Adequately Represent Apple's Interests ................. 23

CONCLUSION ........................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cameron v. EMW Women's Surgical Center, P.S.C.,*
595 U.S. 267 (2022)................................................................2, 5, 8, 13

*Campaign Legal Center v. Federal Election Commission,*
68 F.4th 607 (D.C. Cir. 2023)................................................................5

*Deutsche Bank National Trust Co. v. FDIC,*
717 F.3d 189 (D.C. Cir. 2013)..............................................................19

*Hodgson v. United Mine Workers of America,*
473 F.2d 118 (D.C. Cir. 1972)..........................................................5, 23

*Roane v. Leonhart,*
741 F.3d 147 (D.C. Cir. 2014)....................................................15, 16, 17

*United Airlines, Inc. v. McDonald,*
432 U.S. 385 (1977)..............................................................................6

*United States v. AT&T Co.,*
642 F.2d 1285 (D.C. Cir. 1980)....................................................15, 21, 22

*United States v. British American Tobacco Australia Services, Ltd.,*
437 F.3d 1235 (D.C. Cir. 2006).............................................................14

## OTHER AUTHORITIES

*Fed. R. Civ. P. 24(a)..............................................................................6

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice &
Procedure* (3d ed. 2007) ......................................................................16

* Authorities upon which we chiefly rely are marked with asterisks.

**GLOSSARY**

| Abbreviation/acronym | Description |
| --- | --- |
| Apple | Apple Inc. |
| Google | Google LLC |
| ISA | Information Services Agreement |
| PFJ | Proposed Final Judgment (JA676-710) |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Because Plaintiffs largely ignore it, we begin with the key event necessitating Apple's intervention motion: On November 20, 2024, Plaintiffs proposed an extraordinary, if not unprecedented, remedial term targeting Apple by name, that would prevent Apple and Google from exchanging "anything of value" or entering into "any commercial terms" for the next ten years. JA682. That remedial term goes beyond "revenue share" and "default status" for general search; it applies to any contract, for "anything of value," for ten years. Indeed, when pressed by the district court on the breadth of this term, Plaintiffs doubled down: they took the remarkable position that this term would prohibit any "type of … contract between Google and Apple in which there would be anything exchanged of value from Google to Apple." JA882. Yet Plaintiffs refer blandly to that term as a "revenue share" provision and do not actually acknowledge its full breadth until a footnote on page 37 of their brief.

Plaintiffs suggest that Apple must have known this was coming because Plaintiffs had earlier proposed a general remedial framework that alluded to a "'comprehensive' decree" with "'reinforcing remedies.'" Pls.' Response Br. ("RB") 40. Wrong. Plaintiffs never once previously stated or even suggested before November 20—not in the general outlines of their proposed remedial framework, nor anywhere else—that they would request such extraordinary relief explicitly targeting Apple. And, critically, this new provision created a divergence in interests

1

between Apple and Google.  If, or once, the district court takes default status off the table, Google has little incentive to protect Apple's interest in revenue share in the face of Plaintiffs' proposed final judgment ("PFJ").  That is because, as Plaintiffs do not dispute, their total prohibition of any exchange of consideration would threaten to afford Google a windfall in the form of distribution of Google Search to Apple's users for free.  Only Apple maintains that it can provide its users equal and competitive access to search providers on its devices.  As soon as Plaintiffs' and Google's PFJs made clear they have different priorities, Apple moved promptly to intervene—in a matter of just a few days.

In nevertheless arguing that Apple's request was untimely, Plaintiffs gloss over the correct legal standard for assessing timeliness and ignore the breadth of their PFJ.  Plaintiffs posit that Apple has known since the start of this case that the ISA was at issue and that, therefore, Apple's motion was untimely.  But that position goes beyond even the district court.  Moreover, the governing test—which Plaintiffs ignore—is whether the applicant moved promptly once it became "clear" its interests would no longer be adequately represented.  *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022).  Here, the inadequacy of Google's representation did not become "clear" until Plaintiffs proposed a remedy that threatens to afford Google billions of dollars at Apple's expense and that would

hamstring Apple's ability to contract with Google for "anything of value" for the next ten years. Plaintiffs have no answer for that, so they just disregard this standard.

Plaintiffs instead turn to other factors that cannot overcome an applicant's "right" to intervene under Rule 24. Citing prejudice, Plaintiffs argue that Apple's intervention would require Plaintiffs to devote time and resources to "tak[ing] depositions" and "prepar[ing] for cross-examination at trial," and Plaintiffs complain that Apple's testimony could take up "a day-and-a-half" of the trial schedule. RB44. These concerns—lurking whenever any party joins a case—cannot defeat an applicant's *right* to intervene under Rule 24, and Plaintiffs cite no caselaw to the contrary. Indeed, because Plaintiffs fail to identify unfair prejudice stemming specifically from Apple's supposed delay in seeking intervention, the prejudice inquiry favors Apple. Nor does the district court's decision to grant Apple *amicus* status immunize the flawed decision below. This Circuit has long recognized that appearing as an *amicus* is no substitute for intervention.

Plaintiffs' attempt to defend the district court's decision on the alternative ground that Google can adequately represent Apple's interests also fails. As Plaintiffs see it, nothing about their PFJ on November 20 changed Google's ability to defend Apple's interests. But Plaintiffs continue to ignore the sweep of their own remedy targeted at Apple. If implemented, the PFJ would (in Plaintiffs' telling) prohibit Apple from contracting with Google for anything of value. Such a

prohibition would either harm Apple's users by preventing their access to the best search engine, or harm Apple by conferring upon Google a financial benefit at Apple's expense. And it would preclude other contractual arrangements between the parties for matters other than search, such as AI or cloud services, which could stunt the development of critical technologies. The PFJ also is premised upon factual assumptions regarding *Apple's* future intentions in the search market. Google cannot adequately represent Apple's interests with respect to this far-reaching remedy.

The district court's decision should be reversed.

## ARGUMENT

## I.    Apple's Motion Was Timely Because Apple Moved Promptly Once It Became Clear Its Interests Were No Longer Adequately Represented

### A.    Binding Precedent Rejects Plaintiffs' Legal Rule

At the outset, Plaintiffs' position is fatally flawed because they employ the wrong legal standard. They repeatedly contend that because Apple "knew its interests were affected," it had to intervene sooner. RB30 (capitalization normalized). Not even the district court determined that Apple was required to intervene at the points proposed by Plaintiffs—not when the complaints were filed, not when trial commenced, and not when the district court issued its liability ruling. That is because, as the Supreme Court recently made plain, "the most important circumstance relating to timeliness is that [an applicant] sought to intervene as soon as it became clear that [its] interests would no longer be protected by the parties in

4

the case." *Cameron*, 595 U.S. at 279-80.  Timeliness, in other words, is assessed from the moment the *inadequacy* of representation becomes "clear," and not—as Plaintiffs repeatedly assume—the moment an applicant knows that "its interests" may be "affected" by the litigation, a fundamentally different question.

Stuck with *Cameron*, Plaintiffs try to reinvent it.  They cite a snippet of the Supreme Court's decision and argue that "[t]imeliness is to be determined from all the circumstances."  RB33 (quoting *Cameron*, 595 U.S. at 279).  But the very next sentence explains that "the most important circumstance" in assessing timeliness is that an applicant moves to intervene "as soon as it bec[omes] clear" that its interests cannot be represented by existing parties.  *Cameron*, 595 U.S. at 279-80 (citation omitted).  This Circuit's caselaw is of a piece: The "point at which it became clear the intervenor's interests would no longer be protected" is what matters.  *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023).  That standard—not any "knew its interests were affected" rule—controls this case.

In fact, Plaintiffs' primary argument here—that Apple waited "over four years from the commencement of litigation" to intervene, RB30—tracks the very argument the Supreme Court rejected in *Cameron*, namely, that the applicant's "motion was not timely because it came after years of litigation in the District Court," 595 U.S. at 279; *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972) (permitting intervention "some seven years after [the action]

was filed" because intervention was "necessary to preserve some right which cannot otherwise be protected" (citation omitted)).  But Plaintiffs ask this Court to reject *Cameron*'s standard and put parties like Apple in the unworkable situation in which an intervention request is either too early or too late.

If Plaintiffs' proposal were the rule, some putative intervenors who meet Rule 24's requirements would simply be out of luck.  If an applicant moved early in proceedings when "existing parties adequately represent[ed]" the applicant's "interest" on the theory that their interests might later diverge, the applicant would be denied intervention.  Fed. R. Civ. P. 24(a).  And if the applicant instead moved when its interests were no longer adequately represented, the applicant would be denied intervention because, after all, it knew the entire time its "interests were affected."  RB30.  That is not the law.  Indeed, the Supreme Court long ago disclaimed that putative intervenors must "file protective motions to intervene to guard against the possibility that the named representatives might not" represent the intervenors' interests.  *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 n.15 (1977).  That is precisely what Plaintiffs' proposed standard would require.

### B.     Apple Moved Promptly Once It Became Clear That Google Could No Longer Represent Apple's Interests

The reason Plaintiffs disregard the *Cameron* standard is that it is plainly met here.  The key dates that Plaintiffs, the district court, and Apple have offered are:

- **October/December 2020:**  When the litigation was first filed.  This is Plaintiffs' lead position, which the district court never adopted.

- **August 2024:**  When the district court issued its liability decision.  This is another argument raised by Plaintiffs, which the district court never adopted.

- **October 2024:**  When Plaintiffs filed their proposed remedial framework.  This is the district court's view and now Plaintiffs' fallback position on appeal.  But it was never suggested by Plaintiffs below.

- **November/December 2024:**  When Plaintiffs and Google filed their PFJs, respectively.  This is Apple's consistent position.

1.  On November 20, 2024, Plaintiffs fundamentally shifted the focus of this case by proposing a remedial term targeted at Apple—a non-party not accused of any wrongdoing.  JA682.  This changed everything.  The PFJ would harm both Apple's users and Apple itself, with Google unable to defend either of these interests.  Apple receives revenue from every other search engine that is available to users on its devices, whether or not those search engines have default status.  But the PFJ would prohibit Apple from receiving revenue from Google no matter the terms, and it stretches even beyond revenue sharing to prevent Apple and Google from

7

contracting for "anything of value" for the next decade. *Id.* While Google's interest is in preserving some form of default status, the PFJ gives Apple a Hobson's Choice: either stop distributing Google Search, thereby harming Apple's users; or distribute Google Search for free, thereby affording Google a competitive advantage. The only possible rationale for such a term, given its otherwise untenable competitive effects, is that Plaintiffs believe that Apple, a non-party, will respond by building its own search engine. But Google cannot explain Apple's plans with respect to search. These circumstances made it "clear" that Google could no longer adequately represent Apple's interests. *Cameron*, 595 U.S. at 279-80.

Plaintiffs do everything they can to hide from their own remedial proposal, even misrepresenting it. According to Plaintiffs, their PFJ broadly provides that "Google must not offer or provide something of value to a third party, including payments or other commercial terms that create an economic disincentive to compete in or enter the [general search engine] or Search Text Ad market(s)." RB13 (quoting JA682). Plaintiffs then claim that their PFJ "separately repeated that prohibition as to Apple." *Id.* But the portion of the PFJ Plaintiffs quote with respect to third parties in general prohibits Google from "offer[ing] or provid[ing] something of value" *in exchange for* "preferential treatment," "making or maintaining any GSE as a default," or "preinstallation, placement, or default status of any Search Access Point." JA682. In other words, the general prohibition cited

by Plaintiffs prohibits Google from paying third parties for *preferential treatment or default status*.

The remedial term targeted at Apple is far broader. It provides, in full, that "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [general search engine] or Search Text Ad markets." *Id.* That prohibition mentions none of the conditions that Plaintiffs included in the general prohibition concerning other third parties.

This is a provision of astonishing scope. When pressed on its breadth during oral argument on Apple's motion, Plaintiffs took the remarkable position that this term would prohibit any "type of a contract between Google and Apple in which there would be anything exchanged of value from Google to Apple." JA882. And, in this Court, Plaintiffs do not dispute that their PFJ threatens to afford Google tens of billions of dollars per year at Apple's expense. Yet not until page 37 of their brief do Plaintiffs quote in full the PFJ's remedial term targeting Apple, and even then they hide it in a footnote. RB37 n.9.

Google cannot represent Apple with respect to a remedial provision targeted at Apple, premised on Apple's future actions, and that would threaten to afford a financial benefit to Google. *See infra* 23-28. Likewise, Google is in no position to represent the interests of a company with whom it competes on many dimensions as

9

to the companies' exchange of "anything of value" for the next decade.  JA682.
Indeed, not even the district court posited that Google could adequately represent
Apple's interests now that Plaintiffs' PFJ creates a divergence between the two
companies with respect to the distribution of Google Search.

2.  Plaintiffs raise a host of earlier dates on which they claim that Apple should
have moved to intervene, but none made clear to Apple that Plaintiffs would propose
the sweeping remedial term they included in their November 20 PFJ driving a
divergence between Apple and Google.

October/December 2020.  Plaintiffs start with when they filed their complaints
against Google.  But all those told Apple was that Plaintiffs sought to hold Google
liable under the antitrust laws for maintaining a monopoly by, among other things,
"secur[ing] default placements through distribution contracts."  JA336.  "According
to their complaints, Google has unlawfully used the distribution agreements to
thwart competition and maintain its monopoly in the market."  JA337.  Nowhere in
Plaintiffs' complaints did they suggest they would propose a remedy that blocks
Apple and Google from contracting for a decade, or that they would propose a
remedy that threatens to afford Google an advantage over competitors.

August 2024.  Plaintiffs next isolate the date of the district court's liability
decision.  There, the district court agreed with Plaintiffs that "Google has violated
Section 2 … through its exclusive distribution agreements."  JA610.  The district

court concluded that Google's "browser agreements," like the ISA with Apple, were "exclusive insofar as they establish Google as the out-of-the-box default search engine." JA538. Accepting Plaintiffs' framing of this case around the *exclusive* nature of Google's distribution agreements, the district court determined that Google had violated the antitrust laws based on (among other things) exclusive default agreements.

But the remedial term targeted at Apple is not about Google's maintenance of a monopoly via default agreements. It does not even mention exclusivity, preferential treatment, or default status. Instead, Plaintiffs seek to address Google's conduct by forcing *Apple* to create a brand new product to compete with Google, all while threatening to confer a benefit on Google.

Plaintiffs argue that because the district court alluded to the fact that the ISA disincentivizes Apple from creating a search engine, Apple should have known that Plaintiffs would propose a remedy "prohibiting payments that would keep this 'economic disincentive' in place." RB38. But when Plaintiffs "contend[ed] that the billions of dollars that Apple receives in revenue share are, in effect, a payoff to keep Apple on the sidelines of search," the district court reasoned that "[t]he evidence relating to Apple cannot be cast in such absolute terms and calls for more nuance." JA574. And the court separately rejected Google's procompetitive justifications in support of its search distribution agreements (including benefits of revenue share)

11

because they were not directly tied to *exclusive* default status.    JA582.    This underscores that the liability opinion was focused on concerns with exclusive defaults.  Plaintiffs cannot reasonably expect Apple to have predicted that Plaintiffs would seek to fix what the district court did not conclude was a problem.  Indeed, not even the district court suggested that its liability decision should have put Apple on notice that Plaintiffs would seek such far-reaching relief directly targeted at Apple's users and commercial interests.

October 2024.  Plaintiffs next contend that the broad outlines of their remedial framework filed on October 8 "spelled … out" the terms of their later-filed PFJ targeting Apple.  RB39; *see also* RB59 (claiming the "Proposed Remedy Framework previewed all of the aspects of Plaintiffs' [PFJ]").  But Plaintiffs nowhere proposed October 8 as a relevant date in their briefing below.  For good reason: the high-level framework they proposed on October 8 did not mention Apple by name, nor did it suggest that Plaintiffs would seek to prevent Apple from entering into *any* commercial agreement with Google that might disincentivize Apple from developing its own search engine, or anything like that.

Plaintiffs argue that their framework "identified well-defined *categories* of contracts," which included "revenue-sharing arrangements" that "clearly encompass the ISA."  RB39.  But the remedial term targeting Apple is not about the ISA, nor is it even limited to revenue sharing.  It is about the exchange of "anything of value"

between Apple and Google.  JA682.  Moreover, the timeliness standard does not require speculation that some remedy might be proposed; it focuses on when it became *clear* that Google would no longer adequately represent Apple's interests.

Plaintiffs' argument boils down to a claim that Apple should have guessed that Plaintiffs would seek sweeping relief requiring Apple to develop a product to compete with Google Search.  Apple was supposed to divine Plaintiffs' future plans by reading between the lines on one page of the district court's 286-page liability decision and by extrapolating from Plaintiffs' vague suggestion, offered in a high-level remedial framework, that they would seek broad relief respecting "revenue share."  RB37-40.  That theory is especially far-fetched when Apple has no interest in creating a general search engine, and thus no reason to expect such a remedy forcing it to build one in a case involving Google.

Rule 24 does not require that would-be intervenors engage in the kind of guess-work that Plaintiffs demand.  Quite the contrary—it rules out guess-work.  It requires that applicants move to intervene promptly only when it becomes "clear" that existing parties can no longer adequately represent their interests.  *Cameron*, 595 U.S. at 279-80.  Such clarity did not materialize until Plaintiffs offered their PFJ on November 20.  That Plaintiffs and the district court each offer distinct visions of when Apple should have intervened—either at the very start of the case, or at least when the liability decision was issued, or at the very minimum when Plaintiffs

13

offered their remedial framework on October 8—only underscores that at none of these points in time was it "clear" to Apple that Google could not adequately represent its interests during the remedial phase of this case.

### C.    The Remaining Timeliness Factors Favor Apple's Intervention

As explained above and in Apple's opening brief, a motion to intervene is timely under the Supreme Court's decision in *Cameron* and this Circuit's decision in *Campaign Legal Center* so long as it is filed promptly after the inadequacy of representation crystalizes.  Apple Opening Br. ("OB") 33-34.  Assessments of the purpose or need for intervention cannot overcome an otherwise timely motion. OB34.  Nor can predictions of prejudice, divorced from the applicant's supposed delay in moving to intervene.  *Id.*  And that *must* be the rule: an applicant's "right" to intervene under Rule 24 would mean little if it could be denied even though the applicant moved to intervene at the first available time.  OB25; *see supra* 5-6.

Plaintiffs claim they disagree, but offer little in the way of support.  They note that this Court has described four factors to the timeliness inquiry—including the time elapsed, the purpose of intervention, the need for intervention, and the probability of prejudice.  RB29 (citing *United States v. British American Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)).  But they do not identify a single case where this Court denied a motion to intervene filed promptly after the inadequacy of representation became clear—whether on prejudice grounds

14

or something else.  What Plaintiffs' cases instead show is that the applicant's delay may not doom their motion, where (for example) belated intervention would not "unfairly disadvantage[] the original parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (citation omitted); *United States v. AT&T Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980) (explaining that delayed intervention could be timely if for a "limited purpose").  These factors, in other words, can support the applicant's intervention notwithstanding some delay; they do not doom it when the applicant moved promptly.

However construed, the timeliness considerations cited by Plaintiffs—prejudice, purpose, and need—weigh decisively in favor of Apple's intervention.

### 1. *Plaintiffs Do Not Identify Any Unfair Prejudice From Apple's Intervention*

Like the district court, Plaintiffs urge that Apple's intervention is untimely because it would cause "substantial prejudice" to "the existing parties."  RB43.  But they make the same mistake as the district court—invoking as evidence of prejudice inevitable litigation burdens associated with Apple's intervention, regardless of whether those burdens have anything to do with undue delay.  Neither the district court nor Plaintiffs have identified any cognizable prejudice flowing from Apple's

decision to intervene on December 23, as opposed to the date the district court chose, October 8.

At the outset, Plaintiffs do not dispute that "[t]o the extent prejudice factors into the [timeliness] analysis, its purpose is to measure whether the party's *undue delay* in moving to intervene causes harm." OB40; *see* OB34-35 (collecting cases). Plaintiffs accuse Apple of citing "out-of-circuit cases," RB46, but they nowhere call into question that the prejudice inquiry is properly focused on harms from the applicant's delay. And that commonsense rule flows from the lead case Plaintiffs cite—*Roane v. Leonhart*. Plaintiffs cite *Roane* for the proposition that "prejudice is the 'most important' consideration in the analysis." RB22 (quoting 741 F.3d at 152). But *Roane* also says that "[t]he most important consideration in deciding whether a motion for intervention is untimely is *whether the delay* in moving for intervention will prejudice the existing parties to the case." 741 F.3d at 151 (emphasis added) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (3d ed. 2007)). Under this settled rule, burdens unconnected to delay do not shift the balance. Applying the correct standard, the prejudice inquiry favors Apple.

Start with November 20, when Plaintiffs filed their PFJ. Even putting aside that it made sense for Apple to see Google's own PFJ first, neither the district court nor Plaintiffs have identified any prejudice flowing from the 33 days that elapsed before Apple filed its motion. The absence of any such prejudice alone shows that

Apple's motion to intervene was timely.  *See Roane*, 741 F.3d at 151-52 (finding district court abused its discretion in denying intervention on timeliness grounds where no undue prejudice flowed from the delay).

Nor have Plaintiffs identified any undue prejudice flowing from the 76-day delay the district court identified.  Plaintiffs focus on discovery burdens: the supposed "hundreds of hours to review discovery documents, prepare for and take depositions, prepare responsive expert reports, and prepare for cross-examination at trial."  RB44.  But Plaintiffs would have undertaken these efforts regardless of whether Apple had moved to intervene on October 9 or December 23.

Plaintiffs also ignore that Apple has already been substantially involved in discovery in this case.  *See* Dkt. 1179 at 2 n.1 (Plaintiffs' filing stating that "[d]uring the remedies phase, Apple again made significant document productions, and its potential witness was deposed").  Neither the district court nor Plaintiffs have articulated any specific discovery burdens above and beyond those that would have accompanied Apple's participation one month earlier in the case.

Plaintiffs repeat the district court's concern about ensuring sufficient trial time to accommodate the parties and resolve the case by August 2025.  But again, the need for sufficient trial time to accommodate Apple would have existed regardless of whether Apple moved to intervene in October or December.  Plaintiffs cite the district court's statement that it "does not have the same flexibility as it did last

September" with respect to scheduling. RB47 (quoting JA988). But that quote says nothing about what flexibility the court had in *October* (when the court says Apple should have moved), and neither the court nor Plaintiffs explain what changed between October and December (when Apple moved).

Plaintiffs repeatedly invoke the district court's statement that there was no flexibility in its trial schedule, because "it had already set aside 'the maximum number of days it has available.'" RB48 (quoting JA987); *see* RB4, 45. But they neglect to mention that just an hour or so after hearing argument on Apple's intervention motion, the court agreed to extend the trial schedule by five days, more than double what Apple's intervention sought to add. JA840-41; JA987 n.5; JA945-47. And even after Apple filed its notice of appeal, the court moved up the evidentiary hearing dates, presumably after an opening in the court's schedule. JA1004. The district court's own adjustments to its schedule thus refute the idea that the court's schedule was so inflexible that it could not have found a way to add a couple days to the trial for Apple's intervention.

The reality is that whatever prejudice in the form of delay or litigation burden is not because of Apple; it is attributable to *Plaintiffs'* decision to expand this case in targeting Apple with a remedial term of extraordinary breadth. This undercuts Plaintiffs' invocation of the public's interest in promptly resolving this matter in light of the district court's liability decision. Apple has never doubted the district

court's desire to move expeditiously; that is why it filed a narrowly targeted limited intervention motion to avoid disrupting the proceedings. But, to the extent adding trial time delays the remedy decision in this way, such a minimal delay is directly attributable to Plaintiffs' belated attempt to fundamentally reshape Apple's business in a case brought against *Google*. Plaintiffs can hardly claim unfair prejudice when they are responsible.

Finally, Plaintiffs briefly reup the district court's concern about follow-on intervenors. RB48. But they have no response to Apple's argument that Rule 24 provides a mandatory "right" to intervene when the requirements are met. *See* RB44. The fact that other intervenors might seek to intervene as well is no basis to deny intervention. And regardless, upholding Apple's right to intervene would not mean granting intervention to other follow-on parties. Unlike in *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013), Apple is uniquely situated: as discussed above, Plaintiffs' PFJ contains a unique term threatening to bar any contract between Google and Apple for a decade. Despite Plaintiffs' efforts to obscure the uniqueness of their PFJ as to Apple, only Apple is barred from contracting with Google for anything of value *regardless* of whether such contract has *any connection to search distribution, default status or preferential treatment*. This is precisely the concern that Apple wishes to raise in the remedies trial. *See supra* 8-9.

19

In addition, any follow-on applications for intervention at this stage are likely to be deemed untimely, as underscored in Plaintiffs' recently filed opposition to Anthropic PBC's motion to participate as *amicus curiae*. In opposing Anthropic's request to file an *amicus* brief and submit up to two affidavits, Plaintiffs emphasized that Apple and Anthropic "are very differently situated" in light of the substantial "productions" that Apple has made in discovery and the fact that Apple's potential witness has been deposed. Dkt. 1179 at 2 n.1. Plaintiffs further noted that Anthropic waited 129 days after the remedial framework to file its motion, as compared to 76 days for Apple. *Id.* at 3. Apple is in a very different position.

### 2.    *Plaintiffs Do Not Refute The Purpose And Need Supporting Apple's Intervention*

Plaintiffs also offer no persuasive response as to the purpose and need for Apple's intervention. Apple's participation is critical to crafting a remedy in this case, and Apple wishes to protect its contractual rights through very limited involvement in the remedies phase. These are precisely the kinds of circumstances that this Court has held supports intervention. And Plaintiffs' attempt to poke holes in Apple's inability to forecast exactly how the remedy trial will unfold fail.

One note at the start: Plaintiffs' suggestion that *amicus* status plus up to two witness affidavits adequately protects Apple's rights is disingenuous and wrong. RB53-55. Plaintiffs' counsel specifically told counsel for Apple that they intended to challenge the admissibility of those affidavits. JA999. Remarkably, Plaintiffs

now insist that they "have not yet determined their position on" the affidavits' admissibility. RB54 n.11. But just last week, Plaintiffs opposed Anthropic's request to submit witness affidavits because those affidavits, "standing alone, are inadmissible hearsay." Dkt. 1179 at 7. To be clear, Apple would welcome a statement from Plaintiffs that they will not challenge Apple's witnesses' statements. What Plaintiffs cannot do is insist that Apple has sufficient participation rights because of these two witness affidavits and then turn around and seek to have them excluded. Plaintiffs cannot have it both ways.

But even assuming Apple is able to submit its affidavits and have them considered, they are not enough to protect Apple's rights. Paper affidavits are no replacement for live witness testimony, or the right to cross-examine witnesses. The affidavits would leave Apple "a mere spectator as Plaintiffs call fact and expert witnesses testifying about everything from Apple's capabilities in the search market to its economic incentives related to search engines." OB40.

Plaintiffs' remaining objections are no more successful. They cite this Court's decision in *AT&T*, which they claim supports denying intervention when the applicant wishes to present evidence and argument. RB51. But *AT&T* underscored that "a court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention." 642 F.2d at 1295. The Court thus *permitted* intervention in a late stage of the case

because it was for a limited purpose. *Id.* at 1295. The most that can be said for *AT&T* is that non-limited-purpose intervention would be improper where the applicant significantly delayed in filing their motion. That has no bearing here, where Apple moved promptly to intervene, and its request for intervention is limited.

Plaintiffs next fault Apple for not being more specific in terms of what it would provide at trial, above and beyond the information the district court already considered. RB15-16, 51-52. But Rule 24 does not require the intervening party to explain precisely what evidence they intend to provide; the rule exists to ensure that a party with a property interest that is not adequately represented has a *right* to participate to protect that interest. And critically, Apple does not know who the parties plan to call as witnesses, does not know what those witnesses would say, and does not have access to the discovery record. What Apple does know is that it has an interest in intervening to protect its interests and ensure a complete record on the issues directly affecting it.

In any event, Apple explained the kind of evidence it wishes to offer: "that Plaintiffs' prohibition on revenue share would harm consumers either by giving Google a windfall or restricting consumer choice." OB37. This is the "Hobson's Choice" created by Plaintiffs' PFJ. *Id.* No witness presented testimony on this issue at the liability trial, and Plaintiffs do not suggest otherwise. And it is not just about Apple's affirmative presentation; it is also about cross-examining Plaintiffs' and

Google's witnesses when they opine about Apple's users and Apple's business plans.

All this explains why Rule 24 provides a "right" to intervene—one that does not depend on subjective and speculative assessments about what precise form of evidence or argument Apple will provide at the right moment at trial. Apple has no interest in disrupting the proceedings or providing duplicative or unnecessary evidence; it seeks to exercise its right to intervene to protect its users and its business from Plaintiffs' late-breaking efforts to target Apple. Rule 24 exists for this kind of situation. It implements a "basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson*, 473 F.2d at 130. The district court lost sight of that right in denying Apple's motion on timeliness grounds.

## II. Google Can No Longer Adequately Represent Apple's Interests

Plaintiffs' fallback attempt to defend the district court's decision on the alternative ground—not adopted by the district court below—that Google adequately represents Apple's interests also fails. RB55. Google has little incentive to defend Apple's right to receive revenue share payments absent default status, and Google is in no position to represent Apple's interests concerning all manner of commercial agreements the parties might pursue over the next ten years. Nor can Google speak to the business realities that have prompted Apple not to develop a

search engine to compete with Google Search. And finally, the expansive remedies sought by Plaintiffs will require Google to prioritize defending other parts of its business unrelated to the search distribution arrangements.

Plaintiffs first assert that Google "has presumptively provided adequate representation throughout this litigation" because Apple and Google are both "contractual counterparties" to the ISA. RB56. They misunderstand Apple's argument. Apple agrees that Google was incentivized to defend the existing ISA throughout the liability phase of this litigation, which is why Apple did not move to intervene until Plaintiffs proposed a remedy sweeping far beyond the contours of the ISA itself.

Plaintiffs next contend that "nothing has materially changed … since the liability opinion issued in August 2024." RB58. That simply ignores the breadth and scope of Plaintiffs' PFJ, which explicitly targets Apple and threatens to not only prohibit Apple from receiving any form of revenue for distributing Google Search, thereby conferring a benefit to Google, but also to foreclose the exchange of anything of value between Apple and Google for ten years to come. More to the point, the PFJ is expressly premised on encouraging Apple to develop its own competing search engine. JA682. Plaintiffs cannot explain how Google can represent Apple with respect to a remedy designed to prompt Apple to take action to

compete with Google, and premised upon factual assumptions regarding what Apple would do if the PFJ were implemented.

Plaintiffs assert that Google's PFJ shows that Google can adequately represent Apple's interests.  According to Plaintiffs, Google "would retain *some* kinds of revenue sharing, including payments for distribution, even if revenue sharing for default status is prohibited."  RB60-61 (emphasis added).  But Google's PFJ suggests tying revenue share to default status and preferential treatment.  Google's PFJ specifically contemplates allowing Google to "enter into … agreement[s] requiring a Browser Developer," like Apple, "to set Google Search as the Browser Default Search Engine."  JA726.  Google proposes two conditions that, in its view, would render such default agreements permissible: (1) Apple would be allowed to make different browsers the default on different operating systems or for different browsing modes, although revenue share would continue only where "Google Search remains set as the Default Search Engine," and (2) Apple could "promote" other search services.  JA726-27.  Thus, contrary to Plaintiffs' reading, Google's PFJ would continue tying revenue share to default status.  Only Apple can explain the competitive benefits of ensuring that search distributors have access to Apple's users on an equal footing with Google.  Plaintiffs' undeveloped and citation-free suggestion in a footnote that Apple's interest in preserving that aspect of the ISA is

somehow not a protectable interest under Rule 24 is wrong (and forfeited).  *Contra*

RB63 n.14.

 As for Apple's argument that Plaintiffs' PFJ, if implemented as written, would threaten to afford Google a multi-billion dollar benefit at Apple's expense, Plaintiffs offer no meaningful response on adequacy grounds.  They restate their mistaken claim that Apple's and Google's respective incentives "have been clear for the entirety of this proceeding."  RB62.  That non-sequitur does not show that Google can adequately represent Apple's interests with respect to a remedial provision that would afford Google a benefit at Apple's expense.  As explained above, the complaints, the district court's liability decision, and Plaintiffs' remedial framework all focused on revenue share for default status—Plaintiffs nowhere suggested, much less clearly indicated, that they would seek an extraordinary remedy that would prohibit Apple for a decade from receiving value for its services divorced from default status.  *See supra* 7-14.  And Plaintiffs do not reconcile their speculation that "Google will want to preserve as much revenue sharing and contractual flexibility" as possible (RB62) with the fact that Google has previously insisted on default status as part of the ISA.  *See* OB7; JA444-45.

 Nor can Plaintiffs refute that their PFJ is premised on an assumption about *Apple's* future behavior.  Plaintiffs claim their PFJ does not seek to "force Apple to do anything," and that "[w]hether Apple enters the search market is Apple's business

and does not affect the 'success' of Plaintiffs' Proposed Final Judgment." RB63. Plaintiffs' assertions cannot be squared with the remedy they have proposed. If Apple *does not* develop its own general search engine and instead continues to distribute Google Search, Apple may be forced to surrender tens of billions of dollars per year, potentially benefitting Google. Plaintiffs nowhere explain how, under these circumstances, the PFJ does *not* turn on a factual assumption regarding Apple's intentions in the search engine market.

At bottom, Plaintiffs' arguments are premised on the incorrect notion that because Google adequately represented Apple during the liability phase, there must be some "special circumstances" that now "make [Google's] representation inadequate." RB59 (citation omitted). But Apple and Google are unquestionably differently situated at *this* stage. Again, the district court found that Google's search distribution agreements were "exclusive insofar as they establish Google as the out-of-the-box-default search engine" and that those agreements had anticompetitive effects. JA538, JA548. Google, however, continues to defend the right to be the default across search access points. Apple maintains that it should be able to provide search distribution services to multiple general search engines on an equal basis. JA726-27. Plaintiffs' PFJ would foreclose the arrangement Apple maintains with other search providers available on Apple devices: revenue share absent any promise of default status or other preferential treatment. And in doing so, it threatens to

27

afford Google a competitive advantage.  Plaintiffs' remedial proposal thus drives a wedge between Apple and Google.

\*        \*        \*

Ignoring the extraordinary terms of their own PFJ, and the legal standard that the Supreme Court and this Court have adopted for gauging the timeliness of intervention motions, Plaintiffs ask this Court to deny Apple its right to intervene to defend its interests in response to Plaintiffs' own PFJ targeting Apple by name. Granting that request would strip non-parties like Apple of the rights granted to them by Rule 24 and put them in the profoundly unfair situation of not being able to protect their own interests even when, as here, a proposed remedy targets them.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order denying Apple's motion for intervention.

Dated:  March 5, 2025

Respectfully submitted,

*/s/ Gregory G. Garre*

Alfred C. Pfeiffer, Jr.
Sarah M. Ray
Aaron T. Chiu
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Gregory G. Garre
Peter E. Davis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
gregory.garre@lw.com

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Appellant Apple Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 32(f) and (g), because it contains 6496 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

*/s/ Gregory G. Garre*
Gregory G. Garre

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2025, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Gregory G. Garre*
Gregory G. Garre